Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar. No. 24102623)
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
mwarner@pszjlaw.com
bwallen@pszjlaw.com

*Counsel for Landlord Blue Star Frisco Retail, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TROPHY HOSPITALITY, LLC,**[1] | § | **Case No.: 21-40512** |
| | § | |
| **Debtor.** | § | |
| | § | |

**MOTION OF LANDLORD BLUE STAR FRISCO RETAIL, LLC FOR AN ORDER (I) IN THE ALTERNATIVE (A) CONFIRMING THAT THE AUTOMATIC STAY HAS BEEN TERMINATED PURSUANT TO SECTION 362(J) OF THE BANKRUPTCY CODE BECAUSE THE LEASE TERMINATED PREPETITION; OR (B) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (II) COMPELLING DEBTOR'S COMPLIANCE WITH APPLICABLE LAW AND LEASE PENDING DEPARTURE**

---

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you <u>must</u> file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy court and served on the party filing this pleading *<u>WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE</u>* shown in the certificate of services unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with an appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

---

[1] The Debtor's address is 3351 Waverly Drive, Celina, TX 75009. The last four digits of its tax identification number are 5814.

Blue Star Frisco Retail, LLC (the "Landlord") moves (the "Motion") for an order, substantially in the form attached hereto as Exhibit 1: (a) in the alternative, (i) confirming that the automatic stay has been terminated pursuant to section 362(j) of title 11 of the United States Code (the "Bankruptcy Code") because the Lease (defined below) terminated prepetition; or (ii) granting the Landlord's request that the automatic stay be lifted to permit the Landlord to terminate the Lease or take possession of the leased premises in accordance with the terms of the Lease and Texas law; and (b) compelling Trophy Hospitality, LLC d/b/a Trophy Park, as debtor and debtor in possession (the "Debtor"), to comply with applicable law and the terms of the Lease pending departure.

## PRELIMINARY STATEMENT

1.     The Star District in Frisco ("The Star") is the campus of the Dallas Cowboys World Headquarters.[2]  The Star is a perfect place to shop, dine, and explore the Dallas Cowboys themed campus.  The Debtor operates a bar and restaurant at The Star doing business under the name Trophy Park, which is situated across a roadway from residential buildings.  Prepetition and postpetition, the Debtor has failed to comply with applicable alcohol and noise nuisance laws as required postpetition by 28 U.S.C. § 959(b), Article VII of the Lease and 11 U.S.C. § 365(d)(3).

---

[2] The Star is the 91-acre campus of the Dallas Cowboys World Headquarters and practice facility in Frisco, Texas. Developed as a first-of-its-kind partnership between the City of Frisco and Frisco Independent School District ("Frisco ISD"), The Star gives fans the opportunity to connect with the Dallas Cowboys in ways they have never imagined. Among the world class facilities at The Star are:  (a) the Baylor Scott and White Health Center, a game-changing sports performance and healthcare destination focused on safety and research; (b) the Ford Center, a state-of-the-art, 510,000 square foot indoor athletic facility shared by the Dallas Cowboys, the City of Frisco, and Frisco ISD's high schools; (c) the Tostitos Championship Plaza, which serves as the heartbeat of The Star campus – it is the destination connecting fans with the Dallas Cowboys, creating memories for a lifetime; (d) the Dallas Cowboys Ring of Honor Walk Presented by Dr Pepper®, inspired by the Ring of Honor at AT&T Stadium, the area honors the 22 members of the Dallas Cowboys Football Club who have made outstanding contributions throughout the team's history; and (e) the High School Football Tribute Presented by the Texas Lottery Commission, commemorating their partnership with the Frisco ISD, the Dallas Cowboys alongside the Texas Lottery Commission created a High School Football tribute located at the front entrance of Ford Center.  Each of these world class venues contributes to the unique opportunity guests are treated to at The Star.

In this Motion, the Landlord seeks a determination that the automatic stay is not in place with respect to the Lease due to its prepetition termination. The Landlord alternatively seeks relief from the automatic stay to exercise its remedies under the Lease for postpetition events of default.[3] In addition, the Landlord seeks in the requested order a decretal paragraph compelling the Debtor to comply with applicable law and Lease terms pending departure.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1409. The statutory and rules bases for the relief sought in this Motion are 11 U.S.C. §§ 105(a), 362(b)(10), (d) and (j), 365(d)(3), 28 U.S.C. § 959(b) and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

A.      **General Background**

3.      On April 8, 2021 (the "Petition Date"), the Debtor filed its voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code and is a debtor in possession.

4.      On April 15, 2021, Scott M. Seidel was appointed subchapter V trustee (the "Subchapter V Trustee") in this case (the "Case"). *See* Docket No. 10.

5.      No committee has been appointed in this Case by the Office of United States Trustee, and the Court has not ordered otherwise pursuant to section 1181(b) of the Bankruptcy Code.

---

[3] While this Motion is primarily premised on the Debtor's postpetition violations of the Lease and applicable law, the postpetition violations are merely the continuation of the Debtor's historical prepetition business practices, as more fully discussed below.

