Megan M. Adeyemo (TX. Bar #24099595)
GORDON REES SCULLY MANSUKHANI, LLP
2200 Ross Avenue, Suite 3700
Dallas, TX  75201
Ph: (214) 231-4660 / Fax: (214) 461-4053
Email:  madeyemo@grsm.com

Attorneys for CELTIC BANK CORPORATION

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| TROPHY HOSPITALITY, LLC, | ) Case No.:  21-40512-11 |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |

**OBJECTION TO CONFIRMATION OF CHAPTER 11 SMALL BUSINESS
SUBCHAPTER V PLAN**

Celtic Bank Corporation ("Celtic Bank"), by and through its counsel, Gordon Rees Scully Mansukhani, LLP, hereby files its Objection to Confirmation of Chapter 11 Small Business Subchapter V Plan ("Plan") filed by Trophy Hospitality, LLC (this "Debtor") and in support thereof states as follows:

The Court should deny confirmation of Debtor's Plan because it is unconfirmable on its face in light of the 1111(b) election of secured creditor, Celtic Bank.

In or about January 30, 2019, Celtic Bank provided financing to the Debtor to enable it to acquire various equipment, furniture, fixtures and inventory for its new business operations.  The loan was documented in a number of agreements including the U.S. Small Business

1

Administration Note dated January 30, 2019 in the original principal amount of $2,050,000.00 pursuant to which Debtor was required to pay principal and interest payments of $24,883.91 every month beginning seven months from January 30, 2019, with interest adjusted quarterly (the "Note"). The term of the Note was for ten years six months from the date of the Note (January 30, 2019).

The obligations under the Note were secured by the "Collateral" as described in the Cash Collateral Pledge and Security Agreement dated January 30, 2019 granting a security interest in, among other things, the Accounts, all cash, certificates, interest, dividends, deposits, deposit accounts, all as more particularly described in the Pledge Agreement. The obligations under the Note were further secured by Collateral described in the Commercial Security Agreement granting Celtic Bank a security interest in, among other things, "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles, Purchase Money Security Interest in all Equipment, Purchase Money Security Interest in all Fixtures, and Purchase Money Security Interest in all Inventory" together with additional collateral as described in the Commercial Security Agreement. A true and correct copy of the Note, Cash Collateral Pledge and Security Agreement and Commercial Security Agreement were attached as part of Celtic Bank's proof of claim filed in this case (Claim number 3). A true and correct copy of Celtic Bank's proof of claim filed as fully secured in the amount of $1,794,983.54 is attached to the Request for Judicial Notice filed in support hereof ("RFJN") as Exhibit 1.

Debtor's Plan of Reorganization for Small Business Under Chapter 11 [Docket No. 43] (the "Plan") classifies Celtic Bank's claims in Classes 4 (Allowed Secured Claims of Celtic Bank) and 5 (Allowed Unsecured Claims, including deficiency claim of Celtic Bank). A true and

correct copy of the Plan, with projections, is attached as Exhibit 2 to the RFJN. In describing Celtic Bank's treatment as a Class 4 creditor, the Debtor states:

"The Debtor would show the value of the Collateral that secures the Note is $300,000. Celtic shall have a secured claim in the amount of $300,000. The balance of Celtic claim shall be treated as an unsecured claim in Class 5. The Allowed Secured Claim shall be paid in full with interest at the rate of 5% per annum in 60 equal monthly payments commencing on the Effective Date. Celtic shall retain its current liens on the property of the Debtor until paid in full under the terms of this Plan.

Debtor's Plan proposes to pay Class 5 from an unsecured creditors pool to be funded by the Debtor in payments of $2,500 per month for sixty months from which creditors in this class will be paid on a pro rata basis.

Celtic Bank objects to confirmation of the Plan because the Plan does not satisfy the requirements of 11 U.S.C. § 1129(a)(3). Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." The Plan is not proposed in good faith for the following reasons.

First, the Plan does not clearly state that Debtor's obligations under the applicable loan documents are reaffirmed.

Second, due to the significant amount past due, the plan is not feasible.

