Megan M. Adeyemo (TX. Bar #24099595)
GORDON REES SCULLY MANSUKHANI, LLP
2200 Ross Avenue, Suite 3700
Dallas, TX 75201
Ph: (214) 231-4660 / Fax: (214) 461-4053
Email: madeyemo@grsm.com

Attorneys for CELTIC BANK CORPORATION

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TROPHY HOSPITALITY, LLC, | ) | Case No.: 21-40512-11 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## DECLARATION OF JEFFERY ORGILL IN SUPPORT OF CELTIC BANK CORPORATION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)

I, Jeffery Orgill, declare as follows:

1.    I am the Vice President Special Assets and Loan Servicing for Celtic Bank Corporation. I have personal knowledge of the following facts, except for those based on information and belief, which I believe to be true, and if called upon to testify, I could and would competently testify to their truth and accuracy. I submit this declaration in support of Creditor Celtic Bank Corporation's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and (2).

2.    I am informed and believe that on or about October 26, 2016, Debtor and Blue Star Frisco Retail, LLC ("Landlord") entered into the Shopping Center Lease

(together with all amendments, the "Lease") with Trophy Hospitality, LLC ("Debtor") for

6770 Winning Drive, Suite 900, Frisco, TX 75034 (the "Property").

3.      I am informed and believe that on or about December 13, 2018, Debtor and

Landlord entered into the First Amendment to the Shopping Center Lease.

4.      On or about December 14, 2018, in preparation for Celtic Bank's loan to

Debtor, Landlord agreed to subordinate its interest in all of Debtor's collateral located on

the Property to Celtic Bank's interests as set forth in the Landlord Lien Subordination,

Collateral Access and Notice of Assignment of Lease Agreement ("Subordination

Agreement"). A true and correct copy of the Subordination Agreement is attached hereto

as **Exhibit 1**, and incorporated herein by reference

5.      On or about January 30, 2019, Celtic Bank provided financing to Debtor to

enable it to acquire various equipment, furniture, fixtures and inventory for its new business

operations.

6.      The loan was documented in a number of agreements including the U.S.

Small Business Administration Note dated January 30, 2019 in the original principal

amount of $2,050,000.00 pursuant to which, Debtor was required to pay principal and

interest payments of $24,883.91 every month beginning seven months from January 30,

2019, with interest adjusted quarterly (the "Note"). The term of the Note was for ten years

six months from the date of the Note.

7.      The obligations under the Note were secured by the "Collateral" as

described in the Cash Collateral Pledge and Security Agreement dated January 30, 2019

granting a security interest in, among other things, the Accounts, all cash, certificates,

interest, dividends, deposits, deposit accounts, all as more particularly described in the Pledge Agreement.

8.      The obligations under the Note were further secured by Collateral described in the Commercial Security Agreement granting Celtic Bank a security interest in, among other things. "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles, Purchase Money Security Interest in all Equipment, Purchase Money Security Interest in all Fixtures, and Purchase Money Security Interest in all Inventory" together with additional collateral as described in the Commercial Security Agreement.

9.      Celtic perfected its security interest through, among other things, filing UCC-1 Financing Statements.

10.      On April 8, 2021, the Debtor filed its voluntary petition under Subchapter V of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

11.      On May 12, 2021, I signed and caused Celtic Bank's proof of claim to be filed in the Trophy Hospitality case in the fully secured amount of $1,794,983.54. A true and correct copy of Celtic Bank's Proof of Claim is attached hereto as **Exhibit 2.** Celtic Bank's proof of claim included as exhibits true and correct copies of the Note, Pledge Agreement, Commercial Security Agreement and perfection instruments as described in paragraphs 5-9, above.

12.      On August 21, 2021, the Landlord served the Debtor with Notice of Event of Default and Termination of Lease.

13.    On August 21, 2021, Landlord sent Celtic Bank a Notice of Termination Event pursuant to the terms of the Subordination Agreement.  A true and correct copy of the Notice of Termination is attached hereto as **Exhibit 3.**

14.    The Subordination Agreement provides, among other things, Celtic Bank a disposition period of thirty (30) days following a termination notice without interference by Landlord, to enter the Property and inspect or remove any and all of the Collateral in connection with the enforcement of its rights pursuant to the Credit Agreement (the "Disposition Period"). Celtic Bank is required to pay for occupancy after the Disposition Period pursuant to paragraph 4(c) of the Subordination Agreement. **Exhibit 1,** herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called as a witness I could and would so testify.


Executed this _2nd_ day of September 2021 in _Salt Lake City_, Utah.

_____
Jeffery Orgill

# EXHIBIT 1

Celtic Bank Loan No.: ~~15014010~~

Loan Amount: $ 2,050,000

## LANDLORD LIEN SUBORDINATION, COLLATERAL ACCESS AND NOTICE OF ASSIGNMENT OF LEASE AGREEMENT

THIS LANDLORD'S LIEN SUBORDINATION, COLLATERAL ACCESS AND NOTICE OF ASSIGNMENT OF LEASE AGREEMENT ("Agreement") is made and entered into as of this 14th day of December , 201 8 , by and among BLUE START FRISCO RETAIL, LLC , a Delaware limited liability company ("Landlord"),

TROPHY HOSPITALITY, LLC ("Tenant"), and CELTIC BANK CO ORATION, a Utah corporation ("Lender").

## WITNESSETH:

WHEREAS, Landlord and Tenant are party to that certain Agreement of Lease, dated 10/26/2016 (together with all amendments and modifications thereto, the "Lease"), pursuant to which Landlord leases to Tenant certain premises with an address of 6770 Winning Drive, Suite 900, Frisco, TX, 75034 , as more particularly described in the Lease (the "Premises").

WHEREAS, Lender has made or is about to make one or more loans, advances, and/or other financial accommodations to Tenant which may be amended, supplemented, restated, refinanced, replaced or otherwise modified from time to time, with Tenant (the "Loan").

WHEREAS, to secure the obligations arising under the Loan, Tenant has granted to Lender a security interest in and lien upon Tenant's present and after acquired assets, including, without limitation, Tenant's:

(A) X personal property,

(B) X inventory, chattel paper, and general intangibles,

(C) X goods,

(D) X trade fixtures

(E) X machinery and equipment

(F) X trade fixtures purchased with Loan proceeds* (see Paragraph 4(a) below),

(G) X machinery and equipment purchased with Loan proceeds* (see Paragraph 4(a) below),

together with all additions, substitutions, replacements and improvements to, and the products and proceeds of the foregoing and any books and records (including all computer systems utilized by Tenant) (collectively, the "Collateral").

WHEREAS, as a courtesy to Tenant, Landlord is willing to facilitate the Loan by (1) agreeing to subordinate its interest, if any, in the Collateral, (2) to permit Lender access to the Collateral located at the Premises, and (3) allow Tenant to assign its rights under the Lease to Celtic Bank, subject to the terms and conditions in this Agreement.

## **AGREEMENT**

NOW, THEREFORE, in consideration of any financial accommodation extended by Lender to Tenant at any time, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      A true and correct copy of the Lease is attached as <u>Exhibit A</u>, and if Tenant is currently occupying the Premises, to the best knowledge of Landlord, the Lease is in full force and effect and Landlord is not aware of any existing default under the Lease. Landlord also agrees that Tenant's assignment of its rights under the Lease to Lender, which assignment takes effect only if a Termination Event occurs, is not a violation of a Lease provision or convenant.

2.      Landlord agrees, subject to the conditions set forth in this Agreement, to subordinate any lien it may have in the Collateral pursuant to the terms of the Lease or at law to any valid lien of Lender in and to the Collateral; provided, however, that this subordination shall not extend to any portion of the Collateral which is or becomes affixed to the Premises (other than Collateral consisting of trade fixtures such as equipment bolted to the floor, which shall not be deemed a fixture or part of the real property but shall at all times be considered personal property), unless the affixed Collateral can be readily detached and removed from the Premises without material damage to the Premises.

3.      Prior to a Termination Event or Expiration Event (each as defined below), Lender or its representatives or it agents may, upon reasonable prior notice to Landlord, enter upon the Premises during normal business hours to inspect or remove any or all of the Collateral in connection with the enforcement of its rights pursuant to the Loan and Landlord agrees not to unreasonably interfere with Lender or its representatives or agents with respect thereto; provided, however, that upon a Termination Event or Expiration Event, or in the event Lender acts to exercise its rights to against the Collateral, the terms of Paragraph 4 will control in all respects.

4.

(a)      If (i) Lender acts to exercise its rights against the Collateral, or (ii) Landlord regains possession of the Premises due to termination of the Lease, an event of default by Tenant, or otherwise (expressly excluding an Expiration Event, a "Termination Event") and (iii) Collateral remains in the Premises, then Lender will have, for a period of thirty (30) days after (A) receiving written notice from Landlord of a Termination Event addressed to the attention of "General Counsel" (see Paragraph 8) (the "Disposition Period"), or (B) providing notice to Landlord of a Tenant default, a limited, temporary license to enter upon the Premises during normal business hours without interference by Landlord to inspect or remove any or all of the Collateral in connection with the enforcement of its rights pursuant to the Credit Agreement; provided, however, that: (X) Lender shall not occupy and/or possess the Premises for a period longer than the 30-day Disposition Period unless it pays for such occupancy under the terms of Paragraph 4(c) herein; and (Y) Lender, its affiliated entities, or each of their respective representatives, agents, employees, contractors, or other similar parties shall not hold any auction or sale of the Collateral at or from the Premises.

(b)      To the extent not paid or prepaid by the Tenant, Lender shall pay Landlord a sum for its use and occupancy of the Premises for each day beyond the 30-day Disposition Period on a per diem basis, in an amount not to exceed the per diem payment due under the current Lease, for each day

beyond the 30-day Disposition Period until the date on which the Lender vacates the Premises which date, unless an extension is agreed to in writing between Lender and Landlord, shall not be more than ninety (90) days from when Lender receives notice as described in paragraphs 4(a) and 8 herein, or Lender acts to exercise its rights against the Collateral, it being understood, however, that the Lender shall not, and will not, assume any of the obligations of Tenant to Landlord, including without limitation any obligation to pay any past due rent owing by Tenant or any other unperformed or unpaid obligations of Tenant under the Lease.

(d) The repossession of the Premises by Landlord upon an expiration of the stated term of the Lease (an "Expiration Event") shall not be deemed to be a Termination Event and, from and after such date, Lender shall have no rights under this Agreement to enter upon the Premises for any purpose without the prior written consent of Landlord, and Landlord shall have no liability whatsoever to Lender pursuant to the terms of, or in connection with, this Agreement; provided, however, that if a Termination Event occurs prior to an Expiration Event and Lender is exercising its rights pursuant to subsection (a) above, then subsection (a) shall control in all respects.

5. If Lender at any time occupies the Premises for the purposes of disposition of the Collateral, conducting an inventory of the Collateral pursuant to the terms of, or in connection with, the Loan or this Agreement or otherwise, such entry shall be at its sole risk, and Landlord shall not be liable in any way for any injury, loss or damage occurring as a result of such entry upon the Premises by Lender, and Lender shall be responsible, in each case at Lender's sole cost and expense, for the prompt repair in all respects of any damage to the Premises caused by or through Lender, its affiliated entities, or each of their respective representatives, agents, employees, contractors, or other similar parties during the period in which Lender (or any party acting by or through Lender) is on the Premises (ordinary wear and tear excluded).

6. Lender or its agents shall provide as appropriate proof of liability and workers' compensation insurance to Landlord prior to entry onto the Premises.

7. During any period in which Lender is using or occupying the Premises, Lender agrees that it will cooperate with Landlord as to access to the Premises for purposes of marketing the Premises for lease, making repairs and improvements to the Premises, and for any other reasonable purpose.

8. All notices, **including any notice of a Termination Event as required in Paragraph 4(a) herein**, under to be given under this Agreement shall be in writing and mailed postage prepaid by certified or registered mail, return receipt requested, or delivered by personal or courier delivery to Landlord and Lender (as may be applicable) at the addresses set forth below, or at such other addresses as Landlord or Lender may designate in writing in accordance with this paragraph. Notices shall be deemed received upon the earlier to occur of (a) actual receipt or (b) if sent by personal delivery, upon receipt, if sent by U.S. certified or registered mail, return receipt requested, the second business day after mailing or if sent by courier service, the next business day after mailing.

Lender:

Celtic Bank Corporation
268 South State Street, Ste. 300
Salt Lake City, UT 84111
**Attention: General Counsel**

Landlord:

Blue Star Frisco Retail, LLC
1 Cowboys Way, Ste. 100
Frisco, TX 75034
Attn: Legal Department
With a copy to:
Trophy Hospitality, LLC
4331 Hollow Oak Drive
Dallas, TX 75287

9. This Agreement shall be governed and controlled by, and interpreted under, the laws of the State in which the Premises is located, without reference to the conflict of law principles of any other state.

10. This Agreement shall inure to the benefit of Lender, and its respective successors and assigns, and shall be binding upon Landlord, its representatives, heirs, successors and assigns.

11. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of such counterparts shall constitute one Agreement. Execution copies of this Agreement may be delivered by facsimile or email, and the parties hereto agree to accept and be bound by facsimile signatures or scanned signatures transmitted via email hereto, which signatures shall be considered as original signatures with the transmitted Agreement having the binding effect as an original signature on an original document. Notwithstanding the foregoing, Tenant and Lender shall, upon Landlord's request, deliver originally signed copies of this Agreement to Landlord at the address set forth in such request. No party may raise the use of a facsimile machine or scanned document or the fact that any signature was transmitted through the use of a facsimile machine or email as a defense to the enforcement of this Agreement. Landlord shall not be bound by this Agreement until Landlord, Tenant, and Lender have fully executed this Agreement and a fully-executed copy of this Agreement has been received by Landlord.

IN WITNESS WHEREOF, this Landlord's Lien Subordination, Collateral Access and Lease Assignment Agreement, subject to the conditions to effectiveness as set forth herein, is entered into as of the date first listed above.

LANDLORD:

Name: Blue Star Frisco Retail, LLC
Address: 1 Cowboys Way, Suite 100, Frisco, TX 75034, Attn: Legal Department

By: _____
Name: Thomas Walker
Title: Asst. Treasurer
Date: 12/13/18

TENANT:

Name: Trophy Hospitality, LLC
Address: 4331 Hollow Oak Drive, Dallas, TX 75287

By: Jeremiah Miranda
Name: Jeremiah Miranda
Title: Manager For Miranda Management LLC, Managing Member for Trophy Hospitality, LLC
Date: 12/16/2018

LENDER:

CELTIC BANK CORPORATION,
a Utah corporation

By: JoAnne Robinson
Name: JoAnne Robinson
Title: S.V.P. Commercial Credit, Closing Manager
Date: 12/18/2018




## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 8BE02503E51042A4B09CD81FAF4D3885 | | Status: Completed |
| Subject: Please DocuSign: 4506T's, BTR's, YearEndInterims, Inteirms, PTR's, 1919, Lease/LLSub/Amendment | | |
| Source Envelope: | | |
| Document Pages: 260 | Signatures: 230 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 8 | Haley Cox |
| AutoNav: Enabled | | 268 S State St |
| EnvelopeId Stamping: Enabled | | Ste 300 |
| Time Zone: (UTC-07:00) Mountain Time (US & Canada) | | Salt Lake City, UT  84111 |
| | | hcox@celticbank.com |
| | | IP Address: 107.1.254.234 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Haley Cox | Location: DocuSign |
| 12/14/2018 12:59:19 PM | hcox@celticbank.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jeremiah Miranda<br>mirandaventures@gmail.com<br>Security Level: Email, Account Authentication<br>(None), Access Code | DocuSigned by:<br>*Jeremiah Miranda*<br>E9FEEDA4C5824C1...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 23.126.97.35 | Sent: 12/14/2018 3:13:08 PM<br>Viewed: 12/16/2018 6:48:13 PM<br>Signed: 12/16/2018 6:57:41 PM |

Electronic Record and Signature Disclosure:
   Accepted: 12/16/2018 6:48:13 PM
   ID: f34f4b86-282a-4e1e-921a-2bdba4029689

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/14/2018 3:13:08 PM |
| Certified Delivered | Security Checked | 12/16/2018 6:48:13 PM |
| Signing Complete | Security Checked | 12/16/2018 6:57:41 PM |
| Completed | Security Checked | 12/16/2018 6:57:41 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## CONSUMER DISCLOSURE

From time to time, Celtic Bank (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the ÃI agreeÃ† button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign ÃWithdraw ConsentÃ¶ form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact Celtic Bank:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

To contact us by email send messages to: aquinn@celticbank.com

**To advise Celtic Bank of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at aquinn@celticbank.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Celtic Bank**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to aquinn@celticbank.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celtic Bank**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

      i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

      ii. send us an e-mail to aquinn@celticbank.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000Â¬ or WindowsXPÂ¬ |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0Â¬ or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0Â¬, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Â² Allow per session cookies<br>Â² Users accessing the internet behind a Proxy Server must enable HTTP |

DocuSign Envelope ID: 329B4564B4B1-A4EC-993C-1892CB0EA9F8

| | 1.1 settings via proxy connection |
|---|---|

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the Ã¦I agreeÃ† button below.

By checking the Ã¦I AgreeÃ† box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Celtic Bank as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Celtic Bank during the course of my relationship with you.

**DocuSign**
S E C U R E D

## Certificate Of Completion

Envelope Id: 3292B656886E4AEC98321092C30EA316                                Status: Completed
Subject: Please DocuSign: Trophy Hospitality - LL Sub and Assignment of Lease
Source Envelope:
Document Pages: 15                          Signatures: 2              Envelope Originator:
Certificate Pages: 2                        Initials: 1                Haley Cox
AutoNav: Enabled                                                       268 S State St
EnvelopeId Stamping: Enabled                                           Ste 300
Time Zone: (UTC-07:00) Mountain Time (US & Canada)                     Salt Lake City, UT  84111
                                                                       hcox@celticbank.com
                                                                       IP Address: 107.1.254.234

## Record Tracking

Status: Original                     Holder: Haley Cox                Location: DocuSign
        12/18/2018 12:11:31 PM               hcox@celticbank.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Amy Jones<br>ajones@celticbank.com<br>Celtic Express Team Lead<br>Celtic Bank<br>Security Level: Email, Account Authentication (None) | *[signature]*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 107.1.254.234 | Sent: 12/18/2018 12:13:42 PM<br>Viewed: 12/18/2018 12:16:52 PM<br>Signed: 12/18/2018 12:16:58 PM |
| **Electronic Record and Signature Disclosure:**<br>  Not Offered via DocuSign | | |
| JoAnne Robinson<br>jrobinson@celticbank.com<br>S.V.P. Commercial Credit, Closing Manager<br>Celtic Bank<br>Security Level: Email, Account Authentication (None) | *JoAnne Robinson*<br>DA36C32E933C43A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 107.1.254.234 | Sent: 12/18/2018 12:16:59 PM<br>Viewed: 12/18/2018 4:47:20 PM<br>Signed: 12/18/2018 4:47:27 PM |
| **Electronic Record and Signature Disclosure:**<br>  Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/18/2018 12:16:59 PM |
| Certified Delivered | Security Checked | 12/18/2018 4:47:20 PM |
| Signing Complete | Security Checked | 12/18/2018 4:47:27 PM |
| Completed | Security Checked | 12/18/2018 4:47:27 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

# EXHIBIT 2

**Fill in this information to identify the case:**

Debtor 1 __Trophy Hospitality, LLC__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of Texas**

Case number: __21-40512__

FILED

**U.S. Bankruptcy Court**
**Eastern District of Texas**

5/12/2021

**Jason K. McDonald, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| | |
| --- | --- |
| 1. **Who is the current creditor?** | Celtic Bank _____ <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor     Celtic Bank Corporation _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Celtic Bank _____ <br> Name <br><br> 268 S State Street <br> Suite 300 <br> Salt Lake City, UT 84111 <br><br> Contact phone ____(801) 320-6574____ <br> Contact email <br> __Bankruptcy@celticbank.com__ <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____ | **Where should payments to the creditor be sent?** (if different) <br><br> _____ <br> Name <br><br><br> Contact phone _____ <br> Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ <br> MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

Official Form 410                           Proof of Claim                           page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6.** Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___4819___ |

**7.** How much is the claim?  $ ___1794983.54___

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

___Money Loaned___

**9.** Is all or part of the claim secured?

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:  ___Security interest in business assets___

**Basis for perfection:**  ___UCC Filing, CSA, PMSI___

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ ___1794983.54___

**Amount of the claim that is secured:**  $ ___1794983.54___

**Amount of the claim that is unsecured:**  $ ___0.00___  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ ___1794983.54___

**Annual Interest Rate** (when case was filed)  ___6___  %

☐ Fixed
☑ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

---

Official Form 410  Proof of Claim  page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | | |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
|---|---|---|
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     5/12/2021
                     MM / DD / YYYY

/s/ Jeff Orgill

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jeff Orgill |
|---|---|
| | First name    Middle name    Last name |
| Title | VP Special Assets and Loan Servicing |
| Company | Celtic Bank Corporation |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 268 South State Street, Suite 300 |
| | Number    Street |
| | Salt Lake City, UT 84111 |
| | City    State    ZIP Code |
| Contact phone | (801) 320–6574     Email    Bankruptcy@celticbank.com |

U.S. Bankrupcty Court,
Proof of Claim - Itemized Statement

**Name of Debtor:**

**Trophy Hospitality, LLC**
**Case Number; 21-40512**
**Date of Filing; 4/8/21**
**Creditor**
**Celtic Bank Corporation**
**Proof of Claim dated 5/10/21**

| | | |
|---|---|---|
| Principal Balance | $ | 1,792,941.95 |
| Interest | $ | - |
| Late Fees | $ | - |
| Costs | $ | 2,041.59 |
| Legal Fees | $ | - |
| Total Loan Balance | $ | 1,794,983.54 |



U.S. Small Business Administration

# NOTE

| SBA Loan # | ▊▊▊▊▊▊ |
|---|---|
| SBA Loan Name | **Trophy Park** |
| Date | **01-30-2019** |
| Loan Amount | **$2,050,000.00** |
| Interest Rate | **Variable** |
| Borrower | **TROPHY HOSPITALITY LLC** |
| Operating Company | N/A |
| Lender | **Celtic Bank Corporation** |

## 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **Two Million Fifty Thousand and 00/100** Dollars , interest on the unpaid principal balance, and all other amounts required by this Note.

## 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is **8.00%** per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus **2.75%**. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay a total of **6** payments of interest only on the disbursed principal balance beginning **one** month from the month this Note is dated and every month thereafter; payments must be made on the **thirtieth calendar day** in the months they are due.

Borrower must pay principal and interest payments of **$24,883.91** every month beginning **seven** months from the month this Note is dated; payments must be made on the **thirtieth calendar day** in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted **every calendar quarter** (the "change period"), beginning **April 1, 2019** (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the **Wall Street Journal** newspaper ) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be **2.75%** above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

> **Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
>
> a. Give Lender written notice;
>
> b. Pay all accrued interest; and
>
> c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
>
> If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable **10** years and **6** months from **date of Note**.

**Late Charge:** If a payment on this Note is more than **15** days late, Lender may charge Borrower a late fee of up to **5.00%** of the unpaid portion of the regularly scheduled payment.

**4. DEFAULT:**   Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

**5. LENDER'S RIGHTS IF THERE IS A DEFAULT:**   Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

**6. LENDER'S GENERAL POWERS:**   Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

**7. WHEN FEDERAL LAW APPLIES:**  When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**8. SUCCESSORS AND ASSIGNS:**  Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A.  All individuals and entities signing this Note are jointly and severally liable.

B.  Borrower waives all suretyship defenses.

C.  Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.  Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.  Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.  If any part of this Note is unenforceable, all other parts remain in effect.

G.  To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

**10. STATE-SPECIFIC PROVISIONS:**
NONE

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**

**By signing below, each individual or entity becomes obligated under this Note as Borrower.**

**BORROWER:**

**TROPHY HOSPITALITY LLC**

**MIRANDA MANAGEMENT LLC, Manager of TROPHY HOSPITALITY LLC**

DocuSigned by:

By _____*Jeremiah Miranda*_____

**Jeremiah Miranda, Sole Member of Miranda Management LLC**

# CASH COLLATERAL PLEDGE AND SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| **$2,050,000** | **01/30/2019** | **07/28/2029** | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  TROPHY HOSPITALITY, LLC
6770 WINNING DRIVE, SUITE 900
FRISCO, TX 75034-7650

**Lender:**  Celtic Bank Corporation
268 S. State Street
Suite 300
Salt Lake City, UT  84111

## CASH COLLATERAL PLEDGE AND SECURITY AGREEMENT

This CASH COLLATERAL PLEDGE AND SECURITY AGREEMENT dated as of June 24, 2020 (this "<u>Agreement</u>") is executed by and between TROPHY HOSPITALITY, LLC, a Texas Limited Liability Company ("<u>Borrower</u>") and CELTIC BANK CORPORATION ("Celtic Bank", also the "Lender"), collectively, the "Parties."

## RECITALS

WHEREAS, Borrower is the owner of the account(s) held by Celtic Bank as described on **Exhibit A** attached hereto, as such account may be amended, substituted, or replaced from time to time (the "<u>Account</u>");

WHEREAS, the Parties are contemplating the execution of a Business Loan Agreement which will be dated on or about January 30, 2019 reflecting a loan to Borrower in the principal amount of Two Million Fifty Thousand ($2,050,000) Dollars (the "<u>Loan</u>").

WHEREAS, in order to induce Celtic Bank to execute the Loan, the Borrower has agreed to enter into this Agreement, pledge the cash held in the Accounts as additional collateral for the Loan, and deliver the cash held in the Accounts to the possession of Lender; and

WHEREAS, capitalized terms used herein, which are not defined herein, will have the same meaning as provided in the Loan and Related Documents.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, and of the making of the Loan by Celtic Bank, the parties hereto agree as follows:

## AGREEMENT

**SECTION 1. Pledge**. In order (i) to secure the due and punctual payment and performance of all obligations of the Borrower under the Loan; (ii) to secure the due and punctual payment and performance of all obligations of the Borrower contained herein; and (iii) to secure the due and punctual payment and performance of all other liabilities, and obligations of the Borrower to Celtic Bank, of every kind and description, whether direct, indirect, or contingent, whether now or hereinafter existing and howsoever evidenced or arising (all of the foregoing are hereafter collectively called the "<u>Obligations</u>"), Borrower hereby pledges, hypothecates, assigns, transfers, sets over unto Celtic Bank, as secured party, TO HAVE AND TO HOLD the Collateral, together with all right, title, interest, privileges and preferences appertaining or incidental thereto, unto Celtic Bank, its successors and assigns, forever, subject, however, to the terms, covenants and conditions hereinafter set forth, a security interest in the following (all of which shall be collectively called the "<u>Collateral</u>"):

(i) the Accounts and all of the Borrower's right, title and interest therein, all certificates (if any) representing the Accounts, and all cash, certificates, interest, dividends, deposits, deposit accounts, instruments, credits, investments, claims, contract rights, chattel paper (whether tangible or electronic), money market certificates, repurchase agreements, savings instruments, securities, securities entitlements, investment property, commercial paper, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, general intangibles and other property at any time and from time to time now or hereafter in the Accounts and all such property received, receivable or otherwise distributed in respect of, in substitution or in exchange for, or in replacement of the foregoing, and all supporting obligations; and

(ii) all proceeds of the foregoing.

**SECTION 2. Representations and Warranties**. Borrower hereby represents and warrants as follows:

(a) As of the date funds are first placed in the Accounts, Borrower will be, and shall continue to be, the owner of the Collateral free and clear of all pledges, liens, security interests and other encumbrances of every nature whatsoever (except in favor of Celtic Bank).

(b) As of the date funds are first placed in the Accounts, Borrower has the full right, power and authority to pledge the Collateral and to grant the security interest in the Collateral

(c) The execution, delivery and performance of this Agreement by Borrower will not violate any provision of any law, rule, or regulation or result in the violation of any mortgage, deed of trust, indenture, material contract, instrument, agreement, judgment, decree, order, statute, rule or regulation to which Borrower is subject or by which it or any of its property is bound.