B.      **The Lease, the Debtors' Default Thereunder, and the Termination of the Lease Prepetition**

6.      The Landlord and the Debtor entered into a "Shopping Center Lease" dated October 26, 2016, which was amended by the First Amendment to Shopping Center Lease dated December 13, 2018, the Second Amendment to Shopping Center Lease dated August 14, 2019, and the Third Amendment to Shopping Center Lease dated August 31, 2020 (collectively, the "Lease"). Relevant portions of the Lease and amendments thereto are annexed to the Stuart Declaration (defined below) as its Exhibit A.[4]

7.      On March 18, 2021, the Landlord sent a *Notice of Default* (the "Default Notice") to the Debtor for failure to pay Rent as required under the Lease.[5]  The Notice of Default provided the Debtor ten days to pay all unpaid obligations to the Landlord, pursuant to section 19.1(1) of the Lease.  On March 30, 2021, the Landlord sent the Debtor an *Event of Default* (the "Event of Default") following the Debtor's failure to pay any of the amounts outstanding to the Landlord as set forth and required by the Default Notice.  Copies of the Default Notice and Event of Default are annexed to the Stuart Declaration as Exhibits B and C thereto, respectively.   As of the Petition Date, the Debtor was at least $153,026 in arrears under the terms of the Lease.[6]

---

[4] Section 28.1 of the Lease provides that the "Tenant agrees to keep the terms and provisions of this Lease strictly confidential."  Consistent with such confidentiality requirement in the Lease, only those relevant portions of the Lease are annexed to the Stuart Declaration.  Presumably, the Debtor has a complete copy of the Lease, or one can be provided to it upon request.  The Landlord will provide to the Subchapter V Trustee following execution of an appropriate confidentiality arrangement.  In advance of the hearing on this Motion, if any, the Landlord may seek an appropriate order permitting the filing of the Lease under seal.

[5] The Default Notice sent on March 18, 2021 was not the first default notice issued by the Landlord to the Debtor, but was the most recent in a series of default notices provided over the life of the Lease.  As set forth in note 5 of the Stuart Declaration, the Debtor defaulted under the Lease several times because, for example, of failures to pay rent on time, as set forth in the November 8, 2019 and July 22, 2020 Default Notices, and for permitting objectionable noises to emanate from the premises, disturbing neighbors and residents, as set forth in the November 21, 2020 Default Notice.  In addition, the Debtor caused a mechanic's lien to be recorded against the property owned by the Landlord by a contractor (which is a default under section 19.1(7) of the Lease).  *See* Exhibit D to the Stuart Declaration.

[6] Landlord reserves all rights to amend and supplement this amount in light of the Debtor's continued occupancy of the premises postpetition after its purported holdover tenancy terminated.  *See* paragraph 24 herein.

8.      On April 5, 2021, representatives of the Debtor and the Landlord spoke following the Debtor's receipt of the Notice of Default and the subsequent Event of Default, and the Debtor's failure to timely cure in accordance with the Default Notice.  The Landlord advised that it was willing to provide the Debtor with a reasonable opportunity to vacate the premises as a result of the Debtor's failure to pay amounts outstanding to the Landlord and termination of the Lease.  In this regard, the Landlord requested that the Debtor provide a reasonable timetable for the Debtor to *get its affairs in order* as well as an outside date by which the Debtor would vacate the premises. The Debtor's representative inquired whether any new agreement or accommodation could be reached to allow the Debtor to use the premises notwithstanding the termination of the Lease.  The Landlord declined to enter into any new agreement to allow the Debtor to retain possession of the leased premises beyond the time reasonably required for the Debtor to remove its property due to the Debtor's inability to pay rent under the Lease and the Debtor's numerous violations for failure to operate its business in compliance with the terms of the Lease and applicable law (discussed below). The Landlord unambiguously informed the Debtor's representative that the Landlord desired that the Debtor vacate the leased premises, and there was clearly no misunderstanding on the Debtor's part.  Rather than respond with a reasonable proposed timeline to vacate the premises, the Debtor filed this Case. *See* Stuart Declaration at 6.

9.      Based upon the prepetition events discussed above (i.e., the sending of the Default Notice, the Debtor's failure to cure the default (timely or otherwise), the sending of the Event of Default and the prepetition conversations between and among the parties' representatives), the Lease was terminated prepetition and so was no longer in force on the Petition Date.  Therefore, this Court should grant the Landlord's request for a "comfort order" (as discussed below)

confirming that the automatic stay had been terminated under section 362(j) of the Bankruptcy Code.

**C.     The Debtor's Disregard of Applicable Law and Its Non-Monetary Obligations Under the Lease Prepetition and Postpetition**

10.     In the alternative, if this Court determines that the automatic stay with regard to the Lease continues to exist unterminated, the Court has good and valid reasons to lift the stay now because of the Debtor's non-compliance with applicable law and its breaches of its non-monetary obligations under the terms of the Lease postpetition.  As to non-monetary Lease obligations, Article VII of the Lease provides in pertinent part that (a) "Tenant shall operate its business . . . in an efficient, high class and reputable[7] manner . . . .," Lease § 7.1;[8] (b) shall not "take any other action which in the exclusive judgment of Landlord would constitute a nuisance or would disturb or endanger other tenants of the Shopping Center on unreasonably interfere with their use of their respective premises, nor do anything which would tend to injure the reputation of the Shopping Center," *id.* § 7.3;[9] (c) "Tenant shall take good care of the Demised Premises and keep the same free from waste at all times [and] neat, clean and free from dirt, rubbish, insects and pests at all times, and shall store all trash and garbage within the Demised Premises . . . .," *id.* § 7.4; and (d) "The Tenant shall procure, at its sole expense, any permits or licenses required for the transaction

---

[7] The use of terms *high class* and *reputable* in the Lease are not boilerplate concepts, but obligations that The Star requires in conformity with its world class reputation as a destination consistent with its facilities and other tenants. *See* note 2.