Third, the Plan does not address Debtor's use of Celtic Bank's cash collateral during the pendency of the case,

Fourth, the Plan provides no basis to reduce Celtic Bank's secured claim to $300,000. In fact, Debtor's filings with this Court on April 28, 2021 show a book value of 2,072,814.31. [Dkt no. 23, p. 2]. *See* RFJN at Exhibit 3. Moreover, Celtic Bank has made an 1111(b)(2) election.

[Dkt. No. 60] *See* RFJN at Exhibit 4. Therefore, the Plan's failure to provide for payment to Celtic Bank in the total amount of its secured claim of at least $1,794,983.54, plus interest at the Note rate renders the Plan unfair and inequitable on its face.

Celtic Bank's Proof of Claim provides a collateral value of $1,794,983.54 and thus Celtic Bank holds a secured claim of $1,794,983.54. See Exhibit 1 to RFJN. The Court's Order Setting Plan Related Deadlines and Hearing On Confirmation [Dkt. No. 47] set August 10, 2021 as the deadline for 1111(b) elections. Celtic Bank timely made this election. RFJN at Exhibit 4.

Debtor's Plan appears to follow the default rule in a bankruptcy case for treatment of claims that are allegedly under-secured. Debtor argues, without any evidence, that Celtic Bank's claim is under-secured, valuing the collateral at $300,000. Therefore, in its Plan, Debtor has divided Celtic Bank's claim into its "secured" and "unsecured" components. See 11 U.S.C. § 506(a)(1). However, section 1111(b)(2) provides that if a "class" of claims so elects, then "notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." If a class of secured claims makes the election under section 1111(b)(2) then the full amount of each such claim, and not just an amount that is equal to the value of the respective underlying collateral, must be treated as a "secured" claim under a plan of reorganization.

An election under section 1111(b)(2) affects a debtor's ability to confirm a plan of reorganization over the objection of a secured creditor. A plan cannot be confirmed over the objection of a secured creditor in a subchapter V case unless the plan is "fair and equitable" with respect to its secured claims. *See* 11 U.S.C. § 1191(b). This, in turn, requires that the treatment of the relevant secured claims comply with the requirements of section 1129(b)(2)(A) of the Bankruptcy Code. *See* 11 U.S.C. §§ 1191(c)(1). Section 1129(b)(2)(A) provides that a plan is

4

"fair and equitable" as to non-consenting secured creditor claims if the plan meets one of three tests:

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

The Debtor's Plan does not satisfy any of these tests. Debtor proposes to pay Celtic Bank a fraction of its $1,794,983.54 secured claim [RFJN at Exhibit 1] by making payments totaling only $300,000 under Class 4 (the alleged, but unsupported value of the Collateral), plus 5% interest (the Note rate is 6% per annum, variable) and at most 40% of its Class 5 "deficiency" claim will be paid under Debtor's current proposed Plan. This is not fair and equitable as defined by the section 1129 which requires that Celtic Bank be paid its secured claim of $1,794,983.54 in full over time.

Debtor's projections filed with its Plan confirm it is able to pay Celtic Bank within the parameters of the original maturity date. Specifically, the Plan states the landlord claim and

taxes are set to a 12-month payment plan. Celtic Bank's proposed Plan modification would absorb a portion of the monthly debt after these claims are satisfied. As the Plan stands, the administrative landlord claim and past due taxes consume $13,769 of the Debtor's monthly cash-flow and Celtic Bank will absorb $9,893.81 of those freed up funds starting in month 13 under the proposed Plan modification. The projections confirm that the Debtor can pay Celtic Bank is entire claim by its promised maturity date. A true and correct copy of the Debtor's projections is attached to the RFJN as part of Exhibit 2.

Celtic has been discussing these objections with Debtor and expects to continue to do so. At this time, an agreement has not been reached. Absent a consensual resolution, the Court must deny confirmation of the Plan, and grant such further and other relief as is just and proper.

Dated: August 17, 2021

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ Megan M. Adeyemo
Megan M. Adeyemo
2200 Ross Avenue, Suite 3700
Dallas, TX  75201
Ph: (214) 231-4660 / Fax: (214) 461-4053
Email:  madeyemo@grsm.com

Counsel for Celtic Bank Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 17, 2021, a true and correct copy of the foregoing document was electronically filed and served via CM/ECF on all parties that have entered an appearance and requested service in the above-referenced case.

/s/ Anita Soto
For Gordon Rees Scully Mansukhani LLP