(d) From and after the date funds are first placed in the Accounts, Borrower shall not suffer or permit any lien or encumbrance to exist on or with respect to the Collateral (except in favor of Celtic Bank).

(e) This Agreement constitutes the legal, valid and binding obligation of Borrower in accordance with the terms hereof and has been duly authorized, executed and delivered.

(f) As of the date funds are first placed in the Accounts, this Agreement will create a valid and perfected first priority security interest in and pledge of the Collateral enforceable against all third parties, and all action required to perfect fully the security interest so contemplated will have been taken and completed.

SECTION 3. **Withdrawal of Funds.** The exact title of the Accounts should be substantially similar to that set forth on **Exhibit A** hereto. The Accounts shall be subject to withdrawal by order only of such officers and agents of Celtic Bank as Celtic Bank may designate from time to time for the purposes described herein and in the Loan and Related Documents and Borrower shall not have the right to withdraw any funds from such Accounts unless so permitted, provided, however, that at such time as Celtic Bank determines that any applicable conditions set forth in the Loan and Related Documents are satisfied, Borrower may request that monies be released from the Accounts and Celtic Bank shall promptly release said monies to Borrower.

**CONDITIONS FOR RELEASE OF FUNDS**: Funds may be released when Borrower achieves a debt service coverage of 1.25x or upon satisfaction of any other requirement agreed to in writing by the Parties.

SECTION 4. **Interest Bearing Accounts**. The Accounts shall be interest-bearing segregated accounts entitled as set forth on Exhibit A hereto or a reasonably similar title. All interest earned shall automatically become part of the Collateral.   Celtic Bank may transfer the Collateral into its name or that of its nominee and may receive the income and any distributions thereon to hold the same as collateral only after an Event of Default under the terms of the Loan and Related Documents has occurred.

SECTION 5. **Events of Default**. Each of the following events (each an "Event of Default") shall constitute an event of default hereunder:

(a) default by Borrower in the observance or performance of any covenant or agreement herein contained which shall remain uncured thirty (30) days after Celtic Bank has sent written notice of such default to the Borrower provided, however, if the failure cannot be corrected within said thirty (30) days, Celtic Bank will not unreasonably withhold its consent to an extension of such time if corrective action is instituted by the Borrower within said thirty (30) days and is being diligently pursued until such failure is corrected but in any event not more than one hundred twenty (120) days, or breach by Borrower of any material representation or warranty herein contained at the time made; or

(b) the occurrence of any "Event of Default" as defined in any of the Loan and Related Documents or under any other agreement now or hereafter evidencing or securing any of the Obligations; or

(c) the making of any levy, seizure, or attachment of any of the Collateral that is not dismissed or bonded over (to Celtic Bank's reasonable satisfaction) within thirty (30) days; or

(d) except upon payment in full of the Obligations, and other than because of Celtic Bank's gross negligence or willful misconduct, this

Agreement shall at any time for any reason cease to be in full force and effect or shall be declared to be null and void, or the validity or enforceability thereof shall be contested by the Borrower, or the Borrower shall deny that it has any liability or obligation hereunder.

**SECTION 6. Remedies upon Default**. If an Event of Default shall have occurred and be continuing, then in addition to exercising any rights and remedies of a pledgee under the law in effect in the State of Utah, Celtic Bank may without further notice or demand upon the Borrower:

(a) apply to the Obligations all or any part of the Collateral and proceeds thereof, whether before or after maturity of the Collateral and without regard to whether any penalty or premium may result from the liquidation of Collateral prior to its maturity (which liquidation the parties hereto agree shall constitute a commercially reasonable disposition of collateral); or

(b) exercise any one or more of the rights and remedies of a secured party afforded by the Uniform Commercial Code, as from time to time in effect in the State of Utah or afforded by other applicable law. Celtic Bank shall give Borrower at least the greater of the minimum notice required by law or ten (10) days' prior written notice of the date, time and place of any public sale thereof, or of the time after which any private sale or any other intended disposition is to be made, which notice shall be given in any manner permitted for notices under the Loan and Related Documents.

Expenses of enforcing Celtic Bank's rights hereunder including, but not limited to, preparation for sale, selling or the like and Celtic Bank's reasonable attorneys' fees, and other legal expenses shall be payable by Borrower and shall be secured hereby and by the Loan and Related Documents.

**SECTION 7. Use of the Accounts**. The Accounts may be used for the payment of all normal service fees, maintenance fees, and transaction charges relating to the Collateral and as otherwise provided in the Loan and Related Documents.

**SECTION 8. Exoneration, Indemnity**. Neither Celtic Bank, nor any director, officer, agent, or employee of Celtic Bank, shall be liable to Borrower for any decline in value of any investment, loss thereon as a result any action taken or omitted to be taken by it or them hereunder in connection herewith, except for its or their own gross negligence or willful misconduct; nor shall Celtic Bank be responsible for the validity, effectiveness or sufficiency hereof or of any document or security furnished pursuant hereto or in connection herewith. Celtic Bank shall be entitled to rely on any communication, instrument or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons. Borrower agrees to defend, indemnify and hold harmless Celtic Bank, and/or agents of Celtic Bank from and against any and all liability incurred by Celtic Bank (or such agent) hereunder or in connection herewith, unless such liability shall be due to willful misconduct or gross negligence on the part of Celtic Bank or such agents.

**SECTION 9. Celtic Bank Appointed Attorney-in-Fact**. Borrower hereby appoints Celtic Bank as Borrower's attorney-in-fact (which power of attorney shall be exercisable during the continuance of an Event of Default) for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument which it may deem reasonably necessary or advisable to accomplish the purposes hereof that Borrower does not promptly take or execute, which appointment is irrevocable and coupled with an interest, but such agency conferred by Borrower upon Celtic Bank shall be automatically revoked upon payment in full of the Obligations. Without limiting the generality of the foregoing, Celtic Bank shall have the right and power to receive, endorse and collect all checks and other orders for the payment of money made payable to Borrower representing any dividend, interest payment or other distribution payable or distributable in respect of the Collateral or any part thereof and to give full discharge for the same.

**SECTION 10. No Waiver; Cumulative Remedies**. No failure on the part of Celtic Bank to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy by Celtic Bank preclude any other further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law. Celtic Bank shall not be required to marshal any present or future collateral security for (including but not limited to this Agreement and the Collateral), or other assurances of payment of, the Obligations or any of them, or to resort to such collateral security or other assurances of payment in any particular order.

**SECTION 11. Notices**. All communications and notices hereunder shall be given in accordance with the Loan and Related Documents, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section. All notices, requests, demands and other communications provided for hereunder shall be effective upon receipt or refusal to accept delivery.

**SECTION 12. Further Assurances**. Borrower agrees to do such further act and things, and to execute and deliver such additional conveyances, assignments, agreements and instruments, as Celtic Bank may at any time reasonably request in connection with the administration or enforcement of this Agreement or related to the Collateral or any part thereof or in order better to assure and confirm unto Celtic Bank its rights, powers and remedies hereunder. Borrower hereby consents and agrees that the issuers of or obligors in respect of the Collateral or any registrar or transfer agent or trustees for any of the Collateral shall be entitled to accept the provisions hereof as conclusive evidence of the right of Celtic Bank to after the occurrence and continuation of an Event of Default effect any transfer pursuant to Sections 4 and 6 hereof, notwithstanding any other notice or direction to the contrary heretofore or hereafter given by Borrower or any other person to any of such issuers or obligors or to any such registrar or transfer agent or trustees.

**SECTION 13. Release of Collateral**. If the Obligations are paid in full, or conditions precedent to the release of some or all of the Collateral are met, then Celtic Bank shall promptly release to Borrower any remaining Collateral (in the event of all Obligations being paid) or such portion as agreed to in the Loan and Related Documents.

**SECTION 14. Binding Agreement; Assignment**. This Agreement, and the terms, covenants and conditions hereof, shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrower shall not be permitted to assign this Agreement or any interest herein or in the Collateral, or any part hereof.

**SECTION 15. Miscellaneous**. Neither this Agreement nor any provisions hereof may be amended, modified, waived, discharged or terminated orally nor may any of the Collateral be released or the pledge or the security interest created hereby extended, except by an instrument in writing signed by a duly authorized officer of Celtic Bank. The Section headings used herein are for convenience of reference only and shall not define or limit the provisions of this Agreement.

**SECTION 16. Choice of Law, Venue and Jury Waiver**.  This Agreement shall be governed by the laws of the State of Utah without regard to its conflicts of law provisions.  This Agreement has been accepted by Celtic Bank in the State of Utah. If there is a lawsuit, Borrower agrees upon Celtic Bank's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah. **All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**SECTION 17. Severability**. In case any lien, security interest or other right of any part hereto shall be held to be invalid, illegal or unenforceable, such invalidity, illegality and/or unenforceability shall not affect any other lien, security interest or other right granted hereby.

**SECTION 18. Costs, Expenses and Taxes**. Borrower agrees to pay on demand all reasonable costs and expenses actually incurred by Celtic Bank in connection with the preparation execution, delivery, administration, and enforcement of this Agreement and any related documents.

**SECTION 19. Concerning Revised Article 9 of the Uniform Commercial Code**.

(a) Perfection by Filing. Celtic Bank may at any time and from time to time, file financing statements, continuation statements and amendments thereto which contain any other information required by Part 5 of Article 9 of the Uniform Commercial Code as in effect in the state of organization of Borrower ("Article 9") for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower. Borrower agrees to furnish any such information to Celtic Bank promptly upon request. Any such financing statements, continuation statements or amendments may be signed by Celtic Bank on behalf of Borrower and may be filed at any time in any jurisdiction whether or not Article 9 is then in effect in that jurisdiction.

(b) Other Perfection, etc. Borrower shall at any time and from time to time, whether or not Article 9 is in effect in any particular jurisdiction, take such steps as Celtic Bank may reasonably request for Celtic Bank (i) to obtain "control" of any investment property, deposit accounts, letter-of-credit rights or electronic chattel paper (as such terms are defined in Article 9) with any agreements establishing control to be in form and substance satisfactory to Celtic Bank, and (ii) otherwise to insure the continued perfection and priority of Celtic Bank's security interest in any of the Collateral and of the preservation of its rights therein, whether in anticipation and following the effectiveness of Article 9 in any jurisdiction.

(c) Savings Clause. Nothing contained in this Section 18 shall be construed to narrow the scope of Celtic Bank's security interest in any of the Collateral or the perfection or priority thereof or to impair or otherwise limit any of the rights, powers, privileges or remedies of Celtic Bank hereunder except (and then only to the extent) mandated by Article 9 to the extent then applicable.

**SECTION 20. Counterparts**.  This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original.  This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original

instrument and all of which together shall constitute a single Agreement.   The failure of any party hereto to execute this Agreement, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

IN WITNESS WHEREOF, the parties hereto have caused this Cash Collateral Pledge and Security Agreement to be duly executed as an instrument under seal as of the date first above written.

Borrower:

TROPHY HOSPITALITY, LLC

By: _____

Print Name:  Jeremiah Miranda

Title:  Managing Member

CELTIC BANK

By: _____

Print Name:  Joanne Robinson

Title:  SVP Commercial Operations

*CASH COLLATERAL ASSIGNMENT w Conditions Precedent 06 24 2020 -Miranda*

## EXHIBIT A
### Business Money Market Account held as Collateral

Trophy Hospitality, LLC

Account Holder Name(s) Trophy Hospitality, LLC

Reporting SSN/TIN.

| | |
|---|---|
| Mailing Address: | 6770 Winning Way, Suite 900, Frisco, TX 75034-7850 |
| Street Location: | 6770 Winning Way, Suite 900, Frisco, TX 75034-7850 |
| Telephone Number: | ((12) 629-9944      Work # |
| Number of Signatures Required  1 | CIF Number: |

Signatures of Authorized Individuals    This Agreement is subject to all terms below.

x _____
Jeremiah Miranda, of Trophy Hospitality, LLC

[Signatures and printed names of each account signer]

The authorized Agent(s) signing above agree(s), that the Account Holder's Account(s) will be governed by the terms set forth in the Deposit Account Agreement and Disclosure the Time Certificate of Deposit or Confirmation of Time Deposit Agreement (if applicable), the Rate and Fee Schedule, the Funds Availability Policy Disclosure the Substitute Check Policy Disclosure, and the Electronic Funds Transfer Agreement and Disclosure (if required below), as amended by the Financial Institution from time to time. The authorized Agent(s) also acknowledge that they have received at least one copy of these deposit account documents.

Account Purpose   Non Consumer                        EFT Services   No

BUSINESS TYPE Limited Liability Company

ACCOUNT TYPE Business Money Market Account

ACCOUNT NUMBER

| Date Opened | Date Renewed | Opening Deposit | ATM Card | Verified By | Account Formerly WB |
|---|---|---|---|---|---|
| 01-04-19 | | $300,000.00 | N | | |

| Date Closed | Closing Balance | Closed By | Reason For Closing | | Statement Distribution | Service Chg Disposition |
|---|---|---|---|---|---|---|
| | | | | | Mail | Regular |

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,050,000.00 | 01-30-2019 | 07-28-2029 | | 51 / E6 | | CN | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Grantor: | TROPHY HOSPITALITY LLC | Lender: | Celtic Bank Corporation |
|----------|------------------------|---------|-------------------------|
| | 6770 Winning Drive, Suite 900 | | 268 S. State Street |
| | Frisco, TX 75034-7650 | | Suite 300 |
| | | | Salt Lake City, UT 84111 |

THIS COMMERCIAL SECURITY AGREEMENT dated January 30, 2019, is made and executed between TROPHY HOSPITALITY LLC ("Grantor") and Celtic Bank Corporation ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

   All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles

   Purchase Money Security Interest in all Equipment

   Purchase Money Security Interest in all Fixtures

   Purchase Money Security Interest in all Inventory

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

   (A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

   (B) All products and produce of any of the property described in this Collateral section.

   (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

   (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

   (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise. However, this Agreement shall not secure, and the "Indebtedness" shall not include, any obligations arising under Subchapters E and F of Chapter 342 of the Texas Finance Code, as amended.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

   Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

   Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

   No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

   Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona

dled9/05/22/21Enteesd 00/06/21e11:27:29age D1238of 84
Affidavit Declaration Page 31 of 130
COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 2

fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Texas, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $5,000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed

Filed 09/05/22/21 Entered 09/06/21 11:27:29 Desc of 84
Affidavit Declaration Page 32 of 130
COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 3

Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the

dl09/05/22/21Enteed 00/06/21eh1:27:29ageDt4of 84
COMMERCIAL SECURITY AGREEMENT
Affidavit Declaration Page 33 of 130
(Continued)

Page 4

Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Texas Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter, provided Lender does so without a breach of the peace or a trespass, upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and

any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means TROPHY HOSPITALITY LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

ll09/05/22/21Enteesd 09/03/21et11:27:29ageD13of 84
COMMERCIAL SECURITY AGREEMENT
Affidavit Declaration Page 35 of 130
(Continued)

Page 6

**Grantor.** The word "Grantor" means TROPHY HOSPITALITY LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Celtic Bank Corporation, its successors and assigns.

**Note.** The word "Note" means the Note dated January 30, 2019 and executed by TROPHY HOSPITALITY LLC in the principal amount of $2,050,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 30, 2019.**

GRANTOR:

TROPHY HOSPITALITY LLC

MIRANDA MANAGEMENT LLC, Manager of TROPHY HOSPITALITY LLC

By: *Jeremiah Miranda*

Jeremiah Miranda, Sole Member of Miranda
Management LLC

LaserPro, Ver. 18.4.20.007 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. TX C:\WTP\CFIWIN\GFI\LPL\E40.FC TR-1806 PR-9

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

RECEIVED
SEP 10 2019

TXTX

**09/10/2019 05:00 PM**

**FILED**

TEXAS
SECRETARY OF STATE

SOS

913078350002

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 190003621446  1/30/2019  SS TX | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☒ COLLATERAL CHANGE: Also check one of these four boxes:  ☒ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing, all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest; in all equipment

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Celtic Bank Corporation | | | |
| OR  9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:  Debtor Name: Trophy Hospitality, LLC

Prepared by Lien Solutions, P.O. Box 29071

# suntec®industries

3220 Quebec Street, Dallas, TX 75247
Phone: (214) 630-1116 / Fax: (214) 630-2719
Email: davidtobias@suntecindustries.com

**INVOICE**

Miranda Management
2810 N. Henderson Ave.
Dallas, TX 75206

Invoice Number: 4099
Terms: 50% Deposit/Balance due
Upon Completion
Invoice Date: 07/30/19
Customer PO Number:

Job Site: Trophy Park
The Star
Frisco, TX

Manufacture and install (2) two sets of wall mount reverse channel letters reading
Trophy Park with reverse channel steer logos and one set of reverse channel
canopy mount letters reading Trophy Park.

| | | |
|---|---|---|
| Original Project Sub-Total: | $15,672.00 | |
| Tax: | 1,293.00 | |
| Original Project Total: | $16,965.00 | |
| Addendum #1 | 1,625.00 | (2) Two Channeled Steer Logos |
| Addendum #1 Tax | 134.00 | |
| Permit: | 450.00 | |
| Permit Procurement: | 250.00 | |
| Revised Project Total: | $19,424.00 | |
| Less Deposit Received: | $16,965.00 | |
| Final Payment Due: | $ 2,459.00 | |

Bank: The American National Bank of Texas
Account
Routing

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

08/06/2019 05:00 PM

FILED

TEXAS SECRETARY OF STATE

SOS

905324800002

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Phone: (800) 331-3282 Fax: (818) 662-4141 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)     15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

RECEIVED
JUN - 6 2019
TXTX

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 19-0019413199  5/23/2019  SS TX | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:        AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR | 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☒ COLLATERAL CHANGE:  Also check one of these four boxes: ☒ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:
All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest; in all equipment

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Celtic Bank Corporation | | | |

OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Trophy Hospitality, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282



# INVOICE

DATE
07/04/2019

Trophy Hospitality LLC dba
Trophy Park
6779 Winning Drive, Ste 900
Frisco, TX 75034

JOB: TROPHY PARK

JEFF WILLIAMS
Commercial Designs and
Signs
5718 Atha Dr.
Dallas, TX 75217
214-641-0515
cdssignsdesign@gmail.com

| QUANTITY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 1 | 51/2' x 15' Can sign with neon, LED and light bulbs for bowling alley | $17,080.00 | $17,080.00 |
| 1 | Operating hours for door | $ 75.00 | $ 75.00 |

Subtotal — $17,155.00
Sales Tax
Total — $17,155.00

## WE REQUIRE PAYMENT IN FULL PRIOR TO BEGINNING THE JOB.

Make checks payable to Jeff Williams or direct deposit to

Colors and artwork to customer request. Permits and fees are not included in the project total.



## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**  15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

File with: Secretary of State, TX

05/23/2019  05:00 PM

**FILED**

TEXAS
SECRETARY OF STATE

SOS

891914030002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Trophy Hospitality, LLC | | | | | |
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6770 Winning Drive, Suite 900 | Frisco | TX | 75034 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Celtic Bank Corporation | | | | | |
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 268 S. State St., Ste 300 | Salt Lake City | UT | 84111 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest in all equipment

5. Check only if applicable and check only one box: Collateral is ☒ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☒ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282



**ISI Commercial Refrigeration, LLC**

*A ISI TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| 1 | | | | |
| 25 | 1 ea | RACK CONVEYOR DISHMACHINE LEASED BY OWNER | | |
| | | BY OWNER Model No. ADC44 | | |
| | | ADC44 Rack Conveyor Dishwasher Leased By Owner. | | |
| 25.1 | 1 ea | BOOSTER HEATER, ELECTRIC | $2,467.36 | <Optional> |
| | | Hatco Model No. C-27-208-3-QS | | |
| | | (QUICK SHIP MODEL) Compact Booster Heater, electric, 6-gallon storage capacity, electric operation, 27-KW, stainless steel front panel, powder-coated silver-gray hammertone body, 6" plastic non-adjustable legs, Castone tank, 208v/60/3-ph, NSF, cUL, UL | | |
| | 1 ea | NOTE: Sale of this product must comply with Hatco's Minimum Resale Price Policy; consult order acknowledgement for details | | <Optional> |
| | 1 ea | NOTE: Includes 24/7 parts & service assistance, call 800-558-0607 | | <Optional> |
| | 1 ea | One year parts and labor warranty, ten year warranty on Castone tank, standard | | <Optional> |
| | | **Verify if this is provided with the Leased Dish Machine before ordering** | | <Optional> |
| 26 | 1 ea | CUSTOM FABRICATION | $446.35 | $446.35 |
| | | Custom Kitchen Fabricator Model No. CLEAN DISH TABLE | | |
| | | 4' LH- Clean Dishtable w/ LH end splash & ss legs only | | |
| 27 | 1 ea | DISHTABLE SORTING SHELF | $97.89 | $97.89 |
| | | John Boos Model No. PB-SRW-21-X | | |
| | | Sorting Shelf, 21"W x 18"D X 16-1/2"H, holds (1) rack, wall mounted, solid, includes brackets, 18/300 stainless steel, NSF (FLYER NET PRICING FOR EFFINGHAM AND NEVADA) | | |
| 28 | 1 ea | THREE (3) COMPARTMENT SINK | $2,934.32 | $2,934.32 |
| | | Advance Tabco Model No. FS-3-2424-24RL | | |
| | | Fabricated Sink, 3-compartment, 24" right & left drainboards, bowl size 24" x 24" x 14" deep, 14 gauge 304 stainless steel, tile edge splash, rolled edge, (2) sets of 8" OC faucet holes, stainless steel legs with 1" adjustable stainless steel bullet feet, overall 29-1/2" F/B x 120" L/R, NSF (requires (2) faucets) | | |
| | 1 ea | Note: Sink requires (2) faucets | | |
| | 3 ea | K-15 Lever Waste Drain, twist handle operated with built-in overflow, fits 3-1/2" drain opening, 2" NPT & 1-1/2" IPS outlet connections | $192.75 | $578.25 |
| | 3 ea | K-4 Support Bracket, for lever waste drain handle, (1) support required for each lever drain | $50.02 | $150.06 |
| 29 | 2 ea | WALL / SPLASH MOUNT FAUCET | $118.36 | $236.72 |



**ISI Commercial Refrigeration, LLC**

*A ISI TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|---|---|---|---|---|
| | | T&S Brass Model No. B-0231<br>Sink Mixing Faucet, 12" swing nozzle, wall mounted, 8" centers on sink faucet with 1/2" IPS eccentric flanged female inlets, lever handles | | |
| 30 | 1 ea | SHELVING, WALL MOUNTED<br>Advance Tabco Model No. WS-12-96-16<br>Shelf, wall-mounted, 96"W x 12"D, 1-5/8" bullnose front edge, 1-1/2"H rear up-turn, 16/304 satin finish stainless steel, NSF (units 84" & longer have (3) support brackets) | $262.17 | $262.17 |
| 31 | 1 ea | POT RACK<br>John Boos Model No. PRW24-X<br>Pot Rack, wall mount, double bar, 96"W x 12"D x 16"H overall size, 3/16" x 2" stainless steel flat bar, includes (16) stainless steel double hooks, NSF, CSA-Sanitation (FLYER NET PRICING FOR EFFINGHAM AND NEVADA) | $307.50 | $307.50 |
| 32 | 1 ea | CUSTOM FABRICATION<br>Custom Kitchen Fabricator Model No. OYSTER TABLE<br>5' x 30" Oyster Table w/ (1) tub - 14" x 14" x 8"dp (1) chute, ss legs only, 1"T front edge and sidesplashes capped | $1,689.35 | $1,689.35 |
| | 1 ea | ProCore KUC27R Kintera™ Undercounter Refrigerator, one-section, 27"W, self-contained rear mount refrigeration, 6.50 cu ft, solid state thermostat, with digital display, (1) solid, field reversible, self-closing door, with full length integrated door handle, (1) heavy duty PVC coated shelf, stainless steel front, top, sides & interior floor, aluminum back, ABS plastic interior, 3/8 HP, 115v/60/1-ph, 1.5 amps, NEMA 5-15, cETLus, UL-EPH, Quick Ship | $895.00 | $895.00 |
| | 1 ea | T&S Brass 5F-8DWS09 Equip Faucet, swivel, 8", deck mount, pedestal, 9" gooseneck, ceramic cartridge, 4" wrist handles, laminar flow device, Includes: supply nipple kit, 1/2" NPT, ADA Compliant | $111.28 | $111.28 |
| | 1 ea | T&S Brass B-3950 Waste Valve, twist handle, 3-1/2" sink opening, 2" drain outlet with 1-1/2" adapter (replaces B-3912, B-3916) | $52.30 | $52.30 |
| 33<br>33.6 | | WALK IN COOLER/FREEZER ON SEPERATE QUOTE. | | |
| 34 | 20 ea | WIRE SHELVING<br>Centaur Model No. C2148K<br>Centaur®K Series Shelving, wire, 48"W x 21"D, green epoxy, NSF | $27.16 | $543.20 |
| | 8 ea | C2136K Centaur®K Series Shelving, wire, 36"W x 21"D, green epoxy, NSF | $22.51 | $180.08 |



**ISI Commercial Refrigeration, LLC**

A Sí TriMark Company

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | 8 ea | C2142K Centaur°K Series Shelving, wire, 42"W x 21"D, green epoxy, NSF | $24.88 | $199.04 |
| | 4 ea | C2130X Centaur°K Series Shelving, wire, 30"W x 21"D, green epoxy, NSF | $21.33 | $85.32 |
| | 40 ea | C74X Centaur° Stationary Post, 74-5/8"H, with leveling bolt & cap, green epoxy | $8.59 | $343.60 |
| | 1 ea | Limited 7 year warranty against corrosion on all green epoxy shelves, posts & accessories | | |
| 34.1 | 2 ea | **BUN / SHEET PAN RACK** | $380.65 | $761.30 |
| | | New Age Model No. 1331<br>Bun Pan Rack, mobile, full height, end loading, open sides, accommodates (20) 18" x 26" pans, slides on 3" centers, all welded aluminum construction, (4) 5" platform casters, NSF, Made in USA | | |
| | 2 ea | Lifetime warranty against rust & corrosion, 5 year construction warranty, standard | | |
| | 2 ea | 5" platform type casters, std. | | |
| 34.2 | 3 ea | **KEG STORAGE RACK** | $449.71 | $1,349.13 |
| | | Channel Manufacturing Model No. XAR60<br>Keg Storage Rack, 60 x 17"D x 68"H, holds (6) kegs, (2) adjustable 4" E-channel shelves, tubular top shelf, aluminum construction, KD, NSF, Made in USA (FLYER LIST PRICING) | | |
| | 3 ea | 5-year warranty on parts and 90 days labor, standard | | |
| | 3 ea | Lifetime warranty against rust and corrosion | | |
| | 3 ea | KS160 Back Stop For Keg Storage Rack, 60", NSF (1 per shelf) (FLYER LIST PRICING) | $38.81 | $116.43 |
| | 3 ea | KDA17 Keg Dolly, heavy duty, low profile, accommodates 1/4, 1/2 & full size barrel kegs up to 16-3/4" dia., 275 lb. weight capacity, aluminum construction, 4" platform casters with non-marking wheels, NSF, Made in USA (FLYER LIST PRICING) | $97.29 | $291.87 |
| 34.3 | 1 ea | **DUNNAGE RACK** | $58.24 | $58.24 |
| | | Advance Tabco Model No. DUN-2036-8-2X<br>Special Value Dunnage Rack, square bar, one tier, 36"W x 20"D x 8"H, aluminum finish, 1500 lb. load capacity (evenly distributed) (minimum order 7), NSF | | |
| | 1 ea | DUN-2060-8-2X Special Value Dunnage Rack, square bar, one tier, 60"W x 20"D x 8"H, aluminum finish, 2000 lb. load capacity (evenly distributed) (minimum order 7), NSF | $75.04 | $75.04 |
| 35,36 | | HOOD ON SEPERATE QUOTE | | |
| 36.1 | | | | |
| 37 | 1 ea | MOBILE HEATED CABINET | $3,699.78 | $3,699.78 |