[8] Section 7.1 of the Lease further requires that "in no event shall Tenant use the Demised Premises for any of the restricted prohibited described on Exhibits "F" and "F-1" attached hereto."  Lease § 7.1.  Exhibit F of the Lease provides, in turn, "No portion of the Demised Premises shall be used for the following uses: . . . [a]ny use that is a public or private nuisance as my be determined by the applicable municipal authorities."  *Id.* Exh. F.  Further, in operating its business "in an efficient, high class and reputable manner", it is expected that tenants operate their businesses in a manner consistent with comparable retail districts in the area.

[9] Section 7.3 of the Lease further provides "Tenant shall not permit any objectionable or unpleasant orders or noises to emanate from the Demised Premises, not permit any radio, television, loudspeaker, or amplifier on the roof or outside the Demised Premises *or where the same can be seen or heard from outside the building* or in the Common Area . . . ."  Lease § 7.3 (emphasis added).

of business in the Demised Premises.  Tenant shall comply with the Declaration and all laws, ordinances, orders, rules and regulations of state, federal, municipal or other agencies or bodies having jurisdiction relating to the use, condition and occupancy of the Demised Premises . . . . Tenant will comply with the rules of the building adopted by Landlord . . . .," *id*. § 7.7.  As well, section 8.3 of the Lease provides that "Tenant shall keep the Demised Premises in good, clean condition and shall, at its sole cost and expense, make all needed repairs and replacements . . . ." *Id.* § 8.3.

11.    As set forth in the (a) Declaration of Kaleisha Stuart (the "Stuart Declaration") or (b) the Declaration of Colleen Burrows (the "Burrows Declaration"), attached hereto as Exhibit 2 and Exhibit 3, respectively, the Debtor operated the premises prepetition and postpetition in a manner that appears to have violated applicable alcohol laws and ordinances and created, and continues to create postpetition, a noise nuisance and other violations of law to occur and continue, all in violation of applicable law and/or the terms of the Lease.

12.    The Debtor's premises, especially its bar, is exceptionally familiar to the local police department, which prepetition has, upon information and belief, arrested over 40 of the Debtor's patrons since August 2020 for numerous instances of public intoxication, consumption of alcohol by minors, criminal mischief, fighting, and similar disorderly offences.  Approximately 24% of alcohol related arrests at The Star were related to the Debtor in 2019 and 2020. The police have also been required to respond to complaints at the Debtor's premises over 170 times prepetition since October 2019 for similar misconduct as well as noise disturbances, welfare investigations, theft/robbery, and other disturbances.   Upon information and belief, the Texas Alcoholic Beverage Commission has at least six investigations into alleged violations of its policies and regulations by the Debtor.  Burrows Declaration at 4.

13.     Postpetition, on April 10, 2021, the Frisco Police Department responded to a call at the Debtor's premises.  On that same night, and the following night, the Landlord received complaints from third parties about excessive noise emanating from the Debtor's premises. Burrows Declaration at 5.

14.     On April 17 and 18, 2021, the Landlord received further complaints from third parties about excessive noise emanating from the Debtors' premises, resulting in a request for police involvement on April 17, 2021.  Burrows Declaration at 6.

15.     As important as the Debtor's failure to comply with applicable laws and the provisions of the Lease is the effect such failures are having on the Landlord, other tenants of The Star and the overall community and patron perspective of The Star.  For example, prepetition, the Landlord received complaints that the Debtor's patrons regularly relieved themselves in common areas, including the parking lot, and vomited (ostensibly from the excessive consumption of alcohol served by the Debtor) on the patios and properties of other businesses operating at The Star. Notwithstanding identifying these issues to the Debtor, the Debtor has taken no action to curtail these practices by its patrons.  The Landlord also regularly receives complaints from a nearby condominium community related to the noise and disorder at the Debtor's bar and restaurant.  Burrows Declaration at 7.

16.     Postpetition, on or about April 13, 2021, the Debtor placed impermissible signage stating "We will be closing at 9pm for Spring Cleaning.  We apologize for any inconvenience and look forward to seeing you soon.  Trophy Park MGMT" (the "Closure Notice").  Thereafter, the Debtor failed to remain open to the public for business during the times required by the Lease. *See* Lease § 7.1 ("Tenant  .  .  .  shall keep the Demised Premises open to the public for business with adequate and competent personnel in attendance at least three hundred twenty (320) days per

year, from 11:00 a.m. until 2:00 a.m. (collectively, the 'Minimum Days and Hours'), except to the extent Tenant may be prohibited from being open for business by applicable law, ordinance or government regulation.").  The posting of the Closure Notice also violated the Lease because the Debtor failed to obtain the Landlord's prior consent to posting such signage.  *See* Lease § 11.1 ("Tenant shall not, without Landlord's prior written consent . . .  (c) affix signs . . . to the outside of any doors, columns or storefront walls.  Any interior signage must be tastefully and professionally done and the use of handscribed signs of any kind is expressly prohibited.  In addition, any interior signage that is visible from the exterior of the Demised Premises shall be subject to the prior written consent of Landlord.") and Lease Exhibit D (Signage Criteria).

## RELIEF REQUESTED

17.    The Landlord seeks an order of this Court:  (a) in the alternative, (i) confirming that the automatic stay has been terminated pursuant to section 362(j) of the Bankruptcy Code because the Lease terminated prepetition; or (ii) granting the Landlord's request that the automatic stay be lifted to permit the Landlord to terminate the Lease or take possession of the leased premises in accordance with the terms of the Lease and Texas law; and (b) compelling the Debtor to comply with applicable law and terms of the Lease pending departure.