**ISI Commercial Refrigeration, LLC**

*A ☎ TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | Alto-Shaam Model No. 1000-UP<br>Halo Heat® Heated Holding Cabinet, mobile, double-compartment, on/off simple control with adjustable thermostats, insulated, capacity for (8) 18" x 26" x 1" sheet pans in each compartment, heavy-duty stainless steel exterior and interior, 5" heavy-duty casters; 2 rigid, 2 swivel with brake, EcoSmart®, cULus, UL EPH ANSI/NSF 4, CE, IPX4, TUV NORD | | |
| | 1 ea | 120v/60/1-ph, 16.0 amps, 1.9kW, 9' cord, NEMA 5-20P | | |
| | 1 ea | Solid door, hinged on right, standard | | |
| 38 | 1 ea | COOK HOLD OVEN CABINET SMOKER, ELECTRIC | $10,159.80 | $10,159.80 |
| | | Alto-Shaam Model No. 1200-SK/III<br>Halo Heat® Slo Cook and Smoker Oven, electric, low-temperature, double-deck, standard depth, 120 lb. capacity each - (1) rib rack shelf per compartment, (3) full-size pans, deluxe controller, (2) stainless steel wire shelves, (1) exterior drip tray, includes (1) sample bag each of cherry, hickory, apple & maple wood chips, heavy-duty stainless steel, 5" casters; 2 rigid, 2 swivel with brakes, EcoSmart®, cULus, UL EPH ANSI/NSF 4, CE, IPX4, TUV NORD | | |
| | 1 ea | 208-240v/60/1-ph, 32.0-36.3 amps, 7.7-8.7 kW (NO cord or plug) | | |
| | 1 ea | Solid Door, hinged on right, standard | | |
| | 1 ea | Stainless steel exterior, standard | | |
| | 1 ea | 5005616 Drip Pan, with drain, stainless steel, 1-7/8" (48mm) deep | $243.92 | $243.92 |
| 39 | 2 ea | CONVECTION OVEN, GAS | $2,150.00 | $4,300.00 |
| | | ProCore Model No. TCO-1-N<br>ProCore™ Convection Oven, gas, single-deck, full size, (5) rack capacity (chrome-plated racks included), 38-1/16"W x 41-1/4"D x 57-3/8"H, electronic controls, 2-speed fan motor, porcelain enamel oven lining, double pan glass doors, with interlock switch, 25-4/5" stainless steel legs, adjustable bullet feet, stainless steel, 1/2 HP, 120v/60/1-ph, 9.3 amps, NEMA 5-15P, 54,000 BTU, ETL-Sanitation, cETLus (Configured for natural gas, LP conversion kit included) | | |
| | 2 ea | 1 year warranty: standard | | |
| | 1 ea | TSK-C ProCore™ Stacking Kit, with casters & interconnecting plumbing, for 859638 | $139.00 | $139.00 |
| | 1 ea | Dormont 1675KITS48 Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) Swivel MAX®, (1) full port valve, (1) elbow, (1) Snap'N Go, coiled restraining cable with hardware, 167,000 BTU/hr minimum flow capacity, limited lifetime warranty | $195.66 | $195.66 |
| 40 | 1 ea | SMOKER OVEN | $7,190.63 | 57,190.63 |



**ISI Commercial Refrigeration, LLC**

*A ＥＴ Trophy Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | Cookshack Model No. SM260<br>Smartsmoker® Oven, electric, with wood chunks, low-temperature, 240 lbs. per load capacity, digital IQS controller, 125° F to 300° F temperature range, (2) 1500 watt elements, (6) shelves, removable drip pan, double-walled stainless steel construction, (4) casters, NSF, USDA, cETLus | | |
| | 1 ea | Two year limited warranty , this limited warranty includes parts and labor for the first 90 days. Following the 90-day period, the two (2) year limited warranty is for parts only for smoker ovens and charbroilers only. | | |
| | 1 ea | PA022 Cold Smoke Kit, includes: insulated baffle, smoke box & instructions for use, stainless steel, for SM260 | $136.12 | $136.12 |
| 41 | 5 ea | WIRE SHELVING<br>Centaur Model No. C24S4K<br>Centaur®K Series Shelving, wire, 54"W x 24"D, green epoxy, NSF | $33.63 | $168.15 |
| | 5 ea | Limited 7 year warranty against corrosion on all green epoxy shelves, posts & accessories | | |
| | 5 ea | C86K Centaur® Stationary Post, 86-5/8"H, with leveling bolt & cap, green epoxy | $9.85 | $49.25 |
| 42-43.2 | | HOOD ON SEPERATE QUOTE | | |
| 44 | 3 ea | GAS FLOOR FRYER<br>ProCore Model No. KF3-N<br>Kintera™ Fryer, natural gas, floor model, (1) 40 lb. oil capacity full tank, millivolt control, 3-tube, (2) nickel-chrome wire mesh fry baskets, double rod stainless steel basket hanger, G90 galvanized sides & back, stainless steel tank, door, front, top ledge & header, 6" adjustable legs, 90,000 BTU, ETL-Sanitation, cETLus | $595.00 | $1,785.00 |
| | 3 ea | HGR 266001-1 Casters, set of 4 swivel w/brake. | $39.00 | $117.00 |
| | 3 ea | Dormont 1675KITS48 Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) Swivel MAX®, (1) full port valve, (1) elbow, (1) Snap'N Go, coiled restraining cable with hardware, 167,000 BTU/hr minimum flow capacity, limited lifetime warranty | $195.66 | $586.98 |
| | 3 ea | Prince Castle 740-T4 Merlin II Single Function Timer, electronic, 4-channel, single display, independently functioning programmable channels, multi colored LED channel indicators, digital channel display, dual tone alarm; includes 9-1/2" mounting brackets & menu labels, 10 ft. cord, "fat plug" transformer, 120v/60/1-ph, .083 amps, NEMA 5-15P cUL, UL | $385.13 | $1,155.39 |



**ISI** *Commercial Refrigeration, LLC*

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | 3 ea | Prince Castle Standard limited one year parts and labor warranty | | |
| 45 | 1 ea | **WORK TABLE, STAINLESS STEEL TOP** Advance Tabco Model No. TFMSU-180-X Equipment Filler Table, 18"W x 30"D, 16 gauge 304 stainless steel top with 1-1/2"H rear up-turn, 16 gauge 304 stainless steel undershelf, stainless steel legs & adjustable bullet feet, NSF (filler table needs to be placed between (2) other tables for stability) | $454.72 | $454.72 |
| 45.1 | 1 ea | **FRENCH FRY WARMER** Hatco Model No. GRFF-120-T-QS (QUICK SHIP MODEL) Glo-Ray® Portable Foodwarmer, with special stand for food holding pans, with metal sheathed element, built in toggle switch, 500 watts, 4.4 amps, 120v/60/1-ph, NSF, cULus, Made in USA | $281.12 | $281.12 |
| | 1 ea | NOTE: Sale of this product must comply with Hatco's Minimum Resale Price Policy; consult order acknowledgement for details | | |
| | 1 ea | NOTE: Includes 24/7 parts & service assistance, call 800-558-0607 | | |
| | 1 ea | One year on-site parts and labor warranty, plus one additional year parts only warranty on all Glo-Ray metal sheathed elements | | |
| 46, 46.1 | 1 ea | **GAS COUNTERTOP GRIDDLE** ProCore Model No. KGR24T Kintera™ Griddle, gas, countertop, 24"W, (2) burners, thermostatic, 200°F - 450°F temperature range, 24-1/16"W x 20-11/16"D cooking surface, 3/4" highly polished griddle plate, 4"H welded backsplash & side splash, 3-1/4" front grease trough, removable stainless steel grease catch pan, double wall construction, insulated side panels, extended cool to touch front edge, large chrome temperature knobs, front access pilots, adjustable non-skid stainless steel legs, Includes: LP conversion kit & pressure regulator, 3/4" NPT (19mm) rear gas connection, stainless steel, 60,000 BTU, ETL-Sanitation, cETLus | $675.00 | $675.00 |
| | 1 ea | Dormont 1675KITS48 Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) Swivel MAX®, (1) full port valve, (1) elbow, (1) Snap'N Go, coiled restraining cable with hardware, 167,000 BTU/hr minimum flow capacity, limited lifetime warranty | $195.66 | $195.66 |
| 47, 47.1 | 1 ea | **GAS COUNTERTOP GRIDDLE** ProCore Model No. KGR36T Kintera™ Griddle, gas, countertop, 36"W, (3) burners, thermostatic, 200°F - 450°F temperature range, 35-7/8"W x 20-11/16"D cooking surface, 3/4" highly polished griddle plate, 4"H welded backsplash & side splash, 3-1/4" front grease trough, removable stainless steel grease catch pan, double wall construction, insulated side panels, | $885.00 | $885.00 |



*ISI Commercial Refrigeration, LLC*

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | | extended cool to touch front edge, large chrome temperature knobs, front access pilots, adjustable non-skid stainless steel legs, includes: LP conversion kit & pressure regulator, 3/4" NPT (19mm) rear gas connection, stainless steel, 90,000 BTU, ETL-Sanitation, cETLus | | |
| | 1 ea | Dormont 1675KITS48 Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) Swivel MAX®, (1) full port valve, (1) elbow, (1) Snap'N Go, coiled restraining cable with hardware, 167,000 BTU/hr minimum flow capacity, limited lifetime warranty | $195.66 | $195.66 |
| 48, 77 | 1 ea | **RANGE, 48", 8 OPEN BURNERS** | $3,953.65 | $3,953.65 |
| | | Southbend Model No. S48DC S-Series Restaurant Range, gas, 48", (8) 28,000 BTU open burners, (1) standard oven, (1) cabinet base, snap action thermostat, (8) removable cast iron grate tops & (2) crumb drawers, hinged lower valve panel, includes (1) rack, stainless steel front, sides, removable shelf, 4" front rail & 6" adjustable legs, 259,000 BTU, CSA, NSF | | |
| | 1 ea | Standard one year limited warranty (range) | | |
| | 1 ea | Natural Gas | | |
| | 1 ea | P48-NFR Platinum Compact Infrared Broiler, gas, 48", riser mount, dual valve control, counter balanced rack system, stainless steel front & sides, 60,000 BTU, CSA, NSF (Note: Qualifies for Southbend's Service First™ Program, see Service First document for details) | $3,214.53 | $3,214.53 |
| | 1 ea | Standard three year limited warranty (broiler/cheesemelter) | | |
| | 1 ea | Natural Gas | | |
| | 1 ea | Casters, 2 locking & 2 standard, in lieu of legs | $232.35 | $232.35 |
| | 2 ea | Dormont 1675KITS48 Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) Swivel MAX®, (1) full port valve, (1) elbow, (1) Snap'N Go, coiled restraining cable with hardware, 167,000 BTU/hr minimum flow capacity, limited lifetime warranty | $195.66 | $391.32 |
| | 1 ea | CXF CUSTOM TRAPEZE Custom S/S Trapeze to hang Salamander from Hood. | $360.00 | $360.00 |
| 49 | 1 ea | **CHARBROILER, WOOD BURNING** | $6,476.59 | $6,476.59 |
| | | Imperial Model No. MSQ-48 Mesquite Wood Broiler, 48", countertop, cast iron top grates, built-in gas log lighter, removable grates, stainless steel front & sides, 30,000 BTU, NSF | | |
| | 1 ea | Limited one year parts and labor warranty, standard | | |
| | 1 ea | Natural gas (must specify elevation if over 2000 ft) | | |
| | 1 ea | 12" Stainless steel flashing, for an MSQ-48 | $520.87 | $520.87 |
| | 1 ea | MSQS-48 Equipment Stand, 48", open base, stainless steel | $944.17 | $944.17 |



**ISI Commercial Refrigeration, LLC**

*A ☒ TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | construction, legs, for MSQ-48, NSF | | |
| | 1 ea | Casters (set of 4), per set | $266.01 | $266.01 |
| 49.1 | 1 kt | SAFETY SYSTEM MOVEABLE GAS CONNECTOR | $188.69 | $188.69 |
| | | Dormont Manufacturing Model No. 1675KIT48PS | | |
| | | Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, (1) SnapFast® QD, (1) full port valve (2) 90° elbows, (1) Snap'N Go, (1) pair Safety Set® with hardware mounting options, limited lifetime warranty | | |
| 51,52, 56.1 | | HOOD ON SEPERATE QUOTE. | | |
| 53 | 1 ea | BULK CO2 TANK | | |
| | | BY OWNER Model No. BULK CO2 TANK | | |
| | | by owner bulk co2 tank | | |
| 54 | 1 ea | NITROGEN GENERATOR - BY OWNER / CO2 SUPPLIER | | |
| | | BY OWNER Model No. NITROGEN GENERATOR | | |
| | | nitrogen generator - by owner / CO2 supplier | | |
| 55 | 1 ea | WORK TABLE, STAINLESS STEEL TOP | $1,146.13 | $1,146.13 |
| | | Advance Tabco Model No. TVKS-305 | | |
| | | Work Table, 60"W x 30"D, 14 gauge 304 stainless steel top with countertop non drip edge, 10"H backsplash, stainless steel legs with side & rear cross rails, adjustable stainless steel bullet feet, NSF | | |
| | 1 ea | TA-11N Sink Welded Into Table Top, 18"W x 18"D x 14" deep bowl, includes faucet - LEFT END | $573.06 | $573.06 |
| | 1 ea | K-590MIT To Delete Faucet | $-9.49 | $-9.49 |
| | 1 ea | T&S Brass B-3950 Waste Valve, twist handle, 3-1/2" sink opening, 2" drain outlet with 1-1/2" adapter (replaces B-3912, B-3916) | $52.30 | $52.30 |
| 56 | 1 ea | DECK MOUNT FAUCET | $124.19 | $124.19 |
| | | T&S Brass Model No. B-0221 | | |
| | | Mixing Faucet, deck mount, 12" swing nozzle, 8" centers on deck faucet with 1/2" IPS eccentric flanged female inlets, lever handles | | |
| | | **Verify this is the correct mount for the custom table before ordering** | | |
| 57 | 2 ea | SHELVING, WALL MOUNTED | $203.10 | $406.20 |
| | | Advance Tabco Model No. WS-12-60-16 | | |
| | | Shelf, wall-mounted, 60"W x 12"D, 1-5/8" bullnose front edge, 1-1/2"H rear-up-turn-16/304 satin finish stainless steel, NSF | | |



**ISI Commercial Refrigeration, LLC**

*A Tri-Mark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| 58 | 1 ea | **PLANETARY MIXER** | $8,734.88 | $8,734.88 |
| | | Globe Model No. SP40 | | |
| | | Planetary Mixer, 40 qt., floor model, 3-speed (fixed), #12 hub, includes: stainless steel removable bowl guard with built-in ingredient chute, 40 qt. stainless steel bowl, aluminum spiral dough hook, stainless steel whip & aluminum beater, safety interlocked bowl guard bowl lift, high torque transmission, front-mounted touchpad controls with 60-minute digital timer & last batch recall, non-slip rubber feet, cast iron body, 6 ft cord & plug, 2 HP, NSF, cETLus | | |
| | 1 ea | 2-year parts & labor warranty (1-year parts only warranty on agitator and hub accessories, no labor provided) (excludes wear items), standard | | |
| | 1 ea | 220v/60/1-ph, 12.0 amps, NEMA L6-30P | | |
| | | **\*\*VERIFY IF YOU WOULD LIKE ANY OF THE ACCESSORIES ON THE ATTACHED SPEC SHEET BEFORE ORDERING\*\*** | | |
| 59 | 1 ea | **WORK TABLE, STAINLESS STEEL TOP** | $625.24 | $625.24 |
| | | Advance Tabco Model No. KSS-302 | | |
| | | Work Table, 24"W x 30"D, 14 gauge 304 stainless steel top with 5"H backsplash, 18 gauge stainless steel adjustable undershelf, stainless steel legs with stainless steel bullet feet, NSF | | |
| 60 | 1 ea | **SHELVING, WALL MOUNTED** | $216.46 | $216.46 |
| | | Advance Tabco Model No. WS-12-72-16 | | |
| | | Shelf, wall-mounted, 72"W x 12"D, 1-5/8" bullnose front edge, 1-1/2"H rear up-turn, 16/304 satin finish stainless steel, NSF | | |
| 61 | 1 ea | **MEGA TOP SANDWICH / SALAD PREPARATION REFRIGERATOR** | $2,175.00 | $2,175.00 |
| | | ProCore Model No. KS72MT | | |
| | | Kintera™ Mega-Top Refrigerated Sandwich Counter, three-section, 72"W, self-contained rear mounted refrigeration, 18 cu. ft., solid state thermostat, with digital display, accommodates (27) 1/6 size pans (included), (3) solid, self-closing hinged doors, with full length integrated door handles, (6) heavy duty epoxy coated shelves, full length poly-vinyl cutting board, stainless steel front, top, sides & interior floor, white aluminum cabinet interior, (4) casters (2 with brakes), 1/2 HP, 115v/60/1-ph, 7.0 amps, NEMA 5-15P, UL EPH Classified, cULus | | |
| 61.1 | 1 ea | **MEGA TOP SANDWICH / SALAD PREPARATION REFRIGERATOR** | $1,095.00 | $1,095.00 |



**ISI** *Commercial Refrigeration, LLC*

*A* ⊠ *TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | | ProCore Model No. TS29-MT<br>ProCore™ Mega-Top Refrigerated Sandwich Counter, one-section, 29"W, self-contained rear mounted refrigeration, 7 cu. ft., solid state thermostat, with digital display, accommodates (12) 1/6 size pans (included), (1) solid, field reversible, self-closing hinged door, with full length integrated door handle, (1) heavy duty epoxy coated shelf, full length poly-vinyl cutting board, stainless steel front, top, sides & interior floor, white aluminum cabinet interior, (4) casters (2 with brakes), 3/8 HP, 115v/60/1-ph, 5.0 amps, NEMA 5-15P, UL EPH Classified, cULus | | |
| | 1 ea | 2 year parts & labor, 5 year compressor warranty, standard | | |
| 63 | 1 ea | HOT FOOD WELL | $208.19 | $208.19 |
| | | APW Wyott Model No: W-3VI<br>X*PERT™ Series Food Pan Warmer, electric, countertop, 22 quart capacity, (1) 12" x 20" pan opening, wet & dry operation, infinite temperature controls, "W" shaped low resistance heating element, stainless steel construction, ETL, ETL-Sanitation | | |
| | 1 ea | 1 year parts & labor warranty, standard | | |
| | 1 ea | 120v/60/1-ph, 1200 watts, 10.0 amps, NEMA 5-15P, standard | | |
| | 1 ea | Advance Tabco FT-301S-X Special Value Equipment Filler Table, 15"W x 30"D, 18 gauge 430 stainless steel, galvanized undershelf & legs, adjustable plastic bullet feet, NSF (filler table needs to be placed between (2) other tables for stability) | $117.60 | $117.60 |
| 63 | 1 ea | MEGA TOP SANDWICH / SALAD PREPARATION REFRIGERATOR | $1,395.00 | $1,395.00 |
| | | ProCore Model No. KS48MT<br>Kintera™ Mega-Top Refrigerated Sandwich Counter, two-section, 48"W, self-contained rear mounted refrigeration, 12 cu. ft., solid state thermostat, with digital display, accommodates (18) 1/6 size pans (included), (2) solid, self-closing hinged doors, with full length integrated door handles, (2) heavy duty epoxy coated shelves, full length poly-vinyl cutting board, stainless steel front, top, sides & interior floor, white aluminum cabinet interior, (4) casters (2 with brakes), 1/2 HP, 115v/60/1-ph, 7.0 amps, NEMA 5-15P, UL EPH Classified, cULus | | |
| 64 | 1 ea | WORK TABLE, STAINLESS STEEL TOP | $117.60 | $117.60 |
| | | Advance Tabco Model No. FT-301S-X<br>Special Value Equipment Filler Table, 15"W x 30"D, 18 gauge 430 stainless steel, galvanized undershelf & legs, adjustable plastic bullet feet, NSF (filler table needs to be placed between (2) other tables for stability) | | |
| 65 | 1 ea | DIPPER WELL | $469.58 | $469.58 |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | FMP Model No. 217-1228<br>ConserveWell™ Dipper Well, heated, wall mount, 7-5/16" H x 15-1/24"W x 5-1/4"D, 140° F temperature range, stainless steel, includes: (2) 1/9 size pans 4" deep, 120v, 3.3 amp, UL, NSF | | |
| 66 | 1 ea | ICE CREAM DIPPING CABINET | $2,371.07 | $2,371.07 |
| | | Master-Bilt Products Model No. DC-2S<br>Ice Cream Dipping Cabinet, dip (3) 3 gallon, store (1) 3 gallon, cold-wall evaporator, painted textured galvanized steel exterior, galvanized steel interior, stainless steel top with anti-condensate heater, flip lid, temperature range 10° to -10°F, 1/4 hp, 115v/60/1-ph, 5.7 amps, 9' cord, NEMA 5-15P, cULus, NSF, Made in USA | | |
| | 1 ea | 2 year parts and labor warranty | | |
| | 1 ea | 5 year compressor part warranty | | |
| | 1 ea | White textured exterior finish, standard | | |
| | 1 st | A039-11140 Casters, 2" dia. (set of 4) | $84.33 | $84.33 |
| 67 | 1 ea | UNDERCOUNTER REFRIGERATOR | $895.00 | $895.00 |
| | | ProCore Model No. KUC27R<br>Kintera™ Undercounter Refrigerator, one-section, 27"W, self-contained rear mount refrigeration, 6.50 cu ft, solid state thermostat, with digital display, (1) solid, field reversible, self-closing door, with full length integrated door handle, (1) heavy duty PVC coated shelf, stainless steel front, top, sides & interior floor, aluminum back, ABS plastic interior, 3/8 HP, 115v/60/1-ph, 1.5 amps, NEMA 5-15, cETLus, UL-EPH, Quick Ship | | |
| 69 | 1 ea | CUSTOM FABRICATION | $4,017.15 | $4,017.15 |
| | | Custom Kitchen Fabricator Model No. SS PASS THRU SHELF<br>14' x 24" x 16" - Double Pass Shelf w/ subtop - Mount Customer's Heat Lamp w/ thermal break | | |
| 69.1 | 1 ea | HEAT LAMP | $577.20 | $577.20 |
| | | Hatco Model No. GRAL-48D3<br>Glo-Ray® Infrared Foodwarmer, standard wattage with lights, tubular metal heater rod, double heater rod housing 3" spacing, aluminum construction, 1840 watts, NSF, cUL, UL | | |
| | 1 ea | NOTE: Sale of this product must comply with Hatco's Minimum Resale Price Policy; consult order acknowledgement for details | | |
| | 1 ea | NOTE: Includes 24/7 parts & service assistance, call 800-558-0607 | | |
| | 1 ea | One year on-site parts and labor warranty, plus one additional year parts only warranty on all Glo-Ray metal sheathed elements | | |
| | 1 ea | 120/208v/60/1-ph | | |
| | 1 ea | RMB-7J Remote Control Enclosure, (2) toggle switches, (2) indicator lights (for 208 volt only) | $106.56 | $106.56 |
| | 1 ea | STANDARD Clear Anodized Aluminum (housing), standard (Available | | |



**ISI Commercial Refrigeration, LLC**

*A ISI TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | | at time of purchase only) | | |
| | 1 ea | LEADS15 11'-15' Extended Electrical Leads (Available at time of purchase only) | $31.64 | $31.64 |
| | 1 ea | STANDARD Clear Anodized Aluminum, standard (Available at time of purchase only) | | |
| | 1 ea | ADJ ANGLE-D Adjustable angle bracket, (2) pair | $24.42 | $24.42 |
| 69.2 | 1 ea | **HEAT LAMP** | $683.21 | $683.21 |
| | | Hatco Model No. GRAL-60D3 Glo-Ray® Infrared Foodwarmer, standard wattage with lights, tubular metal heater rod, double-heater rod housing 3" spacing, aluminum construction, 2400 watts, NSF, cUL, UL | | |
| | 1 ea | NOTE: Sale of this product must comply with Hatco's Minimum Resale Price Policy; consult order acknowledgement for details | | |
| | 1 ea | NOTE: Includes 24/7 parts & service assistance, call 800-558-0607 | | |
| | 1 ea | One year on-site parts and labor warranty, plus one additional year parts only warranty on all Glo-Ray metal sheathed elements | | |
| | 1 ea | 120/208v/60/1-ph | | |
| | 1 ea | RMB-7M Remote Control Enclosure, (1) toggle switch, (1) infinite switch (for 208 volt only) | $98.24 | $98.24 |
| | 1 ea | STANDARD Clear Anodized Aluminum (housing), standard (Available at time of purchase only) | | |
| | 1 ea | LEADS15 11'-15' Extended Electrical Leads (Available at time of purchase only) | $31.64 | $31.64 |
| | 1 ea | STANDARD Clear Anodized Aluminum, standard (Available at time of purchase only) | | |
| | 1 ea | ADJ ANGLE-D Adjustable angle bracket, (2) pair | $24.42 | $24.42 |
| 70 | 1 ea | **UNDERCOUNTER REFRIGERATOR** | $1,125.00 | $1,125.00 |
| | | ProCore Model No. KUC48R Kintera™ Undercounter Refrigerator, two-section, 48"W, self-contained rear mount refrigeration, 12 cu ft, solid state thermostat, with digital display, (2) solid self-closing doors, with full length integrated door handles; (2) heavy duty PVC coated shelves, stainless steel front, top, sides & interior floor, aluminum back, ABS plastic interior, 3/8 HP, 115v/60/1-ph, 3 amps, NEMA 5-15, cETLus, UL-EPH, Quick Ship | | |
| 73.1 | 1 ea | **GLASS FILLER STATION** | $486.10 | $486.10 |
| | | T&S Brass Model No. B-1230-WFK Water Station, with 8" pedestal glass filler, 18 gauge stainless steel drip pan, drain & water filtration kit, ADA Compliant | | |
| 75 | | BY MILLWORK | | |



**ISI Commercial Refrigeration, LLC**

*A STriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| 76 | 1 ea | **EQUIPMENT STAND, REFRIGERATED BASE** <br> Hoshizaki Model No. CR60A <br> *Steelheart Series Refrigerated Equipment Stand, one-section, 60-1/2"W x 33-1/4"D x 27"H, (2) drawer: each will accommodate (2) 12" x 20" x 6" deep pans, solid state digital controller with temperature alarms, LED display, stainless steel exterior front, sides, & top, stainless steel interior, side-mounted self-contained refrigeration, R290 Hydrocarbon refrigerant, 1/5 HP, 115v/60/1-ph, 2.7 amps, cord, NEMA 5-15P, (4) 4" casters, cETLus, ETL-Sanitation* | $4,848.62 | $4,848.62 |
| | 1 ea | *Warranty: 3-Year parts & labor on entire machine* | | |
| | 1 ea | *Warranty: 5-Year parts on compressor* | | |
| 77 | | INCLUDED WITH ITEM #48 | | |
| 78, 78.1 | | HOOD ON SEPERATE QUOTE. | | |
| MB1 | 1 ea | **HAND SINK** <br> Advance Tabco Model No. PRHSST-24-12 <br> *Prestige Hand Sink, underbar, soap & towel sink, 12"W x 25"D x 36"H (overall), 9" wide x 9" front-to-back x 4" deep bowl, deck mount faucet with 6" spout, 7"H backsplash, deck mounted soap dispenser, c-fold towel dispenser, stainless steel construction, adjustable bullet feet, NSF* | $686.90 | $686.90 |
| MB2.1 | 2 ea | **STORAGE CABINET** <br> Advance Tabco Model No. PRSCO-19-18-M <br> *Prestige Underbar Drainboard Cabinet, open front, 18"W x 25"D x 36"H, 7" backsplash, removable perforated drainboard top, drain pan with 1" drain, (1) fixed mid shelf in cabinet, stainless steel construction, adjustable stainless steel bullet feet, NSF* | $790.39 | $1,580.78 |
| MB3 | 3 ea | **DRIP TROUGH** <br> Advance Tabco Model No. DRKR-24 <br> *Bar Drink Rail, 24"W x 8"D x 3/4"H, (1) perforated removable top grate, 1" drain with 1/8" FPT outlet on right end, 18/300 stainless steel* | $142.73 | $428.19 |
| MB3 | 3 ea | **CUSTOM FABRICATION** <br> *Custom Kitchen Fabricator Model No. SHOT RAIL* <br> Shot Rails Custom | $52.80 | <Alternate> |
| MB4 / MB5 | 3 ea | ICE BIN | $1,093.09 | $3,279.27 |