## BASIS FOR RELIEF

**A.    The Landlord Is Entitled to Recover the Premises Because the Lease Terminated Prepetition**

18.    Section 362(j) of the Bankruptcy Code states:  "On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated."  11 U.S.C. § 362(j).[10]  As stated in *Collier on Bankruptcy*:

---

[10] Section 362 (c) states in pertinent part that the "stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate."  11 U.S.C. § 362(c)(1).

Section 362(j) provides that on request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated. A similar provision is found in section 362(c)(4)(A)(ii), stating that the court shall promptly enter an order confirming that no stay is in effect as a result of the application of section 362(c)(4). Orders entered under these provisions should be limited to confirming that the stay has terminated pursuant to section 362(c), and no additional relief should be granted. Bankruptcy Rule 9013 provides that a request for an order be made by motion and served on affected parties, initiating a contested matter under Rule 9014. The motion should include sufficient information for the court to determine whether the stay has been terminated or is not in effect based on the conditions set forth in section 362(c). . . . Thus, courts may wish to make use of any local court rules to permit the shortening of time periods for notice and response for motion seeking orders under section 362(c)(4)(A)(ii).

3 *Collier on Bankruptcy* ¶ 362.06[5] (16th ed. 2021) (footnotes omitted).

19.      As referenced above, the relief sought under section 362(j) is called a "comfort order" by various courts.  *See, e.g., Samuels v. Wilmington Savings Fund Society, FSB (In re Samuels)*, 2019 Bankr. LEXIS 635, at *3 n.5 (BAP 1st Cir. Feb. 28, 2019) (citing *Thomas v. Federal Nat'l Mortg. Ass'n (In re Thomas)*, 469 B.R. 915, 921 (BAP 10th Cir. 2012), *aff'd*, 573 F. App'x 753 (10th Cir. 2014)).  In fact, this Court has entered orders approving motions to find the stay inapplicable.  *In re Halo Wireless, Inc.*, No. 11-42465 (Bankr. E.D. Tex. Oct. 26, 2011) (Bankr. Judge Rhoades) [Docket Nos. 159, 160 and 161] (addressing section 362(b)(4) regulatory exception to stay).

20.      Also, as stated in *Collier Real Estate* (defined below):

It is settled law that a trustee may not assume a lease that has expired or been terminated prior to the commencement of the tenant's case under the Bankruptcy Code.  Under the terminology of the Code, the debtor's leasehold rights do not become "property of the estate" within the meaning of section 541.  This settled law is confirmed by section 365(c)(3), which provides that the trustee of a debtor-tenant under a nonresidential real property lease may not assume or assign the lease if it has been terminated under

nonbankruptcy law prior to the order for relief,[11] and in section 541(b)(2), which excludes from property of the estate any interest of a debtor under a nonresidential real estate lease which terminated at its stated expiration date prior to or during the pendency of the debtor's Bankruptcy Code case. . . .

Furthermore, section 362(b)(10) specifically provides that the automatic stay does not apply to any act by a lessor to obtain possession of nonresidential real property subject to a lease that has terminated by expiration of the stated term before commencement of the case..

1 *Collier Real Estate Transactions & Bankr. Code* ¶ 3.01[3][a] (2020) ("*Collier Real Estate*") (footnotes omitted) (discussing 11 U.S.C. § 362(b)(10): "The filing of a petition . . . does not operate as a stay – . . . under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property . . . .").[12]

21.    "The bankruptcy courts are to look to state law to determine whether a lease has been terminated before the commencement of the tenant's case under the [Bankruptcy] Code and the extent of the debtor's remaining interest, if any, under the lease." *Id.* Here, the Lease is governed by Texas law. *See* Lease § 28.9. Under Texas law, leases are construed in accordance

---

[11] 11 U.S.C. § 365(c)(3) ("The trustee may not assume or assign any executory contract or unexpired lease of the debtor . . . if . . . such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.").

[12] 3 *Collier on Bankruptcy* ¶ 362.06[5] n.63 ("Some courts have held that section 362(b)(10) applies both to leases that have terminated by the passage of the stated end date in the lease as well as leases that have terminated because of a default followed by an accelerated termination.) (citing, among other cases, *In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd*, 2000 U.S. App. LEXIS 8846, at *5 (2d Cir. May 2, 2000); *In re Southcoast Express, Inc.*, 337 B.R. 739, 742-43 (Bankr. D. Mass. 2006) (following *Policy Realty*: "Judge Scheindlin held that 'termination' as used in these statutes [11 U.S.C. §§ 362(b)(10), 541(b)(2) and 365(c)(3)] included the type of accelerated termination by default which terminates as lease as a matter of state law. He concluded that the pre-petition accelerated termination by default notice and subsequent termination notice, in accordance with the terms of the lease, constituted the expiration of the stated term. He therefore ruled that the automatic stay did not apply to the lessors' post-petition actions. In an unpublished opinion, the Second Circuit reached the same results as the district court and affirmed, but on different grounds.")).

with "the intention of the parties as that intention is expressed in the lease. The courts will enforce an unambiguous instrument as written; and, in the ordinary case, the writing alone will be deemed to express the intention of the parties." *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229, 47 Tex. Sup. Ct. J. 196 (2003); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423, 43 Tex. Sup. Ct. J. 647 (2000).

22.     Article 19.1 of the lease provides that "Upon the occurrence of any Event of Default, Landlord shall have the option to pursue any one or more of the following remedies, or any other remedy set forth in this Lease or otherwise permitted in law or in equity without further notice or demand whatsoever: . . . (A) Terminate this lease in which event Tennant shall surrender the Demised Premises to Landlord immediately upon receipt of notice by Landlord that Landlord has terminated this Lease. . . ."