**ISI Commercial Refrigeration, LLC**

*A ☒ TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | Advance Tabco Model No. PRI-19-30-10<br>Prestige Ice Chest, 30" wide, with 10-circuit cold plate, stainless steel construction with foam insulation, 7" backsplash, 1/2" drain, 20" front-to-back, 11" deep bin, 89 lbs ice capacity, soda chase provision in top of backsplash | | |
| | 3 ea | PRSSR-30 Prestige Speed Rail, single tier, 30"W, (7) bottle capacity, keyhole mounting, stainless steel, sound deadened, NSF | $97.88 | $293.64 |
| | 3 ea | PRA-SSC-30 Prestige Sliding Cover, 29-1/2"W x 16-1/2"D, for 30"W ice bin, 20/300 series stainless steel | $94.00 | $282.00 |
| MB6 | 3 ea | UNDERBAR ADD-ON UNIT | $263.03 | $789.09 |
| | | Advance Tabco Model No. PRSH-19-6<br>Prestige Soda Gun Holder, 6"W x 20"D x 36"H, manifold housing for soda lines with removable cover, stainless steel construction | | |
| | 3 ea | For 4" wide add model SU-61 (no charge) | | |
| MB7 | | SODA GUN BY PURVEYOR | | |
| MB8 | 3 ea | BOTTLE DISPLAY | $517.87 | $1,553.61 |
| | | Advance Tabco Model No. PLD-2518<br>Prestige Liquor Bottle Display Unit, (5) steps, 18"W x 25"D x 36"H, approximately (20) bottle capacity, 7" backsplash, stainless steel construction, stainless steel legs & adjustable bullet feet, NSF | | |
| MB9 | 2 ea | HAND SINK | $502.35 | $1,004.70 |
| | | Advance Tabco Model No. PRHS-19-12<br>Prestige Hand Sink, underbar, 12"W x 20"D x 36"H, 7" splash, stainless steel construction, includes: splash mount faucet with 6" spout, 10" x 14" x 7" deep bowl, NSF | | |
| MB10 | 1 ea | UNDERBAR ADD-ON UNIT | $300.98 | $300.98 |
| | | Advance Tabco Model No. PRSJT-12<br>Prestige Trash Receptacle Cover, 12"W X 25"D x 19"H (overall), mounts between equipment line up, trash opening in top, 20 gauge 300 series stainless steel, accommodates Slim Jim™ trash can (11"W x 20"D x 25"H) (trash can not included), NSF | | |
| MB11 | 1 ea | DRAINBOARD | $386.36 | $386.36 |
| | | Advance Tabco Model No. PRD-24-12<br>Prestige Underbar Drainboard, free-standing, 12"W x 25"D x 36"H, 7"H backsplash, 18 gauge perforated removable drainboard top, 1" IPS drain, 20 gauge stainless steel construction, 18 gauge stainless steel legs with adjustable stainless steel cross-bracing & adjustable stainless steel bullet feet, NSF | | |

Trophy Park Buy-Outs



**ISI Commercial Refrigeration, LLC**

*A 64 TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| MB12 | | GLASS WASHER LEASED BY OWNER. | | |
| MB13 | 1 ea | **CORNER ANGLE FILLER** | $448.88 | $448.88 |
| | | Advance Tabco Model No. PRFD-2025 | | |
| | | Prestige corner filler, 90°, fits 20" deep left & 25" deep right units, 7"H backsplash, removable perforated 18/300 stainless steel drainboard top with 1" drain, stainless steel legs with stainless steel adjustable bullet feet, NSF | | |
| | 1 ea | SU-61 Modification to reduce length, start with next largest size then add "SU-61" to model number for underbar, drink rails, drain pans, hot food units & cold food units | | |
| MB14 | 2 ea | **BACK BAR CABINET, REFRIGERATED** | $2,596.61 | $5,193.22 |
| | | Glastender Model No. C1SB48 | | |
| | | Cooler, one zone, side serviced, bar profile, 48"W, two-section, 18"W door opening, self-contained refrigeration, LED interior lighting, front venting, stainless steel interior, R290, 1/8 HP, NSF Standard 7 for open food storage, cETLus, ETL-Sanitation | | |
| | 2 ea | The C1SB48 can hold (2) standard size keg or up to (8) 1/6 kegs. For (8) 1/6 kegs, two kegs must have a low profile keg tap (05001026). A 5# CO2 bottle (05000636) with tank mount regulator (REG-CO2-HP) will NOT fit with (8) 1/6 kegs. See draft system accessories. | | |
| | 2 ea | 1 year parts & labor warranty, 5 year compressor warranty (NOTE: applies to units sold and installed within the US & Canada) | | |
| | 2 ea | 120v/60/1-ph, 2.75 amps, standard | | |
| | 2 ea | Standard 34° to 40°F operation | | |
| | 2 ea | (L) Refrigeration compartment on left side | | |
| | 2 ea | Refrigeration compartment cover finish: Black vinyl-clad, standard | | |
| | 2 ea | Door style, first: Black vinyl-clad glass | $153.72 | $307.44 |
| | 2 ea | Door hinge location, first: Left | | |
| | 2 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 2 ea | Door handle, first: Polished stainless steel, standard | | |
| | 2 ea | Door style, second: Black vinyl-clad glass | $153.72 | $307.44 |
| | 2 ea | Door hinge location, second: Right | | |
| | 2 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 2 ea | Door handle, second: Polished stainless steel, standard | | |
| | 2 ea | No finished top - galvanized steel sub-top, standard | | |
| | 4 ea | Back finish: Galvanized steel, standard | | |
| | 2 ea | Left side finish: Black vinyl-clad, standard | | |
| | 2 ea | Right side finish: Black vinyl-clad, standard | | |
| | 2 ea | Bright White (7,000k), standard | | |
| | 2 ea | C-4X2-5 Casters, 2-1/2", for side-serviced coolers & frosters (set of four) | $32.26 | $64.52 |



ISI Commercial Refrigeration, LLC

A ES TriMark Company

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| MB12 | | GLASS WASHER LEASED BY OWNER. | | |
| MB13 | 1 ea | CORNER ANGLE FILLER | $448.88 | $448.88 |
| | | Advance Tabco Model No. PRFD-2025 | | |
| | | Prestige corner filler, 90°, fits 20" deep left & 25" deep right units, 7"H backsplash, removable perforated 18/300 stainless steel drainboard top with 1" drain, stainless steel legs with stainless steel adjustable bullet feet, NSF | | |
| | 1 ea | SU-61 Modification to reduce length, start with next largest size then add "SU-61" to model number for underbar, drink rails, drain pans, hot food units & cold food units | | |
| MB14 | 2 ea | BACK BAR CABINET, REFRIGERATED | $2,596.61 | $5,193.22 |
| | | Glastender Model No. C1SB48 | | |
| | | Cooler, one zone, side serviced, bar profile, 48"W, two-section, 18"W door opening, self-contained refrigeration, LED interior lighting, front venting, stainless steel interior, R290, 1/8 HP, NSF Standard 7 for open food storage, cETLus, ETL-Sanitation | | |
| | 2 ea | The C1SB48 can hold (2) standard size keg or up to (8) 1/6 kegs. For (8) 1/6 kegs, two kegs must have a low profile keg tap (05001026). A 5# CO2 bottle (05000636) with tank mount regulator (REG-CO2-HP) will NOT fit with (8) 1/6 kegs. See draft system accessories. | | |
| | 2 ea | 1 year parts & labor warranty, 5 year compressor warranty (NOTE: applies to units sold and installed within the US & Canada) | | |
| | 2 ea | 120v/60/1-ph, 2.75 amps, standard | | |
| | 2 ea | Standard 34° to 40°F operation | | |
| | 2 ea | (L) Refrigeration compartment on left side | | |
| | 2 ea | Refrigeration compartment cover finish: Black vinyl-clad, standard | | |
| | 2 ea | Door style, first: Black vinyl-clad glass | $153.72 | $307.44 |
| | 2 ea | Door hinge location, first: Left | | |
| | 2 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 2 ea | Door handle, first: Polished stainless steel, standard | | |
| | 2 ea | Door style, second: Black vinyl-clad glass | $153.72 | $307.44 |
| | 2 ea | Door hinge location, second: Right | | |
| | 2 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 2 ea | Door handle, second: Polished stainless steel, standard | | |
| | 2 ea | No finished top - galvanized steel sub-top, standard | | |
| | 4 ea | Back finish: Galvanized steel, standard | | |
| | 2 ea | Left side finish: Black vinyl-clad, standard | | |
| | 2 ea | Right side finish: Black vinyl-clad, standard | | |
| | 2 ea | Bright White (7,000k), standard | | |
| | 2 ea | C-4X2-S Casters, 2-1/2", for side-serviced coolers & frosters (set of four) | $32.26 | $64.52 |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| _MB16_ | 1 ea | BACK BAR CABINET, REFRIGERATED | $2,596.61 | $2,596.61 |
| | | Glastender Model No. C1SB48 | | |
| | | Cooler, one zone, side serviced, bar profile, 48"W, two-section, 18"W door opening, self-contained refrigeration, LED interior lighting, front venting, stainless steel interior, R290, 1/8 HP, NSF Standard 7 for open food storage, cETLus, ETL-Sanitation | | |
| | 1 ea | The C1SB48 can hold (2) standard size keg or up to (8) 1/6 kegs. For (8) 1/6 kegs, two kegs must have a low profile keg tap (05001026). A 5# CO2 bottle (05000636) with tank mount regulator (REG-CO2-HP) will NOT fit with (8) 1/6 kegs. See draft system accessories. | | |
| | 1 ea | 1 year parts & labor warranty, 5 year compressor warranty (NOTE: applies to units sold and installed within the US & Canada) | | |
| | 1 ea | 120v/60/1-ph, 2.75 amps, standard | | |
| | 1 ea | Red wine operating temperature (60° to 65°F) | | |
| | 1 ea | (L) Refrigeration compartment on left side | | |
| | 1 ea | Refrigeration compartment cover finish: Black vinyl-clad, standard | | |
| | 1 ea | Door style, first: Black vinyl-clad, standard | | |
| | 1 ea | Door hinge location, first: Left | | |
| | 1 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 1 ea | Door handle, first: Polished stainless steel, standard | | |
| | 1 ea | Door style, second: Black vinyl-clad, standard | | |
| | 1 ea | Door hinge location, second: Right | | |
| | 1 ea | Shelving style: (3) adjustable shelves, standard | | |
| | 1 ea | Door handle, second: Polished stainless steel, standard | | |
| | 1 ea | No finished top - galvanized steel sub-top, standard | | |
| | 2 ea | Back finish: Galvanized steel, standard | | |
| | 1 ea | Left side finish: Black vinyl-clad, standard | | |
| | 1 ea | Right side finish: Black vinyl-clad, standard | | |
| | 1 ea | Bright White (7,000k), standard | | |
| | 1 ea | C-4X4-S Casters, 4", for side-serviced coolers & frosters (set of four) | $57.46 | $57.46 |
| _MB16. 1_ | 1 kt | BACK BAR CABINET, PARTS & ACCESSORIES | $56.95 | $56.95 |
| | | Glastender Model No. 06007097 | | |
| | | Tower Cooling Kit, with evaporator hose, for 1 & 2-door coolers | | |
| _MB16. 2_ | 1 kt | PRIMARY REGULATOR KIT | $128.52 | $128.52 |
| | | Glastender Model No. PRK-TN | | |
| | | Tank mount Nitrogen Primary Regulator Kit | | |
| _MB16. 3_ | 1 kt | DRAFT BEER SYSTEM PARTS | $162.29 | $162.29 |
| | | Glastender Model No. MAN6 | | |
| | | Six Product Manifold Kit (includes: 6 feet of red air line per product & | | |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|---|---|---|---|---|
| | | the fittings required for connection to keg) | | |
| MB16 4 | 1 ea | SANKEY KEG TAP | $36.79 | $36.79 |
| | | Glastender Model No. 05001066 Sanke keg tap, stainless probe | | |
| Z | 1 ea | DEHYDRATOR | $110.30 | <Optional> |
| | | JB Prince Model No. P324 Dehydrator, 11"L x 17"W x 10"H, counter top, accommodates (12) 11" x 17" trays, includes: (6) 11" x 17" trays, 95 to 158 °F temperature range, plastic, gray, 120v/60, 500 watts | | |
| | 1 ea | 1 year base and tray warranty | | <Optional> |
| Z-1 | 1 ea | INSTALLATION OF CUSTOM FABRICATION | $1,638.50 | $1,638.50 |
| | | Custom Kitchen Fabricator Model No. CUSTOM FAB INSTALL Deliver, Set in place, level, install silicone sealant as necessary where equipment abuts adjacent surfaces. If additional trip is required to level and seal because plumbing and electrical connections were not completed, additional charges will apply. Custom Kitchen Fabricators quoted custom S/S equipment only. | | |
| Z-2 | 1 ea | INSTALLATION OF REMOTE ICE MACHINE | $3,780.00 | $3,780.00 |
| | | ISI Commercial Refrigeration Model No. O&J REMOTE ICE MACHINE Service to include delivery, uncrate equipment, remove packaging material from the location, connect ice machine and water filter (if applicable) to utilities, start and adjust equipment to factory specifications. This quote is predicated on the existing utilities needed for the quoted equipment to be of correct size, voltage, available amperage, and location. The installation site is on the first floor or accessible by elevator. Any additional material and/or labor required to accommodate this equipment installation will require additional fees over and above this quote. | | |
| Z-3 | 1 ea | DELIVER & SET PROJECTS | $13,650.00 | $13,650.00 |
| | | ISI Commercial Refrigeration Model No. DELIVER AND SET PROJECTS Service to include: deliver, uncrate, set in place, install accessories, and make ready for final connections to be done by others (unless connection is specifically quoted in this proposal). All custom fabricated items will be set in place, leveled, and sealed with silicone as necessary. If additional trip is required to level and seal because plumbing and electrical connections were not completed, additional charges will apply. Does not include fork lifts, cranes, hoist, trash dumpster rental or trash hauling. | | |
| Z-4 | 1 ea | START UP | $600.00 | $600.00 |
| | | ISI Commercial Refrigeration Model No. START UP Start up and calibrate gas cooking equipment (limited to equipment | | |



**ISI Commercial Refrigeration, LLC**

*A ⬛TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | | supplied by ISI) | | |

| | |
|---|---|
| Merchandise | $176,730.58 |
| Freight | $2,090.61 |
| Tax 8.25% | $7,430.44 |
| Total | $186,251.63 |

Proposal/Contract

1. This Agreement is by and between ISI Commercial Refrigeration, Inc. (ISI) and _____ (Buyer) as of the date shown below. Unless otherwise noted all merchandise shall be covered by the individual manufacturer's standard warranty.

2. All equipment is supplied with standard components. This quote is limited to only the items stated and·priced. No implied·parts, accessories, or services are included in the cost.

3. Special ordered and non stocking equipment cannot be returned without prior authorization and will be subject to a restocking fee and return freight costs as determined by the manufacturer. Cancellation of equipment in process of being built by the factory may result in a cancellation fee determined by the factory. It is the responsibility of the.purchaser to review all specifications and confirm that dimensions, electrical voltage, and plumbing specifications are correct.

4. ISI is not responsible for wall blocking, running drains or making hard wire connections.   All roof/wall penetrations and sealing are the responsibility of other trades. All plumbing connections, back flow preventers, pressure regulators and flushing of gas and water lines are the responsibility of other trades. All·electrical connections including disconnects, shunt trip breakers, micro switches, motor starters, switches, etc., are excluded from this quote. All Ducts, fans, curbs, flashing, trim and ceiling closures are by others unless otherwise specified.

5.Unless otherwise noted, Exhaust Hoods and Walk in panels and refrigeration will be shipped directly to the job site. Off loading and installation by others.

6. Does not include dumpster rental, trash hauling, plywood to cover ground to access building in the event concrete is not complete.

7. This Proposal/Contract does not include any special licenses, permits, or fees that may or may not be required. Buyer is responsible for obtaining any and all approvals and permits from the Health Department, Building Department, Fire Marshal, etc.

8. All quotations, terms and financial arrangements are subject to approval of the Credit Department of ISI. The Buyer grants to ISI a security interest in the items specified in this Proposal/Contract until such items have been fully paid for by the Buyer. Buyer hereby appoints ISI as Buyer's agent and grants ISI limited Power.of.Attorney.for.the· purpose of executing·any·document·necessary·to·perfect the security interest granted in this Proposal/Contract.



**ISI Commercial Refrigeration, LLC**

A TriMark Company

I understand, agree to, and accept the above terms and conditions.

Signature _____  Date ___5/21/2019___

Printed Name ___Jeremiah Miranda___

## Addendum to Contract

**1. CREATION OF SECURITY INTEREST.** To secure payment of the purchase price of the equipment, ISI will retain a security interest in and title to the equipment and in any proceeds of the equipment under Chapter 9 of the Texas Business and Commerce Code until the obligation is fully paid. Title to the equipment will not pass to Buyer until all sums due under this agreement are fully paid. Transfer of this agreement or of any interest in it, or injury to or loss of the equipment will not release Buyer from this agreement.

**2. PERFECTION OF SECURITY INTEREST.** Buyer warrants and covenants that no financing statement covering all or any part of the equipment or any proceeds is on file in any public office. At ISI's request buyer will execute or join in executing all financing statements and other instruments, in forms satisfactory to ISI, that ISI deems necessary to perfect its security interest in the equipment under Chapter 9 of the Business and Commerce Code. ISI will pay the cost of filing the statements or other instruments. Buyer agrees that all payments Seller makes for or on account of Buyer's obligations under this agreement or to protect the equipment or Seller's interest in it, for insurance, taxes, repairs, storage, or costs of collection, repossession, and return, will be added to the amount due by Buyer under this agreement and will become payable on demand.

**3. INSTALLATION OF THE EQUIPMENT.** Except for those items specifically identified in the ISI quote, this bid is for set and place only.

**4. SUPERSEDENCE.** This Addendum amends the terms of any agreement to purchase equipment from ISI by customer, and any provision of this Addendum that is inconsistent with any provision of any customer's agreement to purchase equipment from ISI shall wholly supersede such inconsistent provision in the customer agreement to purchase equipment from ISI.

UNDERSTOOD & AGREED:

_____     ___5/21/2017___
Customer Signature                      Date

___Jeremiah Miranda___        ___managing Member___
Print Customer Name                    Title

Trophy Park Buy-Outs
****CONTRACT**** 05.13.2019          Miranda Management          Page 24 of 25

ISI WIRE TRANSFER REQUEST FORM

DATE:

BUSINESS UNIT: _____

CONTACT NAME: _____

TELEPHONE #: _____

TOTAL AMOUNT: _____

DEBIT ACCOUNT NO: _____

VALUE DATE: _____

CURRENCY: _____

AMOUNT: _____

BANK NAME:        RBS CITIZENS, NATIONAL ASSOCIATION

BANK ADDRESS:    1 CITIZENS DRIVE.

CITY/STATE:        RIVERSIDE RI 02915

PHONE:            877-550-5933

REFERENCE: _____

_____

AUTHORIZED SIGNATURE: _____

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**05/23/2019 05:00 PM**

FILED
TEXAS
SOS    SECRETARY OF STATE

891914030005

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Phone: (800) 331-3282 Fax: (818) 662-4141 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| 331 - CELTIC BANK |
| Lien Solutions |
| P.O. Box 29071 |
| Glendale, CA 91209-9071 |
| QLY: TXTX |

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Trophy Hospitality, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6770 Winning Drive, Suite 900 | Frisco | TX | 75034 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ac)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Celtic Bank Corporation | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 268 S. State St., Ste 300 | Salt Lake City | UT | 84111 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest: in all equipment

| 5. Check only if applicable and check only one box: Collateral is ☒ held in a Trust (see UCC1Ad, item 17 and Instructions) | being administered by a Decedent's Personal Representative | | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☒ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | | |
| 8. OPTIONAL FILER REFERENCE DATA | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# suntec ®
# industries

# suntec
## signs, inc.

May 9, 2019
Revision to original proposal dated July 17, 2018

Miranda Management
2810 N. Henderson Ave.
Dallas, TX 75206

Re: Proposal #3585
Exterior Signs
Trophy Park – The Star

Dear Jeremiah

We thank you for your valued inquiry and have pleasure in submitting our quotation for the supply and install of three exterior signs. Our proposal is as follows:

$16,965.00 (including tax)

Canopy Sign

One set of 18" high reverse channel letters reading Trophy Park. Letters mount to flat cut out ¼" thick aluminum background. Letters and background panel mount to wireway. LED illumination.

Wall Signs

Two sets of 24" high reverse channel letters reading Trophy Park mounted directly to wall. LED illumination.

The above price includes fabrication, installation and sales tax but excludes sealed engineering ($350.00), actual permit cost and permit acquisition ($250.00), if applicable. Primary electrical power to sign areas to be the responsibility of others.

We estimate that we can supply and install your sign within 4-6 weeks from receipt of signed contract, 50% down payment and release of any City required permits. If you should decide to accept, please initial and return both pages of this quotation. The balance will be due upon completion of installation.

Please note that our price is valid for 30 days from this date and is subject to our Purchase Agreement, a copy of which is attached. Please read these conditions, as they would be applicable to any order placed by you. Should you require any further information, please feel free to call.

Sincerely,
SUNTEC INDUSTRIES

Brad Pilkington

The above proposal is accepted by:

Date: 5/21/289

# suntec industries
(A Division of Coconut Enterprises, Inc.)

# suntec signs, inc.

3220 Quebec Street · Dallas, Texas 75247 · (214) 630-1116 · Fax #: (214) 630-2719
E-Mail: sales@suntecindustries.com · Website: www.suntecindustries.com

| For Credit Payments |
|---|

DATE: _08/08/2018_____

TRANSACTION METHOD:  (WIRE)    ACH
Please circle preference. If none is selected, transactions will be processed by ACH

ACCOUNT NAME and
BENEFICIARY NAME:  __Suntec Signs Inc.___
*If Account Name is different than Beneficiary name please specify

Account Holder/ Business Address:  __Suntec Signs, Inc.____3220 Quebec Street_

City: __Dallas_____  State: ____TX_____  Zip:__75247_____

FEDERAL TAX ID NUMBER: ____ ███████

DEPOSITORY INSTITUTION:
Bank/Depository Name: _____ The American National Bank of Texas

Bank Address: _____ Operations Center 200 N Catherine

City: ____Terrell_____  State: __TX_____  Zip:__75160_____

BANK ACCOUNT:
Bank Account #: ____ ████████
(Can be Checking or Savings)

ABA#: ___ ██████
(Must be 9 digits only)

Signature: _____

Printed Name and Title:____David Tobias Vice President_____

THIS FORM IS USED TO CREDIT AN ACCOUNT FOR PAYMENT OR TO ESTABLISH RECURRENT PAYMENT
CREDITS FOR THE ABOVE STATED ACCOUNT.

BUSDOG.V3

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

05/03/2019 05:00 PM

FILED
TEXAS
SECRETARY OF STATE
SOS

887361430002

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)  15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

MAY -3 2019
TXTX

N20

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| 19-0008450855  3/8/2019  SS TX | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:          AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|---|

| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
|---|---|---|---|

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☒ COLLATERAL CHANGE: Also check one of these four boxes: ☒ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:
All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest: in all equipment

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Celtic Bank Corporation | | | |

| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Trophy Hospitality, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282



**QUOTATION: 9816**
Delcom Group, L.P.
25253 E State Highway 121
Ste 400
Lewisville, TX 75056

| BILL TO: | JOB LOCATION: | |
|---|---|---|
| COMPANY: Trophy Park | COMPANY: Trophy Park | DATE: April 2, 2019 |
| ADDRESS: 6776 Winning Dr. | ADDRESS: 6776 Winning Dr. | SALES REP: O'BRIEN FRAZIER |
| | | PHONE: |
| Frisco, TX 75034 | Frisco, TX 75034 | EMAIL: OFRAZIER@DELCOMGROUP.COM |
| CONTACT: | CONTACT: | CONTACT # |
| PHONE: | PHONE: | |

**TITLE:**
Trophy Park Frisco Star - Audio Video Systems with SAVI Control

**SCOPE OF WORK:**
Delcom will provide and install the following displays:Interior:55" Ceiling Mount Displays (back to back)- Qty 155" Wall Mount
Displays - Qty 275" Wall Mount Displays - Qty 24x2 55" ceiling mount video wall
Exterior65" Ceiling Mount Displays (back to back)- Qty 498" Wall Mount Display - Qty 1 (divisible in 4 quadrants via SAVI
system)
Delcom will provide and install the following speaker zones along with amplification, cabling, routing and control:Front Patio -
ceiling mounted speakers - Qty 6Side Patio - ceiling mounted speakers - Qty 5Rear Outside Bar - wall mounted speakers -
Qty 4Interior (zone 1) - ceiling mounted speakers - Qty 4 + SubwooferInterior (zone 2) - ceiling mounted speakers - Qty 8 +
Subwoofer x3Interior Bathroom- ceiling mounted speakers - Qty 2
Delcom will provide the infrastructure for the following audio and video inputs;Owner provided Cable/SatelDra set top boxes -
Qty 6 STB devices are required installation within the AV rack  Delcom will connect from the STB outputs to the input ports
of the SAVI system.Delcom provided HDMI + balanced audio input for a "DJ" location - Qty 1
All video will be distributed and controlled via a Delcom provided and installed SAVI control and video distribution system.
This will operate via the owner provided network infrastructure and an owner provided tablet device, with a network link to the
Delcom provided AV network.
Assumptions:Owner is responsible for all electrical needs for this project.Owner is responsible for all building penetrations and
conduit cable pathways.
SAVI requires a yearly support agreement.  At this time, it is estimated that yearly cost will be $1,700/yr.