23.     Here, upon issuing the Event of Default, the Landlord was entitled to terminate the Lease and the Debtor was required to immediately surrender the premises to the Landlord. The Landlord made clear that there would be no further term for the Lease, and that the Debtor must immediately begin arranging for surrender of the premises to the Landlord. Stuart Declaration at 6. Notwithstanding this conversation, and the accommodation by the Landlord to provide a period of time by which the leased premises must be fully vacated by the Debtor, the Debtor remained in possession of the premises and filed this Case. *Id.*

24.     While the Debtor might assert that it is currently a holdover tenant pursuant to the Lease, it is not because the Landlord also terminated the Debtor's holdover tenancy prepetition. The Lease provides that the Debtor could become a holdover a tenant if the Debtor did not enter into a new lease or a renewal of the Lease and paid a fee to the Landlord prior to expiration of the Lease. *See* Lease § 21. More specifically, the Debtor was required to remit to the Landlord 150%

of the greater of (a) the then market rate for the premises and (b) the Minimum Guaranteed Rental

(as such term is defined in the Lease) to the Landlord immediately prior to the expiration of the

Lease. *See id.* No such payment was made by the Debtor prepetition and thus the Debtor is not a

valid holdover tenant under the terms of the Lease. *See Bockelmann v. Marynick,* 788 S.W.2d

569, 571-72 (Tex. 1990) (providing that an expired or terminated lease may provide that its terms

continue to apply to a holdover tenant). Furthermore, the Landlord unambiguously informed the

Debtor's representative in their April 5, 2021 conversation that the Landlord did not desire to enter

into any further lease with the Debtor and that the Debtor should vacate the premises, after the

Debtor's representative requested permission to remain in possession of the premises. See Stuart

Declaration at 6.

25.    Because the Landlord properly exercised its rights to terminate the Lease and the

Debtor's purported holdover tenancy does not comply with the terms of the Lease, section

362(b)(10) applies,[13] and the Court should confirm that the automatic stay does not apply to the

Landlord pursuant to section 362(j) of the Bankruptcy Code.

**B.     Notwithstanding the Prepetition Termination of the Lease, the Court Should If
Necessary Terminate the Automatic Stay Due to the Debtor's Failure to Comply With
Applicable Law and the Non-monetary Obligations in the Lease[14]**

**1.     The Debtor Is Obligated, and Has Failed to Comply With Applicable
Law and the Non-monetary Obligations in the Lease.**

26.    Section 959(b) of title 28 of the United States Code states in pertinent part that: "a

trustee, receiver or manager appointed in any cause pending in any court of the United States,

including a debtor in possession, shall manage and operate the property in his possession as such

---

[13] *See* paragraph 19 herein.

[14] To the extent that this Court determines that the Debtor is a holdover tenant, the Debtor remains obligated to comply
with the terms of the Lease. *See* Lease § 21.

trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."  28 U.S.C. § 959(b).

27.     Also, section 365(d)(3) of the Bankruptcy Code provides that:  "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . .  Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."  11 U.S.C. § 365(d)(3).  *See In re Simbaki, Ltd*. 2015 Bankr. LEXIS 1142, at *6 (Bankr. S.D. Tex. Apr. 6, 2015) ("The plain language of § 365(d)(3) is clear:  the debtor-tenant must fully and timely perform its obligations under the lease.  The statute is silent, however, as to the precise *remedies* available to a landlord whose tenant ignores § 365(d)(3) and fails to pay post-petition rent.") (citing *In re Mr. Gatti's*, 164 B.R. 929, 931-33 (Bankr. W.D. Tex. 1994) ("While [section 365(d)(3)] expressly requires a debtor-tenant to timely perform all obligations accruing under the lease after commencement of the case, it fails to set out the landlord's remedies in the event of default.")). *See* 3 *Collier on Bankruptcy* ¶ 365.04[1] (16th ed. 2021) ("The consequences of a violation of section 365(d)(3) have been developed on a case-by-case basis.").

### 2.    The Debtor's Failure to Comply With Applicable Law and the Nonmonetary Covenants Is Sufficient Cause to Terminate the Automatic Stay.

28.     This Court should terminate the automatic stay due to the Debtor's failure to comply postpetition with applicable law and the terms of the Lease to permit the Landlord to terminate the Lease or recover possession of the premises.  A bankruptcy court has authority to terminate, annul, lift, or condition the automatic stay. *In re Choice ATM Enter.*, 2015 Bankr. LEXIS 689, at *6 (Bankr. N.D. Tex. March 4, 2015) (citing 11 U.S.C. § 362(d)).  After notice and

a hearing, the court shall grant relief to a party in interest from the automatic stay for "cause" pursuant to section 362(d)(1). *Id.*

29.     Although what constitutes "cause" within the context of section 362(d)(1) is undefined, bankruptcy courts "consider numerous factors when determining if a request for relief from the Automatic Stay is appropriate." *Id.* "Cause is an intentionally broad concept made so in order to permit the courts respond in equity to inherently fact-sensitive situations.'" *Mooney v. Gill*, 301 B.R. 543, 546-47 (N.D. Tex. 2002) (quoting *In re Sentry Park*, *Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)). In general, section 362(d) gives bankruptcy courts "flexibility to address specific exigencies on a case-by-case basis." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303-04 (5th Cir. 2005).