QUOTATION: 9918
Delcom Group, L.P.
2525 E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | | Indoor 55" Displays | | | |
| | | 55IN 1920X1080 LCD WEB OS4.0 7AAMNTR 450NIT HDMI DP VGA LAND PORT 24 7 | 4.00 | $990.26 | $3,961.04 |
| MTM1U | CHIEF MANUFACTURING | MTM UNIVERSAL | 2.00 | $145.44 | $290.83 |
| | | FUSION? Large Flat Panel Ceiling Mount | 1.00 | $517.56 | $517.56 |
| CMS072 | CHIEF MANUFACTURING | CHIEF FIXED PIPE 72" | 1.00 | $82.03 | $82.08 |
| CMA372 | CHIEF MANUFACTURING | CHIEF OFFSET UNISTRUT ADAPTER | 1.00 | $45.60 | $45.60 |
| CAT6STP-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 8.00 | $5.13 | $41.04 |
| CAT6STP-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 8.00 | $5.60 | $44.80 |
| | | Outdoor Patio 65" Displays | | | |
| | | 65IN 1920X1080 WEBOS 450NIT MNTR HDMI DP DVI LAND/PORT SPKR 24/7 | 6.00 | $1,708.81 | $10,252.86 |
| | | The TV Shield Pro 65-70" Outdoor Weatherproof TV/Display Enclosure | 6.00 | $2,038.61 | $12,231.66 |
| | | FUSION? Large Flat Panel Ceiling Mount | 3.00 | $517.56 | $1,552.68 |
| CMS072 | CHIEF MANUFACTURING | CHIEF FIXED PIPE 72" | 3.00 | $82.03 | $246.24 |

Printed on 4/21/2019                                                                 Page 2 of 14



NATIONAL HEADQUARTERS ● 2525 E SH 121, Ste 400 ● Lewisville, TX 75056 ● Phone: 214.329.9900 ● Fax 214.399.5905          www.delcomgroup.com



QUOTATION: 9916
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| CMA372 | CHIEF MANUFACTURING | CHIEF OFFSET UNISTRUT ADAPTER | 3.00 | $45.50 | $136.80 |
| CAT6S1P-1BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 12.00 | $5.13 | $61.56 |
| CAT6S1P-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 12.00 | $5.60 | $67.20 |
| | | Indoor 75" Displays | | | |
| | | 75IN 3840X2160 4K LCD TAA MNTR MNTR UHD HDMI DP DVI 24/7 400NIT 3YR | 2.00 | $3,870.33 | $7,740.66 |
| XTM1U | CHIEF MANUFACTURING | MICRO-ADJUST TILT WALL MOUNT X | 2.00 | $283.48 | $566.96 |
| CAT6STP-1BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 4.00 | $5.13 | $70.52 |
| CAT6S1P-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 4.00 | $5.60 | $27.40 |
| | | Panasonic for Star Feed | | | |
| | | Panasonic 49-inch Class Full HD LCD Display | 1.00 | $933.68 | $933.68 |
| | | LG WP320 | 1.00 | $256.96 | $256.96 |
| MTM1U | CHIEF MANUFACTURING | MTM UNIVERSAL | 1.00 | $145.44 | $145.44 |
| CAT6STP-1BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 2.00 | $5.13 | $10.26 |
| CAT6S1P-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 2.00 | $5.60 | $11.20 |



QUOTATION: 9816
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | | Misc Mounting Hardware | | | |
| MISC-EXPENSE | DELCOM | Misc Material | 1.00 | $666.67 | $666.67 |
| | | Services - Wall Mounted & Ceiling Mounted FPD's | | | |
| | | Dining Video Wall | | | |
| | | SGN 1920X1080 LCD VIDEO WALL MNTR 1.8VM SEAM 500nit HDMI DVI RGB 24/7 | 8.00 | $2,457.64 | $19,661.12 |
| | | FUSION? Micro-Adjustable Large Ceiling Mounted 2 x 2 Video Wall Solutions | 2.00 | $2,254.80 | $4,509.60 |
| | | FUSION? LCM Menu Board Accessories | 2.00 | $63.08 | $126.16 |
| | | FUSION? Freestanding and Ceiling Extension Brackets | 2.00 | $145.60 | $291.20 |
| CMA372 | CHIEF MANUFACTURING | CHIEF OFFSET UNISTRUT ADAPTER | 4.00 | $45.60 | $182.40 |
| CMS036 | CHIEF MANUFACTURING | FIXED PIPE 36" | 4.00 | $38.00 | $152.00 |
| CAT6STP-10LK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 16.00 | $5.13 | $82.08 |
| CAT6STP-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 16.00 | $5.60 | $89.60 |
| MISC-EXPENSE | DELCOM | Misc Material | 1.00 | $3,333.33 | $3,333.33 |
| | | Outside Bar Video Wall | | | |
| | | SGN 3840X2160 4K LCD TAA MNTR MNTR UHD HDMI DP DVI 24/7 500NIT 3YR | 1.00 | $10,838.78 | $10,838.78 |
| XTM1U | CHIEF MANUFACTURING | MICRO-ADJUST TILT WALL MOUNT X | 1.00 | $283.48 | $283.48 |

NATIONAL HEADQUARTERS    • 2525B E SH 121, Ste 400 • Lewisville, TX 75056    www.delcomgroup.com
• Phone: 214.389.5500 • Fax: 214.389.5555



QUOTATION: 9816
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | UPC | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| MISC-EXPENSE | DELCOM | Misc Material | 1.00 | $666.67 | $666.67 |
| CAT6STP-1BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 2.00 | $5.13 | $10.26 |
| CAT6STP-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 2.00 | $5.60 | $11.20 |
| | | SAVI System | | | |
| | | SAVI Server Pro | 1.00 | $2,000.00 | $2,000.00 |
| | | Display License | 22.00 | $80.00 | $1,760.00 |
| | | SAVI Programming/Configuration | 1.00 | $2,000.00 | $2,000.00 |
| | | Annual Support | 1.00 | $1,813.33 | $1,813.33 |
| | | VeCodec Ultra 4 | 2.00 | $3,385.67 | $6,771.34 |
| H01181-6PRO3LK | Comprehensive Cable | Pro AV/IT Certified 18Gb 4K High Speed HDMI Cable with ProGrip 6ft Black | 6.00 | $16.67 | $100.02 |
| XMS-7048P | Luxul | 52-Port Stackable Gigabit PoE+ L2/L3 Managed Switch | 1.00 | $2,370.00 | $2,370.00 |
| CAT6STP-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 6.00 | $5.60 | $33.60 |
| | | Audio System | | | |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |

NATIONAL HEADQUARTERS   ■ 2525B E SH 121, Ste 400 ● Lewisville, TX 75056
■ Phone 214.383.5500 ● Fax 214.389.5505
www.delcomgroup.com



QUOTATION: 9816
Delcom Group, L.P.
2525 B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | 10" Two-way foreground/background loudspeaker with 70/100V transformer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |



NATIONAL HEADQUARTERS ● 2525B E SH 121, Ste 400 ● Lewisville, TX 75056
● Phone: 214.302.5500 ● Fax: 214.302.5505                    www.delcomgroup.com



QUOTATION: 9918
Delcom Group, LP.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | Yoke mount for AD-S10T loudspeaker black | 1.00 | $123.75 | $123.75 |
| | QSC | AcousticDesign series small format surface mount subwoofer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | AcousticDesign series small format surface mount subwoofer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | AcousticDesign series small format surface mount subwoofer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | QSC | AcousticDesign series small format surface mount subwoofer 8 Ohm | 1.00 | $498.75 | $498.75 |
| | | 8" two-way surface speaker, 70/100V transformer with 8Ω bypass, 107° conical (AD41?) | 16.00 | $371.75 | $5,970.00 |
| | | Yoke mount for the AD-S81 | 16.00 | $98.75 | $1,580.00 |
| | QSC | R N 700W CEILING SPEAKER W/ROUND GRILLE | 1.00 | $436.25 | $436.25 |
| | QSC | R N 700W CEILING SPEAKER W/ROUND GRILLE | 1.00 | $436.25 | $436.25 |
| CX502 | QSC | 2 channels, 300 watts/ch at 8Ω, 500 watts/ch at 4Ω, 500 watts/ch at 2Ω | 1.00 | $1,168.75 | $1,168.75 |
| CX502 | QSC | 2 channels, 300 watts/ch at 8Ω, 500 watts/ch at 4Ω, 500 watts/ch at 2Ω | 1.00 | $1,168.75 | $1,168.75 |
| CX1102 | QSC | 2 channels, 700 watts/ch at 8Ω, 1100 watts/ch at 4Ω, 1700 watts/ch at 2Ω | 1.00 | $1,912.50 | $1,912.50 |
| CX1102 | QSC | 2 channels, 700 watts/ch at 8Ω, 1100 watts/ch at 4Ω, 1700 watts/ch at 2Ω | 1.00 | $1,912.50 | $1,912.50 |
| CX1102 | QSC | 2 channels, 700 watts/ch at 8Ω, 1100 watts/ch at 4Ω, 1700 watts/ch at 2Ω | 1.00 | $1,912.50 | $1,912.50 |
| | Belden | Belden Brilliance 1307A 16 AWG 7C Underground Speaker Cable R-C3 In-Wall Speaker Wire 500 ft. USA | 250.00 | $0.33 | $82.50 |



QUOTATION: 9816
Delcom Group, L.P.
2525 B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFC | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | Belden | 16-2C STR BC PP PVC JKT BLK CMR 75C 1000' REEL | 100.00 | $0.20 | $20.00 |
| | Belden | 16-2C STR BC PP PVC JKT BLK CMR 75C 1000' REEL | 200.00 | $0.20 | $40.00 |
| 5000157 0051000 | Belden | CBL 2COND 12AWG PVC FRPVC | 100.00 | $0.67 | $67.00 |
| 5000157 0051000 | Belden | CBL 2COND 12AWG PVC FRPVC | 200.00 | $0.57 | $134.00 |
| | Belden | 16-2C STR BC PP PVC JKT BLK CMR 75C 1000' REEL | 200.00 | $0.20 | $40.00 |
| | Belden | 16-2C STR BC PP PVC JKT BLK CMR 75C 1000' REEL | 100.00 | $0.20 | $20.00 |
| | Belden | 16-2C STR BC PP PVC JKT BLK CMR 75C 1000' REEL | 200.00 | $0.20 | $40.00 |
| | Yamaha Commercial Audio | MTX series 16 x 8 zone DSP matrix processor YDC interface 8 input/4 output GPI port 1U | 1.00 | $1,457.80 | $1,457.89 |
| PD-920R | Middle Atlantic | 9OTL,T,9GA,RKMT 9VIR,W/SRG | 1.00 | $218.60 | $218.60 |
| | | QTY. 1 in bottle | | | |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 152.00 | $0.15 | $22.80 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |
| | Belden | Belden Analog Cnd Cable 22awg 1K' Black | 6.00 | $0.15 | $0.90 |



NATIONAL HEADQUARTERS    • 2525B E SH 121, Ste 400 • Lewisville, TX 75056
• Phone 214.383.4900 • Fax 214.383.3155            www.delcomgroup.com



DELCOM GROUP

QUOTATION: 8816
Delcom Group, L.P.
25253 E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | RDL | Mounting plate with 3-pin XLR female | 1.00 | $17.27 | $17.27 |
| HD-TX-101-C-1G-E-B-T | CRESTRON | DM Lite - HDMI over CATx Transmitter, Wall Plate, Black Textured | 1.00 | $253.33 | $253.33 |
| HD-RX-101-C-E | CRESTRON | DM Lite - HDMI over CATx Receiver, Surface Mount | 1.00 | $220.00 | $220.00 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| 60-804-01 | Extron | ASA 141 Passive Audio Summing Adapter with RCA Inputs and Balanced/Unbalanced Output | 1.00 | $46.67 | $46.67 |
| | | Services - Audio | | | |
| | | Equipment Rack | | | |
| VFD-41A | Middle Atlantic | 41SP,CURVED VENTED FR DR | 1.00 | $407.70 | $407.70 |
| BGR-41SA-32 | Middle Atlantic | 41SP/32D STAND ALONE BGR | 1.00 | $1,190.91 | $1,190.91 |
| CBS-BGR | Middle Atlantic | BGR CASTER KIT W/HDWARE | 1.00 | $158.61 | $158.61 |
| HP500 | Middle Atlantic | 500PC 10-32 SCREW W/CAPT. | 1.00 | $99.97 | $99.97 |

NATIONAL HEADQUARTERS • 25256 E SH 121, Ste 400 • Lewisville, TX 75056 • Phone: 214.237.5500 • Fax: 214.399.5501

www.delcomgroup.com

QUOTATION: 9818
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

**EQUIPMENT**

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| RR2-3RCN | Middle Atlantic | 2SP 3"D RACKRAIL RECESSOR | 2.00 | $30.67 | $61.34 |
| PR1 | Middle Atlantic | 1SP PANEL W/BRUSH GROMMET | 1.00 | $47.32 | $47.32 |
| BGR-552FT | Middle Atlantic | 0GR 557CFM FAN TOP | 1.00 | $365.83 | $365.83 |
| VBK-BGR-5A | Middle Atlantic | BGR-5A VENT BLOCKER KIT | 1.00 | $17.33 | $17.33 |
| DM-RP2-674 | Crestron | DigitalMedia? 24-Port Keystone Patch Panel | 2.00 | $120.00 | $240.00 |
| DM-CONN-ULTRA-RECP-50 | Crestron | DigitalMedia? Ultra Keystone RJ45 Jack, 50-Pack w/Termination Tool | 1.00 | $800.00 | $800.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK<br>QTY. 2 in E238 | 1.00 | $8.00 | $8.00 |
| FB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK<br>QTY. 2 in E238 | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK<br>QTY. 2 in E238 | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK<br>QTY. 2 in E238 | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK<br>QTY. 2 in E238 | 1.00 | $8.00 | $8.00 |

Printed on 4/20/2015

Page 12 of 14

NATIONAL HEADQUARTERS   • 2525B E SH 121, Ste 400 • Lewisville, TX 75056
• Phone: 214.3825500 • Fax: 214.3895505      www.delcomgroup.com



QUOTATION: 9818
Delcom Group, L.P.
25258 E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK .QTY, 2 in E23B | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK .QTY, 2 in E23B | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK .QTY, 2 in E23B | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK .QTY, 2 in E23B | 1.00 | $8.00 | $8.00 |
| EB1 | Middle Atlantic | 1SP FLANGED ECONO BLANK .QTY, 2 in E23B | 1.00 | $8.00 | $8.00 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $8.00 | $8.00 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| EB2 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |

Printed on 4/22/2013

Page 11 of 14



QUOTATION: 9818
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

EQUIPMENT

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| E92 | Middle Atlantic | 7SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| E92 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| E92 | Middle Atlantic | 2SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| E92 | Middle Atlantic | 7SP FLANGED ECONO BLANK | 1.00 | $10.67 | $10.67 |
| VBK-S28 | Middle Atlantic | 28 UP SX VENT BLOCK KIT | 1.00 | $17.33 | $17.33 |
| QTFP-7 | Middle Atlantic | QUIET FAN PNL TEXT HOR 2 | 1.00 | $178.63 | $178.63 |
| LBP-1A | Middle Atlantic | 10 PACK L LACER BAR | 1.00 | $32.63 | $32.63 |
| | | QTY. of 10 in E239 | | | |
| IHKM-2 | Middle Atlantic | 2SP HINGED HORIZ CABLE MGR | 1.00 | $51.31 | $51.31 |
| | | Rack power components | 1.00 | $1,333.33 | $1,333.33 |
| | | Vertical Cable Management | 2.00 | $266.67 | $766.67 |
| M5200209 | Middle Atlantic | 2U handle kit | 1.00 | $133.33 | $133.33 |
| VRS | Middle Atlantic | VERTICAL RACKMOUNT SYSTEM | 1.00 | $167.27 | $167.27 |

Printed on 4/22/2019                                                                 Page 12 of 14

NATIONAL HEADQUARTERS   • 2525B E SH 121, Ste 400 • Lewisville, TX 75056
• Phone: 214.289.5500 • Fax: 214.359.5505                    www.delcomgroup.com



QUOTATION: 9816
Delcom Group, LP.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

**EQUIPMENT**

| PART NUMBER | MFG | PART DESCRIPTION | QTY | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| | | Data Drop for SAVI | 44.00 | $220.00 | $9,680.00 |
| CAT6S1P-1BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 1ft | 25.00 | $5.13 | $128.25 |
| CAT6S1P-3BLK | Comprehensive Cable | Cat6 Snagless Shielded Ethernet Cables, Black, 3ft | 25.00 | $5.60 | $140.00 |
| | | Services - Rack | | | |

TOTAL EQUIPMENT $138,070.50

**SHIPPING & HANDLING**

| DESCRIPTION | PRICE |
|---|---|
| Shipping and Handling | $2500.00 |

TOTAL SHIPPING & HANDLING $2,500.00

**INSTALLATION SERVICES**

| DESCRIPTION | PRICE |
|---|---|
| AV Design And Engineering | $4,615.20 |
| Project Management | $4,758.95 |
| AV Installation-wall mount FPD QTY 5 | $1,384.60 |
| AV Installation-ceiling mount FPDx2 QTY 4 | $1,661.52 |
| AV Commissioning | $1,823.03 |
| AV Installation-wall | $3,738.42 |
| AV Installation - inside speakers - 1 hour per | $1,107.68 |



QUOTATION: 9816
Delcom Group, L.P.
2525B E State Highway 121
Ste 400
Lewisville, TX 75056

**INSTALLATION SERVICES**

| DESCRIPTION | PRICE |
|---|---|
| AV Installation - outside speakers - 1.5 hour per | $1,661.52 |
| AV Installation - sub - 2 hour per | $415.38 |
| AV Installation - RACK | $3,107.68 |
| AV Installation | $553.84 |
| AV Control-Programming | $230.76 |
| Training | $461.52 |

| TOTAL INSTALLATION SERVICES | $23,370.10 |
|---|---|

| SUBTOTAL: | $165,000.00 |
|---|---|
| TAX: | $13,612.50 |
| TOTAL: | $178,612.50 |



## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 15331 - CELTIC BANK

> Lien Solutions
> P.O. Box 29071
> Glendale, CA 91209-9071                    TXTX

File with: Secretary of State, TX

04/03/2019 05:00 PM

FILED
TEXAS
SOS   SECRETARY OF STATE

879494980002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 19-0008450855  3/8/2019  SS TX | (or recorded) in the REAL ESTATE RECORDS<br>Filer: [also] Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☒ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:
All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest: in all equipment

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Celtic Bank Corporation | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Trophy Hospitality, LLC

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

| VENDOR | ITEM # | AMOUNT |
|--------|--------|--------|
|  |  | $ |
| 131 Commerical | 72 | $ 99,817.77 |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |

TOTAL DRAW $ 99,817.77

## CELTIC BANK DRAW REQUEST

Submit all draws to:

constructiondraws@celticbank.com

To:
Borrower:  Trophy Hospitality LLC

Property   6770 Winning Drive, Suite 900
address:
Frisco, TX 75034-7650

In regard to the above referenced construction loan, we have incurred the charges for labor and material ordered or listed on this billing, for which we hereby request checks to be prepared and disbursed

We certify and represent that all of the labor and material for which these bills are requested have been utilized in the construction. This referenced work, and that restitution to date is acceptable and is in accordance with approved plans and specifications. It is understood and agreed that the money evidence this request will be funded as from checks and used to pay debts for labor and material as listed on this form.

Total amount authorized for payment on this draw request:

_____

By:
Date  4/1/2019
By:   Borrower signature

Page 1

### INSTALLMENT CONTRACT AND SECURITY AGREEMENT

This Installment Sale and Security Agreement (after the Agreement) made this 27th day of March 2019, between Strategic Equipment LLC, a division of Strategic Equipment And Supply Corporation, 2501 S Valley Parkway Suite 200 Lewisville, Texas 75067, herein after referred to as Seller, and Trophy Park herein after referred to as Customer.

In consideration of the mutual covenants and promises herein contained, Seller and Customer agree as follows:

#### SALE OF EQUIPMENT

Seller agrees to sell, and Customer agrees to buy the restaurant equipment, furniture and small wares further described on Strategic Equipment, inc., a division of Strategic Equipment and Supply Corporation order dated March 27th, 2019 in the amount of $158,622.28 noted as project Trophy Park any addenda, additions, plan revisions, or amendments made prior to the completion of installation on the terms herein stated and/or any small wares contracted for by Customer from Seller, its affiliates or subsidiaries, hereinafter acquired within 90 days of the date of the final installation under this contract. Any such small wares invoice is specifically incorporated herein by reference.

#### TERMS OF SALE

Customer shall pay $ 158,622.28 for the equipment as follows:

1. $73,317.77 of the contract amount as down payment, due on the date of this Agreement shown above;
2. $43,902.27 of the contract amount prior to time of shipment;
3. Remaining 10% balance is due upon receipt of final invoice, such invoice to be issued following substantial completion of installation by Seller.
4. INTEREST shall accrue at the rate of 1-1/2% per month (18% annually) on any delinquent accounts.

#### SECURITY INTEREST

Seller hereby retains a security interest pursuant to the UCC, as created, in the above described property to secure Customer's obligation to pay as set forth above. Customer also agrees that the security interest will cover all accessions (goods that become affixed to or installed in the property) and also in the proceeds (whatever received upon sale, exchange or collection) of the property. Such grant shall not be construed to constitute in any sale or transfer of the collateral. Seller and Customer agree that a carbon, photographic, or other reproduction of this security agreement is sufficient as a financing statement filing and for perfection purposes.

#### USE AND TRANSFER OF EQUIPMENT

The equipment covered by this Agreement shall be kept at Trophy Club until such a time as a written consent to a change of location is obtained from Seller. Customer shall keep equipment free from all liens, taxes, and encumbrances. Customer shall not sell or encumber equipment or any interest therein without Seller's prior written consent.

#### INSURANCE

Customer shall keep equipment at all times insured against risk of loss or damage by fire, theft, and such other casualties as Seller may reasonably require.

#### DEFAULT

Any of the following events or conditions shall constitute default hereunder.

1. Failure to pay when due, any or all of the obligations listed above.
2. Material falsity of any statement, representation, or warranty made herein, or in any supporting financial statement by or on behalf of Customer.
3. Failure to observe or perform any other covenant or agreement herein.
4. Death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, or commencement of any proceedings under any bankruptcy or insolvency by or against Customer or any guarantor for Customer.
5. Loss, theft, substantial damage, destruction, sale, or encumbrance to or of any equipment, or making of any levy, seizure, or attachment of the equipment.
6. Good faith belief that the due and punctual payment of any or all of the obligations is impaired.

#### REMEDIES

Upon the occurrence of an event of default as described above and at any time thereafter, Seller may exercise any one or more of the following rights and remedies:

1. Declare all unmatured obligations to be immediately due and payable without any demand for payment or other notice to Customer.
2. Exercise and enforce any and all rights and remedies available after default.
3. Seller shall enforce its security interest in the equipment to the full extent permitted by the applicable state or federal laws, or the applicable state Uniform Commercial Code enactment.
4. Seller shall give Customer at least 10 days prior to written notice of the time and place of any public sale or of the time after which any private sale or other intended disposition thereof is to be made. Expenses of retaking, holding, preparing for sale, selling, or the like shall be applied to debtors account.

Page 2

WOUT

## ATTORNEY'S FEES

If Seller hires an attorney who is not a salaried employee to collect what is owed under the contract or to regain possession of the above described equipment, Customer agrees to pay reasonable attorney's fees plus court costs.

## FREIGHT AND DELIVERY

All merchandise is sold F.O.B. factory, unless otherwise provided. Charges will be prepaid and added to invoice. Customer accepts responsibility for filing any and all claims with carriers for loss, damage, and delay. Loss or damage should be noted on the freight bill and/or receipt. Concealed damage must be registered with the carrier within 5 days of shipment. All claims must be filed immediately.

## RETURN OF GOODS

Cancellation or refusal of ordered equipment or return of equipment (freight prepaid) shall be allowable only with Seller's approval. All return goods are subject to a minimum of 30% restock charge or the suppliers return charge in effect at the time of return. Restock and/or return charges for Customer's custom order shall be assessed a minimum of 50% of the original sale price. Seller specifically retains the right to keep any deposit or down payment received from Customer; and by doing so, Seller does not limit, forego, or waive any claim or other remedies it may have for damages against Customer.

## INSTALLATION

Installation is to be performed by Customer unless "Installation Addendum" is attached. All plumbing, electrical, ventilation, gas piping, roughly, etc with its final connection is to be provided by Customer and/or his contractor. Seller is not responsible for any consequential damage or spoilage due to installation, operation, time or manner of servicing of equipment or due to time of delivery.

## PRICES LISTED

Price listed are current and are subject to manufacture prices in effect at time of shipment and will be indicated on the Sales Order. When Customer is unable to accept equipment delivery as agreed, diversion warehouse and redelivery charges will be added to invoice. Payment equal to the sale price of delivered or stored equipment and diversion charges is due immediately upon diversion unless otherwise stated.

## WARRANTY

No representation or warranties express or implied, have been made by or on behalf of Seller, except those that are set forth in this agreement. Customer relies entirely on the manufacturers printed warranty. There are no express or implied warranties of merchantability, fitness for particular purpose, or otherwise which extend beyond a description of the equipment.

## MISCELLANEOUS

If, and to the extent that applicable law confers any rights or imposes any duties inconsistent with or in addition to any of the provisions of this Agreement, the affected provisions shall be considered amended to conform thereto, but all other provisions hereof shall remain in full force and effect. This writing is the full and complete Agreement between the parties. Any modifications of this Agreement must be made in writing and executed by both parties.

This Agreement shall be considered to have been entered into and made in the State of Texas and the parties hereto agree that it shall be governed by and interpreted in accordance with the laws of the State of Texas. Any dispute arising in any manner under this Agreement shall be brought or commenced in Federal or State court located in Dallas County, Texas. Customer acknowledges that Customer has transacted business in the State of Texas by entering into this Contract, and that the jurisdiction, choice of law and venue provisions of this contract are specifically negotiated terms of this Contract.

CUSTOMER HEREBY ACKNOWLEDGES THAT THIS CONTRACT WAS COMPLETED AS TO ALL ESSENTIAL PROVISIONS AND DISCLOSURES BEFORE IT WAS SIGNED BY CUSTOMER AND A COPY THEREOF WAS DELIVERED AT THE TIME THIS CONTRACT WAS SIGNED.

Customer:   Trophy Park

STRATEGIC EQUIPMENT, INC
A DIVISION OF STRATEGIC EQUIPMENT & SUPPLY CORP.

Customer's Federal Tax I.D.   81-4075814

BY: _Sharon White_

By: _Jeremiah Miranda_
        (Officer/Owner Signature)

ITS: Lead Project Coordinator

ITS: _Managing Member_
        (Title of Signer)

CO-CUSTOMER: _N/A_

The undersigned agrees to and guarantees the performance of this Contract and Conditions set forth above:

Personal Guarantor: _Jeremiah Miranda_

WOUT



**ISI Commercial Refrigeration, LLC**

*A ☰THMark Company*

# Deposit Invoice

Sold to:

Trophy Park
8770 Winning Drive
Suite 900
Frisco, Texas 75034

Customer #
File #
Date                3/27/2019
Please remit to:
ISI Commercial Refrigeration, LLC
2801 S. Valley Parkway Suite 200
Lewisville, Texas 75087
Attention: Shannon White

| SALESPERSON | | CSR/PM | CUSTOMER'S P.O. NO. | | TERMS: |
|---|---|---|---|---|---|
| Ron/Leven | | Shannon | ( WI, Hood, Beer, & Oven ) | | Net Due |
| Item # | Quantity | | | Unit Price | Amount |
| | | Contract Amount | | $153,108.51 | $153,108.51 |
| | | Sales Tax | | $5,513.77 | $5,513.77 |
| | | Total Contract Amount | | $158,622.28 | $158,622.28 |
| | | Payment Breakdown | | | |
| | 1 | Deposit | see below | $98,817.77 | $98,817.77 |
| | | Progress | 40% | $43,942.27 | |
| | | Final | 10% | $15,862.24 | |
| | | Total | 50% | $158,622.28 | |
| | | Contract is 90% deposit on the hoods, and 50% on everything else. | Deposit Due | | $98,817.77 |
| | | If you have any questions on this billing, please call 469-240-7260 attention Shannon White | | | |

RETURNED MERCHANDISE MUST BE ACCOMPANIED BY THIS INVOICE WITHIN 30 DAYS OF PURCHASE AND WILL
BE SUBJECT TO RESTOCKING FEE.

Deposit Invoice  7260-SW

— walk-in cooler
— vent Hood
— beer/wine Tap System
— pizza oven





**ISI Commercial Refrigeration, LLC**

*A ISI Triblark Company*

# Quote

03/27/2019

**To:**
Miranda Management.
Jeremiah Miranda
2810 N Henderson Ave.
Dallas, TX 75206
(214) 782-9787
mirandaventures@gmail.com

**Project:**
Trophy Park - Frisco - W/I, Hood,
Beer System, Oven
6770 Winning Drive
Suite 900
Frisco, Tx 75034

**From:**
ISI Commercial Refrigeration, LLC
Ron White
2801 South Valley Parkway
Suite 200
Lewisville, TX 75067
469-240-7200
(214)631-7980 7274 (Contact)
Url: www.isi-texas.com
rwhite@isi-texas.com

**TERMS**
1. Credit application is required with the order.
2. Hood Payment.terms: 90% deposit with order, 10% due upon delivery and receipt of invoice.
3. Equipment Payment terms: 50% deposit with order, 40% due before delivery is scheduled, 10% due upon receipt of final invoice.
4. If this quote is over 30 days old it may need updating to reflect current pricing.