30.     There is no mandatory standard for finding "cause" within the Fifth Circuit. *Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*), 440 F.3d 238, 253 (5th Cir. 2006). In fact, different bankruptcy courts within the Fifth Circuit utilize different approaches to determining "cause." *Choice ATM.*, 2015 Bankr. LEXIS 689, at *7 nn.10 and 11 (noting that some courts use the twelve-part *Curtis* factors,[15] others use the seven-part *Johnson* factors,[16] and some

---

[15] The twelve *Curtis* factors include: (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the nonbankruptcy proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or processes in question; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties; (8) whether the judgment claim arising from the other action is subject to equitable subordination under section 510(c); (9) whether movants' success in the other proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the "balance of hurt." *Choice ATM*, 2015 Bankr. LEXIS 689, at *7 n.10 (quoting *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)).

[16] The seven *Johnson* factors include: (1) whether insurance coverage with a duty of defense is available to the debtor or the estate or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; (2) whether judicial economy favors the continuation of the action in the tribunal in which it was commenced,

courts use "a mixture of factors from both cases, using the factors appropriate to the circumstances of the case").[17]

31.     Not all factors may be relevant to each case. *In re Patel*, 2010 Bankr. LEXIS 2708, at *6-7 (Bankr. S.D. Tex. Aug. 16, 2010); *In re Kao*, 2015 Bankr. LEXIS 4293, at *6 (Bankr. S.D. Tex. Dec. 21, 2015).  Ultimately, regardless of which factors are utilized, granting relief from the automatic stay is left to the broad discretion of the bankruptcy court and is decided on a case-by-case basis.  *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001); *Patel*, 2010 Bankr. LEXIS 2708, at *7 (holding that Bankruptcy Code "gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case.").

32.     More than sufficient cause exists for lifting the stay if the Debtor continues to fail to comply with the requirements of applicable law and the nonmonetary terms of the Lease. 1 *Collier Real Estate* ¶ 3.01[3][b][i][A] (2020) ("The postpetition failure to perform section 365(d)(3) obligations gives rise to a possible basis for seeking . . . relief from the stay, and the possible termination of the trustee's right to use the premises.").  As more fully set forth above, the Debtor is continuing to cause a nuisance through continuing its prepetition practice of noise violations; encouraging ruckus, disruptive, and violent patronage; and failing to maintain common

---

to fix and liquidate the claims that then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; (3) whether the state-court litigation has progressed to trial readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial is deferred; (4) whether the issues presented are governed solely by state law or should be adjudicated by a specialized tribunal with expertise in their subject matter; (5) whether the litigation involves other parties over whom the bankruptcy court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; (6) whether the creditor has a probability of success on the merits; and (7) whether the interests of the debtor and the estate would be better served by resolution of the threshold bankruptcy-law issues in the bankruptcy court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.  *Choice ATM.*, 2015 Bankr. LEXIS 689, at *7 n.11 (quoting *In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989)).

[17] Also, a decision to lift the stay may be upheld on judicial economy grounds alone.  *In re Xenon Anesthesia Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing *In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994)); *Patel*, 2010 Bankr. LEXIS 2708, at *7 (same); *In re Young*, 2006 Bankr. LEXIS 2934, at *8 (Bankr. S.D. Tex. Oct. 20, 2006) (same).

areas, on a postposition basis.  Burrows Declaration at 5, 6, and 8.  Indeed, *just two days* following

the Petition Date, the Frisco Police Department was forced to expend time and resources, yet again,

to respond to a noise complaint against the Debtor.   While the Debtor is apparently not in

compliance postpetition with local ordinances, the Debtor is further out of compliance with its

obligations under*, inter alia*, Article VII of the Lease.  *Id*.  Furthermore, the Debtor's historical

violations of the Lease and applicable law, which are continuing to occur postpetition, including

the posting of the Closure Notice, have resulted in numerous complaints to the Landlord from

other commercial tenants at The Star (in addition to those in nearby communities), thereby

materially and adversely impacting not only the Landlord's operations and those of fellow tenants,

but also the enjoyment of visitors to The Star.  *Id.*

### 3.    The Debtor Cannot Reorganize Around the Lease.

33.    If the stay is lifted, rather than proceed under section 19.1 of the Lease regarding

remedies for events of default, the Landlord may opt to terminate the lease on 30 days' written

notice as provided in section 4 of the Third Amendment to the Lease (titled "Recapture" in the

Lease) (the "Recapture Provision")).  The Recapture Provision provides:

> Notwithstanding anything to the contrary in the Lease, at any time
> during the Lease Term, Landlord may deliver written notice to
> Tenant terminating the Lease (the 'Notice to Terminate').  On or
> before the date (the 'Termination Date') that is thirty (30) days after
> Landlord's delivery of the Notice to Terminate, Tenant shall vacate
> the Demised Premises and surrender possession thereof in
> accordance with the terms and provisions of the Lease, including,
> without limitation, the terms of Section 8.3 of the Lease.  Tenant
> shall continue to pay Minimum Guaranteed Rent, and all additional
> rentals and charges and perform all of Tenant's other covenants,
> duties and obligations pursuant to the terms of the Lease through
> and including the Termination Date.  As of the Termination Date,
> Tenant shall have no further right to use or occupy the Demised
> Premises and no other rights or obligations under the Lease, except
> for those obligations that may otherwise survive the expiration or
> termination of the Lease pursuant to the terms of the Lease.  Tenant
> understands that Landlord shall have no obligations to Lease the

Demised Premises to another tenant, such that, if Landlord fails to lease the Demised Premises prior to the Expiration Date of the lease term, Landlord shall not be deemed to be in default hereunder or otherwise liable in damages to Tenant, nor shall the terms of the Lease be affected.

Third Amendment to Shopping Center Lease § 4.