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| 1 | 1 ea | MILLENNIUM BEER SYSTEM | $18,254.08 | $18,254.08 |
| | | Chill-Rite.Mfg. Model No. DRAUGHT BEER SYSTEM | | |
| | | CHILL-RITE Millennium Draught Beer System | | |
| | | ( delivers 32° beer at taps at a casual draw ) | | |
| | | The following equipment is designed to dispense EIGHTEEN brands in total. | | |
| | | White Wine is to be stored in Beer Cooler. | | |
| | | 1 MLN-33 1/3 h.p. Millennium Chiller ( 115v ) | | |
| | | 1 Wall Mount Chiller Stand | | |
| | | 20' CHILL-RITE patented glycol jumper ( not to exceed 20' ) | | |
| | | 40' ST-.5" [4+12+3] 40' ( not to exceed 40' ) | | |
| | | 40' ST-.5" (0+3) 40' ( not to exceed 40' ) | | |
| | | 18 Single Regulator Plate Assy. w/FOB's | | |
| | | 1 "Mardi Gras - Y" 12 Faucet Pipe Beer Dispensing Tower ( S/S Finish ) | | |
| | | 1 Custom Matching Surface Mount S/S Drip Pans ~Two drip pans for each side of tower | | |
| | | 1 "Mardi Gras - Y" 6 Faucet Pipe Beer Dispensing Tower ( S/S Finish ) | | |
| | | 1 Custom Matching Surface Mount S/S Drip Pans ~Two drip pans for each side of tower | | |
| | | ~ Gas Components provided by others | | |
| | | 4 Gallons of Glycol | | |
| | | 1 Installation Kit | | |
| | 1 ea | INSTALLATION This equipment package and installation does not include any electrical, plumbing, water supply to chillers, concrete | $3,910.00 | $3,910.00 |



**ISI Commercial Refrigeration, LLC**

*A ▢TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | coring or installation of underground floor ducts, this will need to be completed by others. Any reinforcement of counter tops or walk-ins to support equipment, any penetrations through surfaces other than wood and all fire caulking must also be provided by others. This installation assumes a standard straight forward install, i.e. chases in place or proper routing of lines at bar to dispensing station. Proper routing of lines is essential for this quote to remain accurate. Proper chutes must be provided to the dispensing stations through or around the stainless equipment. Chase layouts are to correspond with towers at bar. CHILL-RITE is not responsible for any venting of beer pumps; however, it is recommended. Due to the fact that the requirement for ventilation is determined by local codes/regulations any said ventilation must be provided by others. | | |
| | | Final installation prices may be submitted after a physical survey has been completed. | | |
| | 1 ea | CR32 SYSTEM CR32 System guarantees 32° beer @ taps @ any volume regardless of walk-in temperature ) For optional CR32 System, please add $543.20 per keg on line to the T.E.P. price. (CR32 Systems may require an additional chiller. Please contact factory to verify) | $557.75 | <Optional> |
| | 1 ea | STANDARD KEG COUPLERS For optional Standard Keg Couplers, please add $42.56 per tapped keg to the T.E.P. price. (Stainless Steel Keg Couplers available upon request ) | $41.40 | <Optional> |
| 50 | 1 ea | FIRE DECK OVEN, GAS/WOOD | $24,497.00 | $24,497.00 |
| | | Wood Stone Model No. FD-6045-RFGL-IRW | | |
| | | Fire Deck Stone Hearth Oven, radiant burner on left with infrared under floor burner and option to burn wood on right side of chamber; 40" w x 34" d hearth; (16) 8", (10) 10", (6) 12" or (4) 16" pizza capacity, monolithic cast ceramic floor & dome create "deep heat sink", lift-up glass heat shield door, stainless steel front upper, stainless steel front upper, stainless steel service panel, heavy duty steel frame base painted black, ETL-Sanitation, 160,000 BTU | | |
| | 1 ea | Natural gas | | |
| | 1 ea | 120v/50/60/1-ph; 1.1 amps, direct wire | | |
| | 1 ea | Stainless steel finish | | |
| | 1 ea | 604S-SSFULR Stainless steel UPPER: Front & both sides upper: stainless steel finish, oven back galvanized steel (NOT available with facade ready upper) | $660.00 | $660.00 |
| | 1 ea | 604S-SSFLLR Stainless steel LOWER (stand): Front & both sides lower: stainless steel finish; back painted black | $1,320.00 | $1,320.00 |
| | 1 ea | 000-FD-BOX Stainless Steel Storage Box for Fire Decks 6045, 8645, 9660, 11260. Box dimensions: 19.75"h x 20.5"w x 27.125"d | $1,201.20 | $1,201.20 |
| | 1 ea | RP-0020-(NG/LP) Spare Parts Service Kit , Includes: Smart Valve, Igniter, Igniter Gasket & steel box 6" x 6" x 4" | $467.50 | $467.50 |



**ISI Commercial Refrigeration, LLC**

*A ⬛TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | 1 ea | WS-TL-SET-M-W Medium Tool Set, for wood ovens, includes (1) loading peel (12" pies and smaller), (1) loading peel (16" pies and smaller), (1) utility peel, (1) medium brush set; (1) bubble hook and (1) particle shovel | $1,129.70 | $1,129.70 |
| | 1 ea | ISI INSTALLATION BY ISI Including receiving, warehousing, consolidation, delivery, assembly, set in place, leveling, start-up and testing is by ISI. Final connections by Others. | $9,000.00 | $9,000.00 |
| | 1 ea | DEMONSTRATION After installation and mechanical start-up (by others), a Wood Stone Factory Representative may come to the jobsite for a one-time staff demonstration which may include operations, application as well as cleaning and maintenance. This is not a full day of training for each piece of equipment. This must be arranged a minimum of one week in advance by the KEC. INCLUDED. | | |
| | | Inquire about Chef Training. | | |
| | 1 ea | FREIGHT ABF Freight (Arcbest)- Estimated transit time is 5-6 business days with appt.**A 6000# capacity forklift with minimum 5' fork length is required to offload the FD 6045 oven. Weight: 3200 lbs Class: 92.5 | $1,242.46 | $1,242.46 |
| | 1 kt | Dormont 1675KIT48PS Dormont Blue Hose™ Moveable Gas Connector Kit, 3/4" inside dia., 48" long, covered with stainless steel braid, coated with blue antimicrobial PVC, 1 SnapFast® QD, 1 full port valve (2) 90° elbows; 1 pair Safety Set® with adhesive foam tape and hardware mounting options, limited lifetime warranty | $183.09 | $183.09 |
| 33. | 1 ea | **WALK IN COMBO** Southwest Insulated Panels Model No. WALK IN COMBO 7'6" X 30'1" X 9'6" 3 compartment walk in, both coolers at +35 without floor and freezer at -10 with floor. Exterior is 30'2" embossed white, blanace embossed galvalume and interior is embossed white with aluminum diamond tread freezer floor. Includes: 2 34" X 76" walk in doors, with heater, safety latch with cyl. lock; standard hardware and one spring loaded hinge.. 1 34" X 76" walk in door, with heater, safety latch with cyl. lock, standard hardware and one spring loaded hinge. 1 heated pressure relief vent. 93 FT. NSF metal coved base; 1 interior floor ramp. 4 4' 2-bulb vaporproof flourescent light fixtures, shipped loose. | $19,575.36 | $19,575.36 |
| | 1 ea | MOH015X62CFMT 1 1/2 HP medium temp, pre-assembled remote stub out system, R404A 208-230V/60/1 | $10,143.84 | $10,143.84 |
| | 1 ea | ADT 120AEK Bohn coil with EC motor 115V/60/1 | | |
| | 1 ea | MOH015X62CFMT 1 1/2HP medium temp. pre-assembled remote stub out system, R404A, 208-230V/60/1 | | |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | 1 ea | ADT 104AEK Bohn coil with EC motor 115V/60/1. | | |
| | 1 ea | MOH019L62CF 1 1/2HP low temp., pre-assembled remote stub out sstem, R404A, 208-230V/60/1 | | |
| | 1 ea | LET 065BEK Bohn coil w EC motor, 208-230/60/1ph | | |
| | 1 ea | DELIVER & ERECT DELIVERY AND INSTALLATION OF PANELS ONLY TO FRISCO, TX. | $2,956.80 | $2,956.80 |
| 33.1 | 1 ea | MECHANICAL INSTALLATION | $9,968.00 | $9,968.00 |
| | | ISI Commercial Refrigeration Model No.: MECHANICAL Installation of Mechanicals for Walk-in Cooler/Freezer. INCLUDES: Setting remote condensing units; mounting evaporator coils; piping refrigeration lines; charging system with refrigerant, starting up and adjusting equipment to manufacturer's specifications. EXCLUDES: All building/roof penetrations; sealing/weather proofing of existing penetrations; curbs, pitch pans, and/or specialty pipe, and equipment supports; electrical and plumbing by other trades | | |
| 24,35, 36,42, 43,51, 52,56, 1,78 | 1 ea | HOOD # 1 | $6,300.62 | $6,300.62 |

Captive-Aire Model No: 6030ND-2-ACPSP-F
Hood #1 - Pizza & Broiler - Job #3758368
6030ND-2-ACPSP-F - 9ft 6" Long Exhaust-Only Wall Canopy Hood with Front Perforated Supply Plenum with Built-in 3" Back Standoff x1
- 430 SS Where Exposed x1
- FILTER - 20" tall x 16" ( 19.625" by 15.625") wide Stainless Steel Captrate Solo filter with hook, ETL Listed. Particulate capture efficiency: 85% efficient at 9 microns, 76% efficient at S microns. Used on hoods shipped AFTER 7/27/17. x7
- Extra Set of Hood Filters - 20" tall x 16" ( 19.625" by 15.625") wide Stainless Steel Captrate Solo filter with hook, ETL Listed. Particulate capture efficiency: 85% efficient at 9 microns, 76% efficient at S microns. Used on hoods shipped AFTER 7/27/17. x7
- LSS Series E26 Canopy Light Fixture - High Temp Assembly, Includes Clear Thermal and Shock Resistant Globe (LSS Fixture), Bulbs By Others x3
- Complete ACPSP LED install kit. 120VAC. Can be wired to hood ECP or building lighting controls. Includes light fixture, wire, junction box, hardware and label. x5
- EXHAUST RISER - Factory installed 18" Diameter X 4" Height x1
- SUPPLY RISER - 12" x 28" Supply Riser with Volume Dampers x2
- SUPPLY RISER - 10" Square to 8" Round Supply Collar with 8" Round Volume Damper.
Nailor 1090 Series. x4
- 1/2 Pint Grease Cup New Style, Flanged Slotted x1



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| :Item | Qty | Description | Sell | Sell Total |
|---|---|---|---|---|
| | | - INSULATION FOR TOP OF HOOD x1 | | |
| | | - INSULATION FOR BACK OF HOOD x1 | | |
| | | - LEFT WIDE VERTICAL END PANEL 42" Top Width, 36" Bottom Width, 80" High Insulated 430 SS x1 | | |
| | | - RIGHT WIDE VERTICAL END PANEL 42" Top Width; 36" Bottom Width, 80" High Insulated 430 SS x1 | | |
| | 1 ea | 6030ND-2-ACPSP-F Hood #2 - Fryer - Job #3758368 | $6,743.02 | $6,743.02 |
| | | 6030ND-2-ACPSP-F - 14ft.9" Long Exhaust-Only Wall Canopy Hood with Front Perforated Supply Plenum with Built-in 3" Back Standoff x1 | | |
| | | - 430 SS Where Exposed x1 | | |
| | | - FILTER - 20" tall x.16" ( 19.625" by 15.625") wide Stainless Steel Captrate Solo filter with hook; ETL Listed. Particulate capture efficiency: 85% efficient at 9 microns, 76% efficient at 5 microns. Used on hoods shipped AFTER 7/27/17. x11 | | |
| | | - L55 Series E26 Canopy Light Fixture - High Temp Assembly; Includes Clear Thermal and Shock Resistant Globe (L55 Fixture), Bulbs By Others x5 | | |
| | | - Complete ACPSP LED install kit. 120VAC. Can be wired to hood ECP or building lighting controls. Includes light fixture, wire, junction box, hardware and label. x7 | | |
| | | - EXHAUST RISER - Factory installed 14" Diameter X 4" Height x2 | | |
| | | - SUPPLY RISER - 12" x 28" Supply Riser with Volume Dampers x4 | | |
| | | - SUPPLY RISER - 10" Square to 8" Round Supply Collar with 8" Round Volume Damper. Nailor 1090 Series. x8 | | |
| | | - 1/2 Pint Grease Cup New Style, Flanged Slotted x2 | | |
| | | - STRUCTURAL FRONT PANEL x1 | | |
| | | - RIGHT WIDE VERTICAL END PANEL 42" Top Width, 36" Bottom Width, 80" High Insulated 430 SS x1 | | |
| | 1 ea | 5430ND-2-ACPSP-F Hood #3 - Prep - Job #3758368 | $5,402.47 | $5,402.47 |
| | | 5430ND-2-ACPSP-F - 11ft 0" Long Exhaust-Only Wall Canopy Hood with Front Perforated Supply Plenum with Built-in 3" Back Standoff x1 | | |
| | | - 430 SS Where Exposed x1 | | |
| | | - Utility Cabinet on the Right Side 12.00" Width x 54" Length x 30.00" Height x1 | | |
| | | - FILTER - 20" tall x 16" ( 19.625" by 15.625") wide Stainless Steel Captrate Solo filter with hook, ETL Listed. Particulate capture efficiency: 85% efficient at 9 microns, 76% efficient at 5 microns. Used on hoods shipped AFTER 7/27/17. x8 | | |
| | | - L55 Series E26 Canopy Light Fixture - High Temp Assembly, Includes Clear Thermal and Shock Resistant Globe (L55 Fixture), Bulbs By Others x4 | | |
| | | - PROTECT ALL UC FACES, TREAT AS A FINISHED BACK. x1 | | |
| | | - Complete ACPSP LED install kit. 120VAC. Can be wired to hood ECP or building lighting controls. Includes light fixture, wire, junction box, | | |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | hardware and label. x6 | | |
| | | - EXHAUST RISER - Factory installed 18" Diameter X 4" Height x1 | | |
| | | - SUPPLY RISER - 12" x 28" Supply Riser with Volume Dampers x3 | | |
| | | - SUPPLY RISER - 10" Square to 8" Round Supply Collar with 8" Round Volume Damper. | | |
| | | Nailor 1090 Series. x6 | | |
| | | - 1/2 Pint Grease Cup New Style, Flanged Slotted. x2 | | |
| | | - LEFT WIDE VERTICAL END PANEL 42" Top Width, 36" Bottom Width, 80" High Insulated. 430 SS x1 | | |
| | | - Electrical Package Installation in Utility Cabinet by Plant. x1 | | |
| | | - RIGHT WIDE VERTICAL END PANEL 42" Top Width, 36" Bottom Width, 80" High Insulated 430 SS x1 | | |
| | 1 ea | 4230VHB-G-REM1 Hood #4 - dish - Job #37S8368 | $1,191.87 | $1,191.87 |
| | | 4230VHB-G - 7ft 0" Long Condensate Hood, w/ Full Perimeter Gutter x1 | | |
| | | - 430 SS - 100% Application x1 | | |
| | | - EXHAUST RISER - Factory installed 12" Diameter X 4" Height x1 | | |
| | 1 ea | CASRE24DD Fan #1 CASRE24DD - Exhaust Fan (Pizza/Broiler hood 1) - Job #37S8368 | $4,426.93 | $4,426.93 |
| | | CASRE24DD Direct Drive Upblast Restaurant-Duty Utility Set with a 24.750" Wheel. Includes interlocked disconnect saftey switch. | | |
| | | Exhaust Fan handles 3325 CFM @ -1.600" wc ESP. Fan runs at 1046 RPM. Exhaust Motor: 5.000 HP, 3 Phs, 208 V, 60Hz, 15.8 FLA, ODP, Premium (E-Plus3) Eff. x1 | | |
| | | - Grease Cup for Utility Sets. Option for Utility Sets. x1 | | |
| | | - High Temperature Heat & Smoke Option - RE24 Direct Drive High Temperature Steel Wheel and Wiring Package. High Temperature: Liquid Tight Conduit, Part Number ATX0S0TB, High Temperature Wire, Type MG only. High Temperature Crimp Connections & Class H Insulating Tape Part Number 76455A27. 12 & 10 Ga Splice Number 7227K34. 8 Ga Splice Number 7227K35. 6 Ga Splice 7227K36. x1 | | |
| | | - RE24 - Adjustable Discharge Extension Assembly. x1 | | |
| | | - pizza/broiler hood 1 Curb RE31.5x24E On Fan #1 Flat Curb x1 | | |
| | | - Vented Base for Curb x1 | | |
| | 1 ea | DU180HFA Fan #2 DU180HFA - Exhaust Fan (Range hood 2) - Job #37S8368 | $1,149.23 | $1,149.23 |
| | | DU180HFA High Speed Direct Drive Centrifugal Upblast Exhaust Fan with, disconnect switch and 18-3/4" wheel. | | |
| | | Exhaust Fan handles 1660 CFM @ -1.300" wc ESP. Fan runs at 1067 RPM. Exhaust Motor: 1.000 HP, 3 Phs, 208 V, 60Hz, 3.8 FLA, ODP, Premium (E-Plus3) Eff. x1 | | |
| | | - Grease Cup for kitchen-duty centrifugal exhaust fans, | | |
| | | Box Dimensions 17-1/8 L X 5-1/16 W X 3-3/4 H (18 GA.) (Includes Down Spout) x1 | | |
| | | - range hood 2 Curb CRB26.5x20E On Fan #2 Flat Curb x1 | | |
| | | - Hinged Base for Curb. Standard Hinge attached to curb. Used on Fans with wheels 20 inches or smaller. 12 GA Galvanized. x1 | | |

Trophy Park - Frisco - W/I, Hood, Beer System, Oven



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| | | ··Vented Base for Curb x1. | | |
| | 1 ea. | DU180HFA Fan #3 DU180HFA - Exhaust Fan (Fryers hood 2) - Job #3758368 | $1,149.23 | $1,149.23 |
| | | DU180HFA High Speed Direct Drive Centrifugal Upblast Exhaust Fan with, disconnect switch and 18-3/4" wheel. Exhaust Fan handles 1660 CFM @ -1.300" wc ESP, Fan runs at 1067 RPM. Exhaust Motor: 1.000 HP, 3 Phs, 208 V, 60Hz; 3.8 FLA, ODP, Premium (E-Plus3) Eff. x1 - Grease Cup for kitchen duty centrifugal exhaust fans, Box Dimensions 17-1/8 L X 5-1/16 W X 3-3/4 H (18 GA.) (Includes Down Spout) x1 - fryers hood 2 Curb CRB26.5x20E On Fan #3 Flat Curb x1 - Hinged Base for Curb: Standard Hinge attached to curb. Used on Fans with wheels 20 inches or smaller. 12 GA Galvanized. x1 - Vented Base for Curb x1 | | |
| | 1 ea | DU180HFA Fan #4 DU180HFA - Exhaust Fan (Prep hood 3) - Job #3758368 | $1,189.49 | $1,189.49 |
| | | DU180HFA High Speed Direct Drive Centrifugal Upblast Exhaust Fan with, disconnect switch and 18-3/4" wheel. Exhaust Fan handles 3025 CFM @ -1.400" wc ESP, Fan runs at 1299 RPM. Exhaust Motor: 2.000 HP, 3 Phs, 208 V, 60Hz; 6.1 FLA, ODP, Premium (E-Plus3) Eff. x1 - Grease Cup for kitchen-duty centrifugal exhaust fans, Box Dimensions 17-1/8 L X 5-1/16 W X 3-3/4 H (18 GA.) (Includes Down Spout) x1 - Insulated Heat Baffle for Exhaust Fans: Type 475FRK 1 inch thick insulation installed on the top side of the top plate and under the motor of upblast and downblast fans. Cut-to-fit shaft wrapper and around vibration isolators and motor cooling hole: Caulked down to top plate. x1 - prep hood 3 Curb CRB26.5x20E On Fan #4 Flat Curb x1 - Hinged Base for Curb. Standard Hinge attached to curb. Used on Fans with wheels 20 inches or smaller. 12 GA Galvanized. x1 - Vented Base for Curb x1 | | |
| | 1 ea | DU33HFA Fan #5 DU33HFA - Exhaust Fan (dish hood 4) - Job #3758368 | $833.75 | $833.75 |
| | | DU33HFA High Speed Direct Drive Centrifugal Upblast Exhaust Fan with speed control (speed control included for single phase only), disconnect switch and 11-3/4" wheel. Exhaust Fan handles 875 CFM @ -0.500" wc ESP, Fan runs at 1451 RPM. Exhaust Motor: 0.333 HP, 1 Phs, 115 V, 60Hz; 4.4 FLA, ODP-ECM (Open Drip Proof Electronically Commutated Motor) x1 - ECM Wiring Package and Manual or 0-10VDC Control for Exhaust EC motors. RTC Controller (No harness when ordered as a part). **DO NOT ORDER UNDER WARRANTY. SEE PART NUMBER "ECM-VCU-RTC"**. x1 - dish hood 4 Curb CRB19.5X20E On Fan #5 Flat Curb x1 | | |

Trophy Park: Frisco - W/I, Hood, Beer.
System, Oven



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|-----------|
| · | 1 ea | A3-24D Fan #6 A3-24D - Supply Fan - Job #3758368<br>A3-24D Untempered Supply Unit with 24" Direct Drive Fan in Size #3 Housing<br>Supply Fan handles 7065 CFM @ 0.650" wc ESP, Fan runs at 1411 RPM.<br>Supply Motor: 10.000 HP, 3 Phase, 208 V, 60Hz, 27.0 FLA, ODP, Premium (E:Plus3) Eff.<br>Down Discharge - Air Flow Right -> Left x1<br>- Sloped Filtered Intake for Size #3 Modular Untempered Make-Up Air Units: ~<br>37.25" Wide X 51.625" Long X 35.188" High.<br>Includes 2" MV EZ Kleen Metal Mesh Filter. x1<br>- Curb CRB35X20 On Fan #6 Flat Curb x1 | $2,107.03 | $2,107.03 |
| · | 1 ea | OCV-4111 Electrical System #1 - Job #3758368<br>OCV-4111 Demand Control Ventilation, w/ control for 4 Exhaust Fans, 1 Supply Fan, Exhaust on in Fire, Lights out in Fire. Fans modulate based on duct temperature. INVERTER DUTY 3 PHASE MOTOR REQUIRED FOR USE WITH VFD. Room temperature sensor shipped loose for field installation. Verify distance between VFD and Motor; additional cost could apply if distance exceeds 50 feet. Includes 4 Duct Thermostat kits. x1<br>- ESV751N02YXB571 - Variable Frequency Drive - 1 HP Max., 200/240 V, Single or Three Phase Input, 4.2 A Max., NEMA 1 Enclosure, with 2RJ-45 FOR MODBUS x1.<br>- ESV751N02YXB571 - Variable Frequency Drive - 1 HP Max., 200/240 V, Single or Three Phase Input, 4.2 A Max., NEMA 1 Enclosure, with 2RJ-45 FOR MODBUS x1<br>- ESV152N02YXB571 - Variable Frequency Drive - 2 HP Max., 200/240 V, Single or Three Phase Input, 7.0 A Max., NEMA 1 Enclosure, with 2RJ-45 FOR MODBUS x1<br>- ESV402N02TXBS71 - Variable Frequency Drive - 5 HP Max., 200/240 V, Three Phase, 16.5 A Max., NEMA 1 Enclosure, with 2RJ-45 FOR MODBUS x1<br>- ESV752N02TXB571 - Variable Frequency Drive - 10 HP Max., 200/240 V, Three Phase, 29.0 A Max., NEMA 1 Enclosure, with 2RJ-45 FOR MODBUS x1<br>- CASLink building monitoring system communications module. Requires internet & field wired ethernet connection or 3G cellular service. Includes Rev 3 Comm Module, RJ45 to modbus converter, 3 FT cat5 cable, and 1 FT of shielded twisted pair. x1<br>- NetComm wireless 4G cellular module. Includes cellular module, 2 SMA antennas, Din rail mounting bracket, screw termination blocks, Cat5 yellow cable and Quick start guide..<br>Includes Verizon sim card. x1<br>- Digital Prewire Lighting Relay Kit. Includes hood lighting relay & terminal blocks. Allows for up to 1400W of lighting each. x1<br>- Sonalert, Pluggable 2900Hz 48-120VAC Loud Fast Pulse AX# A0017031 | $5,919.96 | $5,919.96 |



**ISI Commercial Refrigeration, LLC**

*A TriMark Company*

| Item | Qty | Description | Sell | Sell Total |
|------|-----|-------------|------|------------|
| | | x1 | | |
| | | - Thermistor CABLE - 18/2 AWG GREEN WHITE, plenum rated; USED for thermistor duct stat. Per Foot Price. x150 | | |
| | 1 ea | FILTER TOOL FRTOOL20 Filter Removal Tool for Kitchen Hoods with 20" tall baffle filters. | $154.52 | $154.52 |
| | 1 ea | FACTORY SERVICES Factory Services | $873.40 | $873.40 |
| | | Service Design Verification for Cradlepoint x1 | | |
| | | Service Design Verification for Demand Control Ventilation x1 | | |
| | | Service Design Verification for Exhaust Fan x5 | | |
| | | Service Design Verification for Hood x4 | | |
| | | Service Design Verification for Untempered Supply Fan x1 | | |
| | | Service Design Verification Mileage Charge: (35) x 2 = 70 total miles x1 | | |
| | 1 ea | SHIPPING SHIPPING | $922.96 | $922.96 |
| | | Freight includes one shipment only, delivered to the job site address listed on this proposal. Customer is responsible for freight charges on any items shipped early. This is an estimated freight charge and is subject to change based on current freight costs when the job is released for production. | | |
| | 1 ea | Kimbrough FIRE SYSTEM & FIRE SYSTEM HOOKUP (2) Kitchen Hood Systems UL300 Install | $10,235.00 | $10,235.00 |
| | | Install Ansul 9-gallon and 1 ½ -gallon Cylinders; Agents and Control Heads | | |
| | | Install (2) Remote Pull Stations | | |
| | | Install Nozzles, Fuse Links and Detector Brackets as required | | |
| | | Provide (2) 2" Gas Valves for customer to install | | |
| | | Install (2) Class "K" Fire Extinguishers | | |
| | | Perform one acceptance test with Fire Marshal per system | | |
| | | Price to include Plans and one Pretest per system | | |
| | | Frisco Permit Fees Included | | |

| | | |
|---|---|---|
| | Merchandise | $153,108.51 |
| | Tax | $5,513.77 |
| | Total | $158,622.28 |

Proposal/Contract

1. This Agreement is by and between ISI Commercial Refrigeration, Inc. (ISI) and
_____ (Buyer) as of the date shown below. Unless otherwise noted all
merchandise shall be covered by the individual manufacturer's standard warranty.



**ISI Commercial Refrigeration, LLC**

*A ⊡TriMark Company*

2. All equipment is supplied with standard components. This quote is limited to only the items stated and priced. No implied parts, accessories, or services are included in the cost.

3. Special ordered and non-stocking equipment cannot be returned without prior authorization and will be subject to a restocking fee and return freight costs as determined by the manufacturer. Cancellation of equipment in process of being built by the factory may result in a cancellation fee determined by the factory. It is the responsibility of the purchaser to review all specifications and confirm that dimensions, electrical voltage, and plumbing specifications are correct.

4. ISI is not responsible for wall blocking, running drains or making hard wire connections. All roof/wall penetrations and sealing are the responsibility of other trades. All plumbing connections, back flow preventers, pressure regulators and flushing of gas and water lines are the responsibility of other trades. All electrical connections including disconnects, shunt trip breakers, micro switches, motor starters, switches, etc., are excluded from this quote. All Ducts, fans, curbs, flashing, trim and ceiling closures are by others unless otherwise specified.