34.    The Recapture Provision has a direct effect on the Debtor's ability to assume and/or assign the Lease (if the Lease did not terminate prepetition), and makes the Lease of minimal value to the Debtor.  In this regard, the Lease cannot be a part of a reorganization, notwithstanding what might be the Debtor's assertions of an ability to reorganize, as the exercise of the Recapture Provision is the Landlord's absolute right to terminate the Lease, at will, on thirty days' notice.[18] Any attempt for the Debtor to reorganize around the Lease while continuing to engage in its historical and current practice of harmful and disruptive conduct would be speculative at best.  In any event, the Landlord would be entitled to exercise the Recapture Provision postconfirmation. It would be unlikely that a reasonable potential assignee of the Lease would attribute material value to any lease containing such a provision in the event that the Debtor determined to seek the assignment of the Lease.

35.    Further complicating any attempt by the Debtor to assume or assume and assign the Lease are the significant prepetition arrearages, approximately $153,000, which are required to be cured as part of any such process, thereby limiting any net-value generated by the disposition (or continuation) of the Lease by the Debtor.    The Debtor will face additional, likely

---

[18] Importantly, any assumption or assumption and assignment of the Lease would be *cum onere*, and subject to the Landlord's rights provided for in, *inter alia*, the Recapture Provision.  *See, e.g., Quantum Diversified Holdings v. Wienheimer (In re Escarent Entities, L.P.),* 423 F. App'x 462, 466 (5th Cir. 2011)) ("a debtor 'must assume the entire contract, *cum onere'*—the debtor must accept 'both the obligations and the benefits of the executory contract.'") (quoting *Century Indem. V NGC Settlement Trust (In re National Gypsum Co.),* 208 F.3d 498, 506 (5th Cir. 2000)); *Valley Forge Plaza Assocs. v. Schwartz,* 114 B.R. 60, 62 (E.D. Pa. 1990) (providing that the Bankruptcy Code does not prevent termination of a contract by its own terms, and the "ability to terminate a contract on its terms survives bankruptcy.").

unsurmountable, hurdles of providing the Landlord adequate assurance of future performance to the extent the Debtor attempts to assume and craft a plan of reorganization around the Lease in light of, and upon information and belief, the Debtor's unprofitable operations, the approximate $1.9 million secured loan though the United States Small Business Administration, as well as other secured indebtedness, as evidenced by Uniform Commercial Code Financing Statement filings with the Texas Secretary of State.[19]  Stuart Declaration at Exhibit E.

36.     Even if the Court determines that the Debtor is a holdover tenant, sufficient cause exists to lift the stay because the underling Lease has been terminated.  *In re Mimi's of Atlanta, Inc.,* 5 B.R. 623, 629 (Bankr. N.D. Ga. 1980) (holding that when a lease is terminated prepetition, there is no executory interest available for a debtor in possession to assume and, therefore, sufficient cause exists to lift the stay); *In re 163rd St. Med. Corp.,* 67 B.R. 499 (S.D. Fla. 1986) (holding that because a lease terminated prepetition, it was not assumable and therefore, stay relief was appropriate); *see In re Scarsdale Tires, Inc.,* 47 B.R. 478, 480 (S.D.N.Y. 1985) (remarking that "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. § 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365").

37.     Accordingly, more than sufficient cause exists to terminate the automatic stay to allow the Landlord to exercise its rights pursuant to the terms of the Lease and Texas state law.

---

[19] While the Landlord maintains a limited understanding of the Debtor's financial condition at this time as no Statements of Financial Affairs have yet been filed nor any Schedules of Assets and Liabilities, concurrently with the filing of this Motion, the Landlord intends to issue appropriate discovery on these issues and other issues presented in the Motion.  Notwithstanding such further evidence expected to be obtained and presented, the Landlord asserts that this Motion can be granted on the evidence presented herewith in the Declarations.

**C.**      **The Debtor Should Be Compelled to Comply With Applicable Law and the Terms of the Lease Pending Its Departure From the Premises**

38.      This Court should compel the Debtor to comply with the terms of the Lease as well as applicable laws and regulations pending departure from the premises.  As stated in *Collier Real Estate*:  "The postpetition failure to perform section 365(d)(3) obligations gives rise to a possible basis for seeking adequate protection or relief from the stay, and the possible termination of the trustee's right to use the premises. . . .  If the trustee does not perform, and does not obtain an extension of time for performance under section 365(d)(3), the landlord may apply to the court to compel performance.  If the trustee is unable to perform, the landlord may seek an order of the court compelling surrender of the premises and rejection of the lease."  *Collier Real Estate* ¶ 3.01[3][b][i][A] and [B][ii].

39.      Therefore, under section 365(d)(3) of the Bankruptcy Code, the Debtor, as debtor in possession, is required to comply with the nonmonetary provision in the Lease and, under 28 U.S.C. § 959(b), applicable law.[20]  By order of this Court, the Debtor should be compelled to do so – pending the orderly surrender of the premises.