5. Unless otherwise noted, Exhaust Hoods and Walk in panels and refrigeration will be shipped directly to the job site. Off loading and installation by others.

6. Does not include dumpster rental, trash hauling, plywood to cover ground to access building in the event concrete is not complete.

7. This Proposal/Contract does not include any special licenses, permits, or fees that may or may not be required. Buyer is responsible for obtaining any and all approvals and permits from the Health Department, Building Department, Fire Marshal, etc.

8. All quotations, terms and financial arrangements are subject to approval of the Credit Department of ISI. The Buyer grants to ISI a security interest in the items specified in this Proposal/Contract until such items have been fully paid for by the Buyer. Buyer hereby appoints ISI as Buyer's agent and grants ISI limited Power of Attorney for the purpose of executing any document necessary to perfect the security interest granted in this Proposal/Contract.

I understand, agree to, and accept the above terms and conditions.

Signature _____   Date: _____

Printed Name _____

# Addendum to Contract

1. **CREATION OF SECURITY INTEREST.** To secure payment of the purchase price of the equipment, ISI will retain a security interest in and title to the equipment and in any proceeds of the equipment under Chapter 9 of the Texas Business and



**ISI Commercial Refrigeration, LLC**

*A ✦ TriMark Company*

Commerce Code until the obligation is fully paid. Title to the equipment will not pass to Buyer until all sums due under this agreement are fully paid. Transfer of this agreement or of any interest in it, or injury to or loss of the equipment will not release Buyer from this agreement.

**2. PERFECTION OF SECURITY INTEREST.** Buyer warrants and covenants that no financing statement covering all or any part of the equipment or any proceeds is on file in any public office. At ISI's request buyer will execute or join in executing all financing statements and other instruments, in forms satisfactory to ISI, that ISI deems necessary to perfect its security interest in the equipment under Chapter 9 of the Business and Commerce Code. ISI will pay the cost of filing the statements or other instruments. Buyer agrees that all payments Seller makes for or on account of Buyer's obligations under this agreement or to protect the equipment or Seller's interest in it, for insurance, taxes, repairs, storage, or costs of collection, repossession, and return, will be added to the amount due by Buyer under this agreement and will become payable on demand.

**3. INSTALLATION OF THE EQUIPMENT.** Except for those items specifically identified in the ISI quote, this bid is for set and place only.

**4. SUPERSEDENCE.** This Addendum amends the terms of any agreement to purchase equipment from ISI by customer, and any provision of this Addendum that is inconsistent with any provision of any customer's agreement to purchase equipment from ISI shall wholly supersede such inconsistent provision in the customer agreement to purchase equipment from ISI.

**UNDERSTOOD & AGREED:**

_____          _____
Customer Signature                                    Date

_____          _____
Print Customer Name                                   Title

This proposal is valid for acceptance within 30 days or as long as current manufacturers price list is in effect.

Regulated by The Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, Texas 78711, 1-800-803-9202, 512-463-6599, www.tdlr.texas.gov
AUSTIN: TACLB52729R / BEAUMONT: TACLA35912C / DALLAS: TALCB16860C / HOUSTON: TACLB27580R

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

RECEIVED
MAR - 8 2019
CLK TX

TXTX

**03/08/2019 05:00 PM**

**FILED**
TEXAS
SECRETARY OF STATE
SOS

873098470002

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Trophy Hospitality, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6770 Winning Drive, Suite 900 | Frisco | TX | 75034 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Celtic Bank Corporation | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 268 S. State St., Ste 300 | Salt Lake City | UT | 84111 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) Purchase Money Security Interest: in all equipment

5. Check only if applicable and check only one box. Collateral is ☒ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☒ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# Brunswick B

## GOODS SCHEDULE.

Sales Contract No.:
Buyer:  Trophy Hospitality LLC.
Area Sales Manager:  RANSOM

I acknowledge that my Sales Representative has discussed pinsetter safety guarding options with me.
Customer Initial Here:

| Quantity | Unit (e.g., each, box) | Description |
|---|---|---|
| 2 | EA | GS-X Pinsetters - Inside/ Outside Lane Pair (200V/208v) |
| 1 | EA | End Guards - For Base Guarding |
| 1 | EA | Rear Display Control Box for New Starts |
| | EA | GS-X Documentation Kit - For Base Guarding |
| 1 | EA | GS-X Tool Kit (115v/208v) |
| | EA | Safety Labels - For Base Guarding |
| | EA | Three Phase "Wye" Surge Suppressor (120/208v) |
| 1 | EA | GS-X Small Spare Parts Kit (208v) |
| | EA | Installation Material For GS-X Pinsetters |
| 2 | EA | Division Kickback - GS Pinsetters |
| 2 | EA | Ball Return Kickback - GS Pinsetters |
| | EA | Anvilane GID Two-Lane Pack For Short Lane |
| 2 | EA | Anvilane GID New Start Return Fill For Short Lane |
| | EA | New Start Installation Kit For Anvilane & Prolane |
| 1 | EA | Anvilane and Prolane GID New Start One Per Center Kit |
| | EA | Installation Material For Lanes |
| | EA | Foundation - Outside Pair For Short Lane |
| | EA | Foundation - Inside Pair For Short Lane |
| 2 | EA | Installation Material For Foundation |
| | EA | Underlayment - Outside Pair For Short Lane |
| | EA | Underlayment - Inside Pair For Short Lane |
| | EA | Pindeck For Synthetic Lanes |
| | EA | Flat Gutter |
| | EA | Installation Material For Flat Gutters |
| | EA | Ball Return Hood & Rack - Black |
| 2 | EA | Return Capping For Short Lanes |
| 2 | EA | Power Ball Lift With Control Box (115v) |
| 2 | EA | Teleloul Two Lane Unit For Subway Or Surface Returns (115V) |
| 2 | EA | Return Teleloul Cover - Black Non-Glow |
| 1 | EA | Parts Kit For Teleloul & Brunswick Ball Lift |
| 2 | EA | Ball Return Tracks For Short Lane |
| 2 | EA | Lane Cable For GS-Series Ball Lift -For Short Lane |
| 2 | EA | Pinball Wizard Automation - Lane Pair (115v Dom) |
| 4 | EA | Pinball Wizard Gutter - For Short Lane |
| 1 | EA | Automated Bumpers Electronics Spare Parts Kit |
| 1 | EA | Pinball Wizard Spare Parts Kit (115v) |
| 3 | EA | Teleloul Division Cover - Black Non-Glow |
| 3 | EA | Non-Glow Division Capping - Matte Black With Clear Insert For Short Lane |
| 4 | EA | LED Ball Light & Cable, For Wall Installations In Centers With GS Pinsetters |
| 1 | EA | Lane Numerals |
| 1 | EA | Manual Lane Care Supply Package |
| 12 | EA | Graphic Glow Max Crown Pin 3# 6.9 Oz. |
| 1 | EA | Ball Ramp |
| 1 | EA | MYBALL Display Stand and MYFIT Ball |
| 42 | EA | Housballs - Drilled |
| 63 | EA | Premium Rental Shoes |
| 4 | EA | Circular House Ball Rack With Tabletop |
| 1 | EA | Sync Lane & Cash Control Software License |

Bowling Goods Schedule (01/07 rev. Form)

Buyer's Initials

# Brunswick▣

GOODS SCHEDULE

Sales Contract No: _____
Buyer: Trophy Hospitality LLC.
Area Sales Manager: RANSOM

I acknowledge that my Sales Representative has discussed pinsetter safety guarding options with me.
Customer Initial Here: _____

| Quantity | Unit (e.g., each, box) | Description |
|---|---|---|
| 2 | EA. | GS-X Pinsetters - Inside/Outside Lane Pair (200V/208v) |
| 1 | EA. | End Guards - For Base Guarding |
| 2 | EA. | Rear Display Control Box for New Starts |
| 1 | EA. | GS-X Documentation Kit - For Base Guarding |
| 1 | EA. | GS-X Tool Kit (115v/208v) |
| 2 | EA. | Safety Labels - For Base Guarding |
| 1 | EA. | Three Phase "Wye" Surge Suppressor (120/208v ) |
| 1 | EA. | GS-X Small Spare Parts Kit (208v) |
| 2 | EA. | Installation Material For GS-X Pinsetters |
| 1 | EA. | Division Kickback - GS Pinsetters |
| 2 | EA. | Ball Return Kickback - GS Pinsetters |
| 2 | EA. | Anvilane GID Two-Lane Pack For Short Lane |
| 3 | EA. | Anvilane GID New Start Return Fill For Short Lane |
| 2 | EA. | New Start Installation Kit For Anvilane & Prolane |
| 1 | EA. | Anvilane and Prolane GID New Start One Per Center Kit |
| 1 | EA. | Installation Material For Lanes |
| 1 | EA. | Foundation - Outside Pair For Short Lane |
| 1 | EA. | Foundation - Inside Pair For Short Lane |
| 2 | EA. | Installation Material For Foundation |
| 1 | EA. | Underlayment - Outside Pair For Short Lane |
| 1 | EA. | Underlayment - Inside Pair For Short Lane |
| 1 | EA. | Pindeck For Synthetic Lanes |
| 4 | EA. | Flat Gutter |
| 2 | EA. | Installation Material For Flat Gutters |
| 2 | EA. | Ball Return Hood & Rack - Black |
| 2 | EA. | Return Capping For Short Lanes |
| 2 | EA. | Power Ball Lift With Control Box (115v) |
| 2 | EA. | Telefoul Two Lane Unit For Subway Or Surface Returns (115V) |
| 2 | EA. | Return Telefoul Cover - Black Non-Glow |
| 1 | EA. | Parts Kit For Telefoul & Brunswick Ball Lift |
| 2 | EA. | Ball Return Tracks For Short Lane |
| 2 | EA. | Lane Cable For GS-Series Ball Lift -For Short Lane |
| 2 | EA. | Pinball Wizard Automation - Lane Pair (115v Dom) |
| 4 | EA. | Pinball Wizard Gutter - For Short Lane |
| 1 | EA. | Automated Bumpers Electronics Spare Parts Kit |
| 1 | EA. | Pinball Wizard Spare Parts Kit (115v) |
| 3 | EA. | Telefoul Division Cover - Black Non-Glow |
| 3 | EA. | Non-Glow Division Capping - Matte Black With Clear Insert For Short Lane |
| 4 | EA. | LED Ball Light & Cable, For Wall Installations In Centers With GS Pinsetters |
| 1 | EA. | Lane Numerals |
| 1 | EA. | Manual Lane Care Supply Package |
| 12 | EA. | Graphic Glow Max Crown Pin 3# 6-9 Oz. |
| 1 | EA. | Ball Ramp |
| 1 | EA. | MYBALL Display Stand and MYFIT Ball |
| 42 | EA. | Housepalls - Drilled |
| 63 | EA. | Premium Rental Shoes |
| 4 | EA. | Circular House Ball Rack With Tabletop |
| 1 | EA. | Sync Lane & Cash Control Software License |

Buyer's Initials _____



GOODS SCHEDULE

Sales Contract No.:
Buyer:  Trophy Hospitality LLC:
Area Sales Manager:  RANSOM

I acknowledge that my Sales Representative has discussed pinsetter safety guarding options with me:

Customer Initial Here:

| Quantity | Unit (e.g., each, box) | Description |
|---|---|---|
| 1 | EA | Sync Employee ID Option |
| 1 | EA | Magnetic Cards For Employee ID Option |
| 1 | EA | Standalone Magnetic Card Reader For Game Card Or Employee ID Option |
| 1 | EA | Sync Reservations Option |
| 1 | EA | Sync Small Center Server (120V) |
| 1 | EA | UPS For Sync Server (120V) |
| 1 | EA | 17" Flat Screen / Touch Monitor |
| 2 | EA | Sync Tablet Console |
| 1 | EA | Spare Parts Kit For Sync Tablet Console With Dual Pedestal Mount |
| 1 | EA | 16-Port Network Switch For Sync Scoring Consoles |
| 4 | EA | Sync Scoring |
| 2 | EA | Sync Display Controller - For Double Overheads |
| 1 | EA | 24-Port Network Switch For Sync Display Controller |
| 1 | EA | Sync Display Controller SPK |
| 4 | EA | Cat5e Black Plenum Network Cable - 10' |
| 2 | EA | Cat5e Black Plenum Network Cable - 21' |
| 2 | EA | Bulk Cat5e Network Cable - 500' |
| 1 | EA | Sync Games Collection |
| 4 | EA | Angry Birds For Sync Scoring |
| 4 | EA | uChoose Sync Theme Collection |
| 2 | EA | Sync Peripheral Controller For GS Direct |
| 1 | EA | Spare Parts Kit For Peripheral Controller In Centers With GS or StringPin |
| 1 | EA | 24-Port Network Switch For Sync Peripheral Controller |
| 2 | EA | Pinball Wizard Cables For Sync Scoring |
| 1 | EA | Sync Basic Diagnostic Kit |
| 1 | EA | Network Diagnostic Kit |
| 1 | EA | 120/208V Three Phase Power Arrestor |
| 2 | EA | Installation Material For Scoring |
| 4 | EA | 40" Samsung LED Monitor (110v) |
| 2 | EA | Continuous Support System |
| 4 | EA | Mounting Brackets for Overhead Monitors |

Buyer's Initials _____

# Brunswick

## GOODS SCHEDULE

Sales Contract No.:
Buyer:   Trophy Hospitality LLC.
Area Sales Manager:   RANSOM

I acknowledge that my Sales Representative has discussed pinsetter safety guarding options with me.
Customer Initial Here:

| Quantity | Unit (e.g., each, box): | Description |
|---|---|---|
| 2 | EA. | GS-X Pinsetters - Inside/Outside Lane Pair (200V/208V) |
| 1 | EA. | End Guards - For Base Guarding |
| 2 | EA. | Rear Display Control Box for New Starts |
| 1 | EA | GS-X Documentation Kit - For Base Guarding |
| 1 | EA. | GS-X Tool Kit (115v/208v) |
| 2 | EA. | Safety Labels - For Base Guarding |
| 1 | EA. | Three Phase 'Wye' Surge Suppressor (120/208v) |
| 1 | EA | GS-X Small Spare Parts Kit (208v) |
| 2 | EA | Installation Material For GS-X Pinsetters |
| 3 | EA. | Division Kickback - GS Pinsetters |
| 2 | EA | Ball Return Kickback - GS Pinsetters |
| 2 | EA | Anvilane GID Two-Lane Pack For Short Lane |
| 3 | EA | Anvilane GID New Start Return Fill For Short Lane |
| 2 | EA | New Start Installation Kit For Anvilane & Prolane |
| 1 | EA | Anvilane and Prolane GID New Start One Per Center Kit |
| 1 | EA | Installation Material For Lanes |
| 1 | EA | Foundation - Outside Pair For Short Lane |
| 1 | EA. | Foundation - Inside Pair For Short Lane |
| 2 | EA. | Installation Material For Foundation |
| 1 | EA | Underlayment - Outside Pair For Short Lane |
| 1 | EA | Underlayment - Inside Pair For Short Lane |
| 4 | EA | Pindeck For Synthetic Lanes |
| 4 | EA | Flat Gutter |
| 2 | EA | Installation Material For Flat Gutters |
| 2 | EA | Ball Return Hood & Rack - Black |
| 2 | EA | Return Capping For Short Lanes |
| 2 | EA | Power Ball Lift With Control Box (115v) |
| 2 | EA | Telefoul Two Lane Unit For Subway Or Surface Returns (115V) |
| 2 | EA | Return Telefoul Cover - Black Non-Glow |
| 1 | EA | Parts Kit For Telefoul & Brunswick Ball Lift |
| 2 | EA | Ball Return Tracks For Short Lane |
| 2 | EA | Lane Cable For GS-Series Ball Lift -For Short Lane |
| 2 | EA | Pinball Wizard Automation - Lane Pair (115v Dom) |
| 4 | EA | Pinball Wizard Gutter - For Short Lane |
| 1 | EA | Automated Bumpers Electronics Spare Parts Kit |
| 1 | EA | Pinball Wizard Spare Parts Kit (115v) |
| 3 | EA | Telefoul Division Cover - Black Non-Glow |
| 3 | EA. | Non-Glow Division Capping - Matte Black With Clear Insert For Short Lane |
| 4 | EA | LED Ball Light & Cable, For Wall Installations In Centers With GS Pinsetters |
| 1 | EA | Lane Numerals |
| 1 | EA. | Manual Lane Care Supply Package |
| 12 | EA. | Graphic Glow Max Crown Pin 3# 6-9 Oz. |
| 1 | EA | Ball Ramp |
| 1 | EA | MYBALL Display Stand and MYFIT Ball |
| 42 | EA | Houseballs - Drilled |
| 63 | EA | Premium Rental Shoes |
| 4 | EA | Circular House Ball Rack With Tabletop |
| 1 | EA | Sync Lane & Cash Control Software License |

Buyer's Initials:

# Brunswick

INSTALLATION SCHEDULE

Sales Contract No.:
Buyer: Trophy Hospitality LLC.
Area Sales Manager: RANSOM

Seller will assemble, construct, and install only the installed Goods listed below. Seller will not be responsible for assembly, construction, or installation of any other goods.

| Quantity | Unit (e.g., each, box) | Description |
|---|---|---|
| 1 | EA | Sync Employee ID Option |
| 1 | EA | Magnetic Cards For Employee ID Option |
| 1 | EA | Standalone Magnetic Card Reader For Game Card Or Employee ID Option |
| 1 | EA | Sync Reservations Option |
| 1 | EA | Sync Small Center Server (120V) |
| 1 | EA | UPS For Sync Server (120V) |
| 1 | EA | 17" Flat Screen / Touch Monitor |
| 2 | EA | Sync Tablet Console |
| 1 | EA | Spare Parts Kit For Sync Tablet Console With Dual Pedestal Mount |
| 1 | EA | 16-Port Network Switch For Sync Scoring Consoles |
| 4 | EA | Sync Scoring |
| 2 | EA | Sync Display Controller - For Double Overheads |
| 1 | EA | 24-Port Network Switch For Sync Display Controller |
| 2 | EA | Sync Display Controller SPK |
| 4 | EA | Cat5e Black Plenum Network Cable - 10' |
| 2 | EA | Cat5e Black Plenum Network Cable - 21' |
| 2 | EA | Bulk Cat5e Network Cable - 500' |
| 1 | EA | Sync Games Collection |
| 1 | EA | Angry Birds For Sync Scoring |
| 1 | EA | uChoose Sync Theme Collection |
| 2 | EA | Sync Peripheral Controller For GS Direct |
| 1 | EA | Spare Parts Kit For Peripheral Controller In Centers With GS or StringPin |
| 1 | EA | 24-Port Network Switch For Sync Peripheral Controller |
| 2 | EA | Pinball Wizard Cables For Sync Scoring |
| 1 | EA | Sync Basic Diagnostic Kit |
| 1 | EA | Network Diagnostic Kit |
| 1 | EA | 120/208V Three Phase Power Arrester |
| 2 | EA | Installation Material For Scoring |
| 4 | EA | 40" Samsung LED Monitor (110v) |
| 2 | EA | Continuous Support System |
| 4 | EA | Mounting Brackets for Overhead Monitors |

Buyer's Initials

## COMMERCIAL INVOICE

**Brunswick**

Brunswick Bowling
525 W. Laketon Ave.
Muskegon, MI 49441

| | |
|---|---|
| **Sold to:** | **Invoice Date** | April 21, 2017 |

Trophy Room
2714 McKinney Avenue
Dallas TX 75205

| | |
|---|---|
| Ship Date | |
| Invoice No. | |
| Type: | |
| Purchase Order No. | |
| PO Date | |

**Shipped to:**

Trophy Park
6776 Winning Dr.
Frisco TX 75034

| | |
|---|---|
| Region/Territory | 13030 |
| Customer No. | |
| Contract No. | |
| Payment Terms | |
| Freight Terms | |

| Issuing bank(s): | Advising Bank: |
|---|---|

**Consisting of the following merchandise:**
Brunswick Bowling Equipment as per Contract

**Remit to:**
Brunswick Bowling
Attention: Kimberly Mercatante
525 West Laketon Avenue
Muskegon, MI 49441

or via wire transfer to
Brunswick Bowling
PNC Bank

500 First Ave
Pittsburgh, PA 15219

| | |
|---|---|
| Total Contract Amount: | $229,500.00 |
| Initial Deposit: | 5% |
| Deposit Amount Due: | $11,475.00 |

Certified True and Correct
Brunswick Bowling

Ransom
Title: _____ Sales Manager

██████████████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Phone: 801 320-6502 Fax: 801 303-1902 |

This filing is Completed
File Number :
File Date   : 30-Jan-2019

| B. E-MAIL CONTACT AT FILER (optional) |
| rmerryman@celticbank.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   15331 - CELTIC BANK

Celtic Bank Corporation
268 S State Street
Suite 300
Salt Lake City, UT  84111

TXTX

File with: Secretary of State, TX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
| Trophy Hospitality, LLC | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 6670 Winning Drive, Suite 900 | Frisco | TX | 75034-7650 | | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
| Trophy Park | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 6670 Winning Drive, Suite 900 | Frisco | TX | 75034-7650 | | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
| Celtic Bank Corporation | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 268 S. State St., Ste 300 | Salt Lake City | UT | 84111 | | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: ██████████████

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 3



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
HOUSTON, TX

440 LOUISIANA STREET
SUITE 900
HOUSTON, TEXAS 77002

**TELEPHONE: 713/691-9385**
FACSIMILE: 713/691-9407

**LOS ANGELES**
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

**TELEPHONE: 310/277 6910**
FACSIMILE: 310/201 0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415/263 7000**
FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302/652 4100**
FACSIMILE: 302/652 4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212/561 7700**
FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

Michael D. Warner          August 21, 2021          713-691-9385
                                                    mwarner@pszjlaw.com

**Via Federal Express**

Megan M. Adeyemo, Esq.
Gordon Rees Scully Manskhani, LLP
2200 Ross Avenue, Suite 3700
Dallas, TX  75201

Celtic Bank Corporation
268 South State Street, Suite 300
Salt Lake City, UT  84111
**Attn:  General Counsel**

> **RE:    Celtic Bank Loan No. 15014819, Notice of
> Termination Event**

Dear Megan and Celtic:

Blue Star Frisco Retail, LLC ("Landlord") and Celtic Bank
Corporation ("Celtic") are parties to that certain *Landlord Lien
Subordination, Collateral Access and Notice of Assignment of Lease
Agreement*, dated December 14, 2018 (the "Agreement"), with
respect to Landlord's tenant, Trophy Hospitality, LLC (the
"Debtor").[1]  The Agreement reflects that it is in reference to Celtic
Bank Loan No. 15014819 and that certain premises (the "Leased
Premises") located at 6770 Winning Drive, Suite 900, Frisco, Texas
75034.

Landlord and the Debtor are parties to that certain *Shopping Center
Lease,* dated October 26, 2016, which was amended by the First
Amendment to Shopping Center Lease dated December 13, 2018, the
Second Amendment to Shopping Center Lease dated August 14,
2019, and the Third Amendment to Shopping Center Lease dated
August 31, 2020 (collectively, the "Lease").

---

[1] For the avoidance of doubt, Debtor is a debtor and debtor in possession in a chapter
11 case in the United States Bankruptcy Court for the Eastern District of Texas (the
"Bankruptcy Court"), Case No. 21-40512.

DOCS_LA:339477.1 17223/004

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Megan M. Adeyemo, Esq.
Celtic Bank Corporation
Celtic Bank Loan No. 15014819, Notice of Termination Event
Page 2

On August 6, 2021, the Bankruptcy Court entered an Order, which, *inter alia*, granted Landlord relief from the automatic stay, as part and parcel of the Debtor's assumption of the Lease. A copy of such order and the stipulation referenced therein are attached hereto.

Pursuant to paragraph 4(a) of the Agreement, Landlord hereby provides Celtic notice of a "Termination Event", which is defined in the Agreement as, *inter alia*, " (ii) Landlord regains possession of the [Leased Premises] due to termination of the Lease, and event of default by [Debtor], or otherwise (expressly excluding a Expiration Event, a "Termination Event")." As set forth in that certain *Notice of Event of Default and Termination of Lease*, dated August 21, 2021, a copy of which is attached hereto, Landlord has terminated the Lease and regained possession of the Leased Premises.

To address Celtic's rights with respect to its collateral pursuant to the Agreement with Landlord, including reasonable access to the Leased Premises, you may contact the Landlord as you may deem appropriate, as follows:

Blue Star Frisco Retail, LLC
ATTN: Jason Cohen & Kaleisha Stuart
1 Cowboys Way, Suite 100
Frisco, TX 75034
Telephone: (972) 497-4837
Email: jcohen@dallascowboys.net/kstuart@dallascowboys.net

For the avoidance of doubt, however, nothing herein is intended to suggest any authority from the Debtor or from the Bankruptcy Court to take possession of any of Celtic's collateral. Rather, this notice is merely provided in accordance with the Agreement.

Very truly yours,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Michael D. Warner*

Michael D. Warner

DOCS_LA:339477.1 17223/004



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Megan M. Adeyemo, Esq.
Celtic Bank Corporation
Celtic Bank Loan No. 15014819, Notice of Termination Event
Page 3

MDW:dlm


cc:    Eric A. Liepins, Esq. (via Federal Express)
       Trophy Hospitality, LLC (via Federal Express)

Enclosures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| TROPHY HOSPITALITY, LLC. | § | Case no. 21-40512-11 |
| | § | |
| DEBTOR | § | |

ORDER APPROVING AGREEMENT PURSUANT TO BANKRUPTCY RULE 4001(D)


CAME ON to be considered this day the Motion of Trophy Hospitality, LLC ("Debtor") and

Blue Star Frisco Retail, LLC ("Blue Star") for Approval of an Agreement Pursuant to Bankruptcy

Rule 4001(d). The Court having reviewed the pleading is of the opinion the Motion is well founded

and should be Granted. It is accordingly,

ORDERED, ADJUDGED AND DECREED the Agreement Pursuant to Bankruptcy Rule

4001(d) between the Debtors and Blue Star is approved.


Signed on 8/6/2021

*Brenda T. Rhoades*        YM

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **TROPHY HOSPITALITY, LLC,**[1] | § | **Case No.: 21-40512** |
| | § | |
| **Debtor.** | § | |
| | § | |

**STIPULATION BY AND BETWEEN DEBTOR AND BLUE STAR FRISCO RETAIL,
LLC (I) ASSUMING LEASE AND (II) RESOLVING MOTION FOR RELIEF**

This stipulation (this "Stipulation") is entered into by Trophy Hospitality, LLC, the above-captioned debtor and debtor in possession (the "Debtor") and Blue Star Frisco Retail, LLC (the "Landlord", together with the Debtor, the "Parties"). The Parties hereby stipulate and agree as follows:

**RECITALS**

A.      On April 8, 2021 (the "Petition Date"), the Debtor filed its voluntary petition under subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court").

B.      On April 15, 2021, Scott M. Seidel was appointed subchapter V Trustee in this case (the "Case"). *See* Docket No. 10.

C.      The Debtor and Landlord are parties to that certain *Shopping Center Lease,* dated October 26, 2016, which was amended by the First Amendment to Shopping Center Lease dated December 13, 2018, the Second Amendment to Shopping Center Lease dated August 14, 2019,

---

[1] The Debtor's address is 3351 Waverly Drive, Celina, TX 75009. The last four digits of its tax identification number are 5814.

and the Third Amendment to Shopping Center Lease dated August 31, 2020 (collectively, the

"Lease"). As of the Petition Date, the Debtor owed Landlord the amount of $153,026 (the

"Prepetition Balance"), on account of the Debtor's accrued but unpaid obligations under the Lease.

     D.     On April 19, 2021, Landlord filed that certain *Motion of Landlord Blue Star Frisco*

*Retail, LLC for an Order (I) in the Alternative (A) Confirming that the Automatic Stay has been*

*Terminated Pursuant to Section 362(j) of the Bankruptcy Code Because the Lease Terminated*

*Prepetition; or (b) Granting Relief from the automatic Stay; and (II) Compelling the Debtor's*

*Compliance with Applicable Law and Lease Pending Departure* [Docket No. 18] (the "Motion").