---

[20] *See Saravia v. 1736 18th Street*, 844 F.2d 823, 826 (D.C. Cir. 1988) (addressing landlord debtor's motion to reject residential leases in building where there was no hot water or security and accumulated trash:  "Congress explicitly stated that debtors-in-possession are not exempted from local law by virtue of federal bankruptcy law; rather debtors are to 'manage and operate the property . . . according to the valid laws of the [jurisdiction] in which such property is situated.'  28 U.S.C. § 959(b).  In our view, section 959(b), resolving as it does any possible conflict between the housing regulations of the District of Columbia and section 365 of the bankruptcy code, plainly controls this case."), *quoted in Louisiana Pub. Serv. Comm'n v. Mabey (In re Cajun Elec. Power Coop.)*, 185 F.3d 446, 453-54 (5th Cir. 1999) ("'[T]he general bankruptcy policy of fostering the rehabilitation of debtors [will not] serve to preempt otherwise applicable state laws dealing with public safety and welfare.'") (quoting *Robinson v. Michigan Consol Gas. Co.*, 918 F.2d 579, 589 (6th Cir. 1990)).  *Cf. In re Circle K Corp*., 1991 Bankr. LEXIS 1190, at *16, 36-37 and 50-51 (Bankr. D. Ariz. Apr. 5, 1991) (addressing debtors' request to reject leases:  "The lessor states the debtor must comply with Section 959(b) until the order to reject is entered.  Section 365(d)(3) of the Code compels enforcement of all of the debtors duties before rejection. . . .  I believe, accordingly, that the purpose of the rule is better served if Section 959(b) is not applicable since the debtor is no longer conducting business at these locations. . . .  Essentially, all I am holding is that the environmental concerns expressed here are of such a nature that they can adequately be dealt with within the confines of Section 365 and there is no need for Judges to rewrite the statute in at lease these particular factual circumstances to impose additional requirements on the debtor-in-possession. . . .  In conclusion, the debtor appears to have complied with minimal requirements for closing the underground storage tanks.  It does not appear that under Section 959(b) or the *Midlantic* decision that the debtor needs to comply with every real or imagined

40.     The Landlord further requests that any order granting this Motion be a final order not subject to any stay.  Bankruptcy Rule 4001 states in pertinent part that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  Under the circumstances here (where public safety is a primary factor), waiver of such Bankruptcy Rule 4001(a)(3) stay is appropriate.

**WHEREFORE**, for the reasons set forth above, the Landlord respectfully requests that the Court issue an order (a) in the alternative, (i) confirming the termination of the automatic stay pursuant to section 362(j) of Bankruptcy Code because the Lease terminated prepetition; or (ii) modifying the automatic stay for the purpose of the Debtor terminating the Lease or taking possession of the leased premises; and (b) compelling the Debtor to comply with applicable law and the non-monetary terms of the Lease; and (c) granting such other and further relief as the Court finds just and proper under the circumstances.

Dated:  April 20, 2021                              Respectfully submitted,

                                                    */s/ Michael D. Warner*
                                                    Michael D. Warner (TX Bar No. 00792304)
                                                    Benjamin L. Wallen (TX Bar. No. 24102623)
                                                    **PACHULSKI STANG ZIEHL & JONES LLP**
                                                    440 Louisiana Street, Suite 900
                                                    Houston, TX 77002
                                                    Telephone:  (713) 691-9385
                                                    Email: mwarner@pszjlaw.com
                                                    Email: bwallen@pszjlaw.com

                                                    *Counsel for Blue Star Frisco Retail, LLC*

---

environmental situation before it can reject a lease.").  Here, the Debtor is operating its business on the premises, so arguably both section 959(b) of title 28 and section 365(d)(3) of the Bankruptcy Code apply.

## CERTIFICATE OF SERVICE

I, Michael D. Warner, Esq., certify that the foregoing Motion was served in accordance with LBR 9103(f) in a manner consistent with Fed. R. Bankr. P 7004(b).

*/s/ Michael D. Warner*_____
Michael D. Warner, Esq.


## CERTIFICATE OF CONFERENCE

I, Michael D. Warner, Esq., conferred with Debtor's counsel *via* telephone on April 16, 2021 regarding the relief requested in this Motion.  Debtor's counsel indicated that he was not yet able to take a position on the relief requested in the Motion.

*/s/ Michael D. Warner*_____
Michael D. Warner, Esq.

**Debtor:**
Trophy Hospitality, LLC
DBA Trophy Parkl
3351 Waverly Drive
Celina, TX 75009-1501

**Attorney for Debtor:**
Eric A. Liepins
12770 Coit Road
Suite 1100
Dallas, TX 75251

**20 Largest Unsecured Creditor:**
Aramak Uniform Services
P.O. Box 731676
Dallas, TX 75373

Bigs Investment Holdings, LLC
c/o Travis Richard
5335 Spring Valley
Dallas, TX 75234

Blue Star Frisco, LP
8000 Warren Parkway
Building 1, Suite 100
Frisco, TX 75034

Celtic Bank
268 S State Street
Suite 300
Salt Lake City, UT 84111

Fix A Drip
8732 Ukiah
Dallas, TX 75227

Purely Meat Company
4345 W Division
Chicago, IL 60651

Sani Servant
3100 E Meadows
Mesquite, TX 75150

Shiloh Oak Investment, LLC
c/o Travis Richard
5335 Spring Valley
Dallas, TX 75234

Small Business Admin
PO Box 3918
Portland, OR 97208

Wade Electric
7217 Parwelk
Dallas, TX 75235

**Trustee:**
Scott Seidel (SBRA V)
Sub V Chapter Trustee
6505 West Park Blvd, Ste. 306
Plano, TX 75093

**U.S. Trustee:**
John Vardeman, Esq.
Office of the U.S. Trustee
110 N. College Ave., Suite 300
Tyler, TX 75702

**U.S. Attorney General:**
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC  20530

**Request For Notice Parties:**
Frisco ISD
c/o Perdue Brandon Fielder et al
1919 S. Shiloh Rd, Suite 310, LB 40
Garland, TX  75042

City of Frisco
c/o Linebarger Goggan Blair & Sampson
2777 N. Stemmons Frwy, Suite 1000
Dallas, TX 75207