Among other things, the Motion alleged a series of defaults and other violations under the Lease

by the Debtor both before and after the Petition Date. The Debtor disputes such allegations. The

Motion is currently set for hearing on July 13, 2021, at 9:30 a.m. (prevailing Central Time).

     E.     On June 17, 2021, Landlord timely filed a proof of claim [Claim No. 4] in the

amount of the Prepetition Balance.

     F.     At various times postpetition, the Debtor made partial payments of its rental

obligations under the Lease. As a result of such partial payments, the amount of $17,579.97 (the

"July 1 Amount"), remains due and owing by the Debtor to the Landlord on a postpetition basis

for the Debtor's obligations under the Lease from May 1, 2021 through and including July 1, 2021.

In addition, the Debtor has received the benefit of the premises that is the subject of the Lease for

the period from the Petition Date through and including April 30, 2021 (the "April Stub Period")

without payment to Landlord for such period. Accordingly, the Debtor is obligated to pay

Landlord the amount of $26,818.00 (the "April Stub Rent") on account of the April Stub Period.

     G.     The Debtor has determined in its business judgment that the Lease is necessary for

any successful reorganization under chapter 11 of the Bankruptcy Code. Accordingly, the Parties

have agreed, subject to Bankruptcy Court approval, to the assumption of the Lease and the

withdrawal of the Motion on the terms and conditions more fully set forth herein.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT HEREBY IS STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THE UNDERSIGNED, AND UPON BANKRUPTCY COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

1.       This Stipulation shall become effective on the date of entry by the Bankruptcy

Court of an order approving this Stipulation, and authorizing the respective performance by each

Party thereunder (the "Stipulation Entry Date").  In the event the Stipulation Entry Date does not

occur on or before July 19, 2021, for any reason: (i) this Stipulation shall be deemed null and void

and the Parties shall be relieved and released from any obligation hereunder: (ii) nothing contained

in this Stipulation shall be construed to waive, alter or affect either Party's rights or remedies in

the Case; and (iii) the Motion shall be reset on the Bankruptcy Court's calendar at the earliest

available date.

2.       Subject to the Occurrence of the Stipulation Entry Date, the Lease shall be deemed

to be assumed by the Debtor, *in toto*, effective as of July 1, 2021, pursuant to section 365(a) of the

Bankruptcy Code.

3.       The terms of the cure of the Lease pursuant to section 365(b)(1) of the Bankruptcy

Code are as follows (collectively, the "Cure Payments"):

a.  No later than 12:00 p.m. (prevailing Central Time) on the third (3rd) business day

following the Stipulation Entry Date, the Debtor shall pay Landlord, *via* check, the

July 1 Amount on account of all of the Debtor's remaining obligations under the

Lease from May 1, 2021 through and including July 1, 2021.

     b. No later than 12:00 p.m. (prevailing Central Time) on the thirtieth (30th) day following the Stipulation Entry Date, the Debtor shall pay Landlord, *via* check, the April Stub Rent on account of all of the Debtor's remaining obligations under the Lease from the Petition Date through and including April 30, 2021.

     c. No later than 12:00 p.m. (prevailing Central Time) on the earlier of (i) the effective date of any plan of reorganization or (ii) October 1, 2021, the Debtor shall pay Landlord, *via* check, the Prepetition Balance.

4.    Upon delivery of each of the Cure Payments, the Debtor shall request, and Landlord or its representative shall provide upon request by the Debtor, a receipt evidencing the date and time of delivery of each of the Cure Payments as well as the amount thereof.

5.    Upon the occurrence of the Stipulation Entry Date, the Motion shall be deemed withdrawn.

6.    Upon the occurrence of the Stipulation Entry Date, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be terminated with respect to the Landlord, its agents, employees, representatives, professionals, and counsel, to exercise any of Landlords' rights or remedies, under, *inter alia*, the Lease, against the Debtor or its estate.

7.    The Debtor's failure to timely pay each of the Cure Payments in accordance with this Stipulation, time being of the essence, shall be deemed a default under the Lease; and upon such failure to pay any of the Cure Payments, the Lease shall be deemed automatically rejected, pursuant to section 365 of the Bankruptcy Code, and terminated, without further order of the

Bankruptcy Court or any further action on the part of the Landlord and the Debtor shall immediately deliver possession of the premises subject to the Lease to the Landlord.

8.      The Debtor shall not file, nor seek or support confirmation of, any plan of reorganization or liquidation inconsistent with the terms and conditions of this Stipulation.

9.      Each person who executes this Stipulation on behalf of each Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

10.     This Stipulation may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copies, electronic copies, or facsimiles signed by the Parties here to be charged.

11.     This Stipulation shall not be modified, altered, amended, or vacated without the written consent of all Parties hereto or by further order of the Bankruptcy Court.

12.     The terms and provisions of this Stipulation immediately shall be effective and enforceable upon the Stipulation Entry Date and shall thereafter be binding upon the Parties hereto and their respective affiliates and successors.

13.     The Bankruptcy Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Stipulation

*[Remainder of Page Intentionally Left Blank]*

**AGREED AS TO FORM AND CONTENT:**

Dated:   July 7, 2021

By: */s/ Eric A. Liepins*___
Eric A. Liepins (TX Bar No. 12338110)
**ERIC A. LIEPINS, P.C.**
12770 Coit Road
Dallas, Texas 75251
Telephone:  (972) 991-5591
Email: eric@ealpc.com

*Counsel for the Debtor*

By: */s/ Michael D. Warner*__
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar. No. 24102623)
**PACHULSKI STANG ZIEHL & JONES LLP**
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone:  (713) 691-9385
Email: mwarner@pszjlaw.com
Email: bwallen@pszjlaw.com

*Counsel for Blue Star Frisco Retail, LLC*

# WINSTEAD

Austin | Charlotte | Dallas | Fort Worth | Houston | New York | San Antonio | The Woodlands

300 Throckmorton Street | Suite 1700    817.420.8200 OFFICE
Fort Worth, Texas 76102    817.420.8201 FAX
winstead.com

Stephen D. Taylor
direct dial: 817.420.8214
staylor@winstead.com

August 21, 2021

**Via Certified Mail and Hand Delivery**
Trophy Hospitality, LLC
3351 Waverly Drive
Celina, Texas 75009

**Via E-Mail, Certified Mail, and Hand Delivery**
Eric A. Liepins
eric@ealpc.com
Eric A. Liepens, P.C.
12770 Coit Road, Suite 850
Dallas, Texas 75251

**Via Posting at the Demised Premises**
Trophy Hospitality, LLC
6770 Winning Drive, Suite 900
Frisco, Texas 75034

**Via Certified Mail and Hand Delivery**
Jerimiah Miranda
3351 Waverly Drive
Celina, Texas 75009

**Via Certified Mail and Hand Delivery**
Trophy Hospitality, LLC
4331 Hollow Oak Drive,
Dallas, TX 75287

Re:    **NOTICE OF EVENT OF DEFAULT AND TERMINATION OF LEASE** – Shopping Center Lease, dated October 26, 2016, as amended by three separate amendments, (collectively, the "Lease") by and between Blue Star Frisco Retail, L.P. ("Landlord") and Trophy Hospitality, LLC ("Tenant"), which Lease is guaranteed by Jeremiah Miranda ("Guarantor"). Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Lease.[1]

Dear Tenant and Guarantor:

This Firm represents the Landlord. Landlord hereby provides notice that, in accordance with Section 19.1 A. of the Lease, the Lease is terminated effective immediately. On August 6,

---

[1] This Notice is issued in accordance with that certain *Stipulation By and Between Debtor Blue Star Frisco Retail, LLC (I) Assuming Lease and (II) Resolving Motion for Relief* [Bankr. E.D. Tex. Case No. 21-40512, Docket No 52-1] (the "Stipulation"), which was approved by the Bankruptcy Court by that certain *Order Approving Agreement Pursuant to Bankruptcy Rule 4001(d)* [Bankr. E.D. Tex. Case No. 21-40512, Docket No. 58]. Paragraph 6 of the Stipulation provides that, "Upon the occurrence of the Stipulation Entry Date, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be terminated with respect to the Landlord, its agents, employees, representatives, professionals, and counsel, to exercise any of Landlord's rights or remedies, under, *inter alia*, the Lease, against the Debtor or its estate."

WINSTEAD PC | ATTORNEYS

August 21, 2021
Page 2

2021, Landlord provided a Notice of Default of the Lease for Tenant's failure to pay in full the monthly rental obligations under the Lease. Tenant did not cure such default within ten (10) days, as required by Section 19.1(1) of the Lease. Accordingly, Landlord has exercised its right to terminate the Lease and take possession of the Demised Premises.

With respect to the Tenant's personal property that remains in the Demised Premises, Landlord will reasonably accommodate requests to recover any such property (during normal business hours), or by any secured party to recover its collateral, which may be located at the Demised Premises. Please contact Landlord should you wish to arrange a time to obtain such property, as follows:

<div align="center">

Blue Star Frisco Retail, LLC
ATTN: Jason Cohen & Kaleisha Stuart
1 Cowboys Way, Suite 100
Frisco, TX 75034
Telephone: (972) 497-4837
Email: jcohen@dallascowboys.net/kstuart@dallascowboys.net

</div>

By terminating the Lease, Landlord does not intend to waive, and is not waiving, any rights or remedies available to it, whether under the Lease, at law, in equity, or otherwise. In that regard, notwithstanding Landlord's termination of the Lease, you are liable for all Rent and other net sums required to be paid by you under the Lease. Additionally, under Article 19 of the Lease, you are liable for, among other things, legal fees and expenses incurred by Landlord in connection with enforcing its rights under the Lease, obtaining possession of the Premises, removing property of Tenant, re-letting the Premises to a replacement tenant, and restoring and remodeling the Premises to a condition acceptable to the new tenant. Landlord is in the process of calculating the total amount owed by you under the aforementioned sections. Upon completion of the calculation, you will be provided with a description of the total amount owed under the Lease.

In the interim, this letter shall not constitute an election of remedies by Landlord nor a waiver of any defaults, rights, or remedies not specified herein.

If you have any questions or wish to discuss this further, please feel free to contact me to discuss.

Sincerely,

Stephen D. Taylor

bcc:   Mark Whitley, Spire Realty Group, LP (via email)
Noelle Garsek (of the Firm)

Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar. No. 24102623)
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone: (713) 691-9385
Email: mwarner@pszjlaw.com
Email: bwallen@pszjlaw.com

*Counsel for Blue Star Frisco Retail, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TROPHY HOSPITALITY, LLC,**[1] | § | **Case No.: 21-40512** |
| | § | |
| **Debtor.** | § | |
| | § | |

## BLUE STAR FRISCO RETAIL, LLC'S NOTICE OF TERMINATION OF LEASE

**PLEASE TAKE NOTICE THAT**, Blue Star Frisco Retail, LLC (the "Landlord") and the above-captioned debtor and debtor in possession (the "Debtor") are parties to that certain *Stipulation By and Between Debtor Blue Star Frisco Retail, LLC (I) Assuming Lease and (II) Resolving Motion for Relief* [Docket No 52-1] (the "Stipulation"), which was approved by the Bankruptcy Court by that certain *Order Approving Agreement Pursuant to Bankruptcy Rule 4001(d)* [Docket No. 58].

**PLEASE TAKE FURTHER NOTICE THAT**, the Stipulation, as Ordered, provided for the assumption, effective as of July 1, 2021, of that certain *Shopping Center Lease,* dated October 26, 2016, which was amended by the First Amendment to Shopping Center Lease dated December 13, 2018, the Second Amendment to Shopping Center Lease dated August 14, 2019, and the Third Amendment to Shopping Center Lease dated August 31, 2020 (collectively, the "Lease"). *See* Stipulation at ¶ 2.

**PLEASE TAKE FURTHER NOTICE THAT**, the Stipulation, as Ordered, further provided, *inter alia,* "Upon the occurrence of the Stipulation Entry Date, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be terminated with respect to the Landlord, its agents, employees, representatives, professionals, and counsel, to exercise any of Landlord's rights or remedies, under, *inter alia,* the Lease, against the Debtor or its estate." Stipulation at ¶ 6. The Stipulation Entry Date occurred on August 6, 2021. *See* Docket No. 58.

---

[1] The Debtor's address is 3351 Waverly Drive, Celina, TX 75009. The last four digits of its tax identification number are 5814.

**PLEASE TAKE FURTHER NOTICE THAT**, on August 21, 2021, pursuant to the terms of the Lease, Landlord served the *Notice of Event of Default and Termination of Lease*, dated August 21, 2021, which is attached hereto as **EXHIBIT A** (the "Notice of Termination"), on the Debtor and Debtor's counsel. The Notice of Termination, *inter alia*, terminated the Lease due to the occurrence of an event of default by the Debtor under the Lease, all as more fully specified therein.

**PLEASE TAKE FURTHER NOTICE THAT**, following the service of the Notice of Termination, Landlord is retaking possession of the premises subject to the Lease (the "Leased Premises"). A notice, substantially in the form of **EXHIBIT B** hereto, will be posted to the door of the Leased Premises along with the Notice of Termination immediately following Landlord's repossession of the Leased Premises.

**PLEASE TAKE FURTHER NOTICE THAT**, Landlord and Celtic Bank Corporation ("Celtic") are parties to that certain *Landlord Lien Subordination, Collateral Access and Notice of Assignment of Lease Agreement*, dated December 14, 2018 (the "Subordination Agreement"), with respect to the Lease, the Leased Premises, and amounts loaned by Celtic to the Debtor prepetition. Pursuant to the terms of the Subordination Agreement, Landlord is serving a copy of the notice attached hereto as **EXHIBIT C** upon Celtic and Celtic's counsel.

**PLEASE TAKE FURTHER NOTICE THAT**, as set forth in, *inter alia*, the Notice of Termination, Landlord will reasonably accommodate the Debtor's requests to recover any property of the Debtor's estate, or by any secured party to recover its collateral, which may be located at the Leased Premises, pursuant to appropriate Bankruptcy Court Order(s), which requests should be made by contacting the Landlord as set forth in the Notice of Termination.

Respectfully Submitted,

Dated:  August 21, 2021

By: */s/ Michael D. Warner*
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar. No. 24102623)
**PACHULSKI STANG ZIEHL & JONES LLP**
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone: (713) 691-9385
Email: mwarner@pszjlaw.com
Email: bwallen@pszjlaw.com

*Counsel for Blue Star Frisco Retail, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2021, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in this case.

I further certify that on this 21st day of August, 2021, a true and correct copy of the above and foregoing has been served by Federal Express on the following parties:

| | |
|---|---|
| Trophy Hospitality, LLC<br>4331 Hollow Oak Drive,<br>Dallas, TX 75287 | Celtic Bank Corporation<br>268 South State Street, Ste. 300<br>Salt Lake City, UT 84111<br>**Attention: General Counsel** |
| Trophy Hospitality, LLC<br>3351 Waverly Drive<br>Celina, TX 75009 | Megan M. Adeyemo<br>Gordon Rees Scully Manskhani, LLP<br>2200 Ross Avenue, Suite 3700<br>Dallas, TX 75201 |
| Eric A. Liepins<br>Eric A. Liepins, P.C.<br>12770 Coit Road, Suite 850<br>Dallas, TX 75251 | Scott Seidel<br>Sub. V Chapter Trustee<br>6505 West Park Boulevard, Ste. 306<br>Plano, TX 75093 |
| United States Department of Justice<br>Office of the United States Trustee<br>Attention: Marcus F. Salitore<br>110 N. College Avenue, Suite 300<br>Tyler, Texas 75702 | |

I further certify that on this 21st day of August, 2021, a true and correct copy of the above and foregoing has been served by United States First Class Mail on the parties identified on **Exhibit D** hereto.

/s/ *Michael D. Warner*
Michael D. Warner

# Exhibit A

*Notice of Termination*

**WINSTEAD**                Austin  |  Charlotte  |  Dallas  |  Fort Worth  |  Houston  |  New York  |  San Antonio  |  The Woodlands

300 Throckmorton Street | Suite 1700        817.420.8200 OFFICE
Fort Worth, Texas 76102        817.420.8201 FAX
winstead.com

Stephen D. Taylor
direct dial:  817.420.8214
staylor@winstead.com

August 21, 2021

**Via Certified Mail and Hand Delivery**
Trophy Hospitality, LLC
3351 Waverly Drive
Celina, Texas 75009

**Via E-Mail, Certified Mail, and Hand Delivery**
Eric A. Liepins
eric@ealpc.com
Eric A. Liepens, P.C.
12770 Coit Road, Suite 850
Dallas, Texas 75251

**Via Posting at the Demised Premises**
Trophy Hospitality, LLC
6770 Winning Drive, Suite 900
Frisco, Texas 75034

**Via Certified Mail and Hand Delivery**
Jerimiah Miranda
3351 Waverly Drive
Celina, Texas 75009

**Via Certified Mail and Hand Delivery**
Trophy Hospitality, LLC
4331 Hollow Oak Drive,
Dallas, TX 75287

Re:     **NOTICE OF EVENT OF DEFAULT AND TERMINATION OF LEASE** – Shopping Center Lease, dated October 26, 2016, as amended by three separate amendments, (collectively, the "Lease") by and between Blue Star Frisco Retail, L.P. ("Landlord") and Trophy Hospitality, LLC ("Tenant"), which Lease is guaranteed by Jeremiah Miranda ("Guarantor"). Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Lease.[1]

Dear Tenant and Guarantor:

This Firm represents the Landlord. Landlord hereby provides notice that, in accordance with Section 19.1 A. of the Lease, the Lease is terminated effective immediately. On August 6,

---

[1] This Notice is issued in accordance with that certain *Stipulation By and Between Debtor Blue Star Frisco Retail, LLC (I) Assuming Lease and (II) Resolving Motion for Relief* [Bankr. E.D. Tex. Case No. 21-40512, Docket No 52-1] (the "Stipulation"), which was approved by the Bankruptcy Court by that certain *Order Approving Agreement Pursuant to Bankruptcy Rule 4001(d)* [Bankr. E.D. Tex. Case No. 21-40512, Docket No. 58]. Paragraph 6 of the Stipulation provides that, "Upon the occurrence of the Stipulation Entry Date, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be terminated with respect to the Landlord, its agents, employees, representatives, professionals, and counsel, to exercise any of Landlord's rights or remedies, under, *inter alia*, the Lease, against the Debtor or its estate."

August 21, 2021
Page 2

2021, Landlord provided a Notice of Default of the Lease for Tenant's failure to pay in full the monthly rental obligations under the Lease. Tenant did not cure such default within ten (10) days, as required by Section 19.1(1) of the Lease. Accordingly, Landlord has exercised its right to terminate the Lease and take possession of the Demised Premises.

With respect to the Tenant's personal property that remains in the Demised Premises, Landlord will reasonably accommodate requests to recover any such property (during normal business hours), or by any secured party to recover its collateral, which may be located at the Demised Premises. Please contact Landlord should you wish to arrange a time to obtain such property, as follows:

<div align="center">

Blue Star Frisco Retail, LLC
ATTN: Jason Cohen & Kaleisha Stuart
1 Cowboys Way, Suite 100
Frisco, TX 75034
Telephone: (972) 497-4837
Email: jcohen@dallascowboys.net/kstuart@dallascowboys.net

</div>

By terminating the Lease, Landlord does not intend to waive, and is not waiving, any rights or remedies available to it, whether under the Lease, at law, in equity, or otherwise. In that regard, notwithstanding Landlord's termination of the Lease, you are liable for all Rent and other net sums required to be paid by you under the Lease. Additionally, under Article 19 of the Lease, you are liable for, among other things, legal fees and expenses incurred by Landlord in connection with enforcing its rights under the Lease, obtaining possession of the Premises, removing property of Tenant, re-letting the Premises to a replacement tenant, and restoring and remodeling the Premises to a condition acceptable to the new tenant. Landlord is in the process of calculating the total amount owed by you under the aforementioned sections. Upon completion of the calculation, you will be provided with a description of the total amount owed under the Lease.

In the interim, this letter shall not constitute an election of remedies by Landlord nor a waiver of any defaults, rights, or remedies not specified herein.

If you have any questions or wish to discuss this further, please feel free to contact me to discuss.

Sincerely,

Stephen D. Taylor

bcc:   Mark Whitley, Spire Realty Group, LP (via email)
       Noelle Garsek (of the Firm)

# **Exhibit B**

*Door Notice*

## **NOTICE**

Pursuant to Article 19 of that certain Shopping Center Lease between Blue Star Frisco Retail L.P. ("Landlord"), as landlord, and Trophy Hospitality LLC ("Tenant"), as tenant, Landlord has changed the door locks of these premises due to Tenant's Event of Default and Landlord's exercise of its right to terminate the Lease and regain possession of the premises.

To obtain delivery of your personal belongings, Tenant may contact Landlord during the hours of 8:00 a.m. and 5:00 p.m., Monday – Friday (excluding holidays) as follows:

Blue Star Frisco Retail, LLC
ATTN: Jason Cohen & Kaleisha Stuart
1 Cowboys Way, Suite 100
Frisco, TX 75034
Telephone: (972) 497-4837
Email: jcohen@dallascowboys.net/kstuart@dallascowboys.net

# Exhibit C

*Subordination Agreement Notice*



**PACHULSKI**
**STANG**
**ZIEHL**
**JONES**

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
HOUSTON, TX

440 LOUISIANA STREET
SUITE 900
HOUSTON, TEXAS 77002

TELEPHONE: 713/691-9385
FACSIMILE: 713/691-9407

LOS ANGELES
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910
FACSIMILE: 310/201 0760

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000
FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100
FACSIMILE: 302/652 4400

NEW YORK
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700
FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

Michael D. Warner        August 21, 2021        713-691-9385
                                                mwarner@pszjlaw.com

**Via Federal Express**

Megan M. Adeyemo, Esq.
Gordon Rees Scully Manskhani, LLP
2200 Ross Avenue, Suite 3700
Dallas, TX 75201

Celtic Bank Corporation
268 South State Street, Suite 300
Salt Lake City, UT 84111
**Attn: General Counsel**

        RE:    **Celtic Bank Loan No. 15014819, Notice of**
               **Termination Event**

Dear Megan and Celtic:

Blue Star Frisco Retail, LLC ("Landlord") and Celtic Bank
Corporation ("Celtic") are parties to that certain *Landlord Lien
Subordination, Collateral Access and Notice of Assignment of Lease
Agreement*, dated December 14, 2018 (the "Agreement"), with
respect to Landlord's tenant, Trophy Hospitality, LLC (the
"Debtor").[1] The Agreement reflects that it is in reference to Celtic
Bank Loan No. 15014819 and that certain premises (the "Leased
Premises") located at 6770 Winning Drive, Suite 900, Frisco, Texas
75034.

Landlord and the Debtor are parties to that certain *Shopping Center
Lease,* dated October 26, 2016, which was amended by the First
Amendment to Shopping Center Lease dated December 13, 2018, the
Second Amendment to Shopping Center Lease dated August 14,
2019, and the Third Amendment to Shopping Center Lease dated
August 31, 2020 (collectively, the "Lease").

---

[1] For the avoidance of doubt, Debtor is a debtor and debtor in possession in a chapter
11 case in the United States Bankruptcy Court for the Eastern District of Texas (the
"Bankruptcy Court"), Case No. 21-40512.

DOCS_LA:339477.1 17223/004

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Megan M. Adeyemo, Esq.
Celtic Bank Corporation
Celtic Bank Loan No. 15014819, Notice of Termination Event
Page 2

On August 6, 2021, the Bankruptcy Court entered an Order, which, *inter alia*, granted Landlord relief from the automatic stay, as part and parcel of the Debtor's assumption of the Lease. A copy of such order and the stipulation referenced therein are attached hereto.

Pursuant to paragraph 4(a) of the Agreement, Landlord hereby provides Celtic notice of a "Termination Event", which is defined in the Agreement as, *inter alia*, " (ii) Landlord regains possession of the [Leased Premises] due to termination of the Lease, and event of default by [Debtor], or otherwise (expressly excluding a Expiration Event, a "Termination Event")." As set forth in that certain *Notice of Event of Default and Termination of Lease*, dated August 21, 2021, a copy of which is attached hereto, Landlord has terminated the Lease and regained possession of the Leased Premises.

To address Celtic's rights with respect to its collateral pursuant to the Agreement with Landlord, including reasonable access to the Leased Premises, you may contact the Landlord as you may deem appropriate, as follows:

Blue Star Frisco Retail, LLC
ATTN: Jason Cohen & Kaleisha Stuart
1 Cowboys Way, Suite 100
Frisco, TX 75034
Telephone: (972) 497-4837
Email: jcohen@dallascowboys.net/kstuart@dallascowboys.net

For the avoidance of doubt, however, nothing herein is intended to suggest any authority from the Debtor or from the Bankruptcy Court to take possession of any of Celtic's collateral. Rather, this notice is merely provided in accordance with the Agreement.

Very truly yours,

PACHULSKI STANG ZIEHL &
JONES LLP

*/s/ Michael D. Warner*

Michael D. Warner

DOCS_LA:339477.1 17223/004

PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Megan M. Adeyemo, Esq.
Celtic Bank Corporation
Celtic Bank Loan No. 15014819, Notice of Termination Event
Page 3

MDW:dlm


cc:    Eric A. Liepins, Esq. (via Federal Express)
       Trophy Hospitality, LLC (via Federal Express)

Enclosures

# Exhibit D

*Mailing Matrix*

Aramak Uniform Services
P.O. Box 731676
Dallas, TX 75373-1676

Blue Star Frisco, LP
8000 Warren Parkway
Building 1, Suite 100
Frisco, TX 75034-2231

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX 78711-2548

Eric A. Liepins
Eric A. Liepins, P.C.
12770 Coit Road
Suite 850
Dallas, TX 75251-1364

Scott SEIDEL (SBRA V)
Sub V Chapter Trustee
6505 West Park Boulevard
Ste. 306
Plano, TX 75093-6212

Shiloh Oak Investment, LLC
c/o Travis Richard
5335 Spring Valley
Dallas, TX 75254-3009

Small Business Admin
P.O. Box 3918
Portland, OR 97208-3918

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

Wade Electric
7217 Parwelk
Dallas, TX 75235

Bigs Investment Holdings, LLC
Shiloh Oak Investment, LLC
c/o Travis Richard
5335 Spring Valley
Dallas, TX 75254-3009

Celtic Bank
268 S. State St., Ste. 300
Salt Lake City, UT 84111-5314

Fix A Drip
8732 Ukiah
Dallas, TX 75227-8224

Purely Meat Company
4345 W Division Street
Chicago Il 60651-1714

Marcus Salitore
US Trustee Office
110 N. College Ave., Room 300
Tyler, TX 75702-7231

Callan Clark Searcy
Texas Attorney General
300 W. 15th Street, Mail MC-008
78701
Austin, TX 78701-1649

Texas Comptroller of Public Accounts,
Revenue
Callan Searcy
c/o Sherri K. Simpson, Paralegal
PO Box 12548
Austin, TX 78711-2548

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

Waste Management
1001 Fannin
Houston, TX 77002-6717

Blue Star Frisco Retail, LLC
1 Cowboys Way, Ste. 100
Frisco, TX 75034-1977

City of Frisco
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

Freshpoint
4721 Simonton
Dallas, TX 75244-5316

Linda Reece
1919 S. Shiloh Road, Suite 310, LB 40
Garland, TX 75042-8234

Sani Servant
3100 E Meadows
Mesquite, TX 75150

Frisco ISD
c/o Perdue Brandon Fielder et al
1919 S. Shiloh Road, Suite 310, LB 40
Garland, TX 75042-8234

Trophy Hospitality, LLC
3351 Waverly Drive
Celina, TX 75009-1501

John M. Vardeman
UST Office
110 N. College St., Suite 300
Tyler, TX 75702-7231

Megan M. Adeyemo
Gordon & Rees LLP
2200 Ross Avenue, Ste 3700
Dallas, TX 